**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE EVOLUS INC. SECURITIES LITIGATION | Case No: 1:20-cv-08647-PGG<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**EVOLUS INVESTOR GROUP'S MOTION FOR APPOINTMENT**
**AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND.................................................................................................... 2

ARGUMENT............................................................................................................................ 4

I.     THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF........................... 4

     A.     The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff............. 4

     B.     Movant Satisfies the Lead Plaintiff Provisions of the PSLRA .............................. 6

          1.     Movant Filed a Timely Motion................................................................... 6

          2.     Movant Has the Largest Financial Interest in the Relief Sought................ 6

          3.     Movant Meets Rule 23's Typicality and Adequacy Requirements ............ 7

               a.     Movant's Claims Are Typical of the Claims of the Class .............. 8

               b.     Movant Is an Adequate Representative ......................................... 9

II.     MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED............................... 11

CONCLUSION...................................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
  252 F.R.D. 188 (S.D.N.Y. 2008) ...................................................................................... 8

*In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*,
  No. 08 MDL 1963 (RWS), 2008 U.S. Dist. LEXIS 106327 (S.D.N.Y. Dec. 29, 2008)............. 8

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)............................................................................................ 8

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005)...................................................................................... 1, 7

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................................... 5, 6

*In re GE Sec. Litig.*,
  No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009).................. 10

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007)........................................................................................ 7

*In re Milestone Sci. Sec. Litig.*,
  183 F.R.D. 404 (D.N.J. 1998) ......................................................................................... 10

*In re Orion Secs. Litig.*,
  No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368 (S.D.N.Y. July 7, 2008)...................... 9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998)......................................................................................... 8

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
  275 F.R.D. 187 (S.D.N.Y. 2011) ..................................................................................... 10

*Reimer v. Ambac Fin. Grp., Inc.*,
  No. 08 Civ. 411 (NRB), 2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) ...................... 9

*Richman v Goldman Sachs Grp., Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) ...................................................................................... 9

*Strougo v. Brantley Capital Corp.*,
  243 F.R.D. 100 (S.D.N.Y. 2007) ...................................................................................... 8

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
  No. 05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 24, 2006)....................... 7

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................................ 6

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................ passim

**Rules**

Fed. R. Civ. P. 23............................................................................................................ passim

Movants Peter Sissins, David Pressly, Chris Riccardi, and Nhung Tran (together, the "Evolus Investor Group" or "Movant"), on behalf of themselves and all other similarly situated persons and entities, hereby respectfully submit this Memorandum of Law in Support of Movant's Motion for Appointment as Lead Plaintiff and Approval of Selection of Bragar Eagel & Squire, P.C. ("BES") as Lead Counsel pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA").

## PRELIMINARY STATEMENT

Presently pending before the Court is a consolidated securities class action lawsuit (the "Action")[1] brought on behalf of a "Class" consisting of all persons and entities, other than Defendants (defined below), that purchased or otherwise acquired Evolus, Inc. ("Evolus" or the "Company") securities between February 1, 2019 and July 6, 2020, both dates inclusive (the "Class Period"). The Action alleges violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), as well as U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Evolus and certain of its senior officers (the "Defendants").

The PSLRA, as amended, 15 U.S.C. § 78u-4(a)(3)(B), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102

---

[1] The originally filed actions in this Action include: *Malakouti v. Evolus, Inc., et al.*, Case No. 1:20-cv-08647, filed on October 16, 2020 (the "*Malakouti* Action"), and; *Cox v. Evolus, Inc., et al.*, Case No. 1:20-cv-09053, filed on October 28, 2020 (the "*Cox* Action"). The Court ordered the two actions consolidated on November 13, 2020. ECF No. 12.

1

(S.D.N.Y. 2005) ("At the lead plaintiff stage of the litigation, the party moving for lead plaintiff of the consolidated action need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23.") (quotations omitted).  The Evolus Investor Group has lost $109,691.33 as a result of the alleged fraud during the Class Period.[2]  Movant believes that it has the largest financial interest in the outcome of the Action.  Moreover, Movant satisfies the requirements of Rule 23 in that its claims are typical of the claims of the Class, and in that it will fairly and adequately represent the interests of the Class.

Accordingly, the Court should grant the Evolus Investor Group's Motion in its entirety.

## FACTUAL BACKGROUND

Evolus operates as a medical aesthetics company, and develops, produces, and markets clinical neurotoxins for the treatment of aesthetic concerns.  ¶¶ 2, 19.[3]  Evolus' sole product is Jeuveau™, which is a purified botulinum toxin indicated for the temporary improvement in the appearance of moderate to severe frown lines in adults.  *Id*.  As such, Evolus directly competes with Botox®, which is manufactured by Allergan plc and Allergan Inc. ("Allergan") and distributed by Allergan's partner, Medytox Inc. ("Medytox").  ¶ 2.  Botox® has been the gold standard of the industry since its FDA approval more than two decades ago.  *Id*.

Beginning in February 2019, Evolus embarked on a public campaign to hype the market right before the commercial launch of its sole leading product, Jeuveau™.  ¶¶ 3, 25-27.  To secure

---

[2] Movant's PSLRA certifications identifying each group member's transactions in Evolus, as well as a chart identifying their losses, and a joint declaration executed by the members of the Evolus Investor Group evidencing their intention to pursue the Action in a cohesive and collaborative manner, are attached to the Declaration of Melissa A. Fortunato, dated December 15, 2020 ("Fortunato Decl."), as Exhibits 1, 2, and 3, respectively.

[3] Citations to "¶ __" are to paragraphs in the *Malakouti* Action Complaint for Violations of the Federal Securities Laws (the "Complaint") filed in that action, ECF No. 1.  Unless otherwise defined, capitalized terms shall have the same meaning as set forth in the Complaint.  The facts set forth in the Complaint are incorporated herein by reference.

an aggressive growth and a rapid influx of revenue, Defendants disseminated dozens of public statements during the Class Period in which they promoted Jeuveau™ as a proprietary formulation of the botulinum toxic type A complex, purportedly developed by Korean bioengineering company Daewoong through years of clinical research and millions of dollars' worth of investment in research and development.  ¶¶ 3, 28-61.  Among other things, Evolus promised investors that it would attain the number two U.S. market position within 24 months of launch.  ¶¶ 3, 26.

Throughout the Class Period, Defendants made materially false and misleading statements, and failed to disclose material adverse facts about the Company's business, operational, and compliance policies.  Specifically, Defendants made false and/or misleading statements and failed to disclose to investors that:  (i) the real source of botulinum toxin bacterial strain as well as the manufacturing processes used to develop Jeuveau™ originated with and were misappropriated from Medytox; (ii) sufficient evidentiary support existed for the allegations that Evolus misappropriated certain trade secrets relating to the botulin toxin strain and the manufacturing processes for the development of Jeuveau™; (iii) as a result, Evolus faced a real threat of regulatory and/or court action, prohibiting the import, marketing, and sale of Jeuveau™; which in turn (iv) seriously threatened Evolus' ability to commercialize Jeuveau™ in the United States and generate revenue; and (v) any revenues generated from the sale of Jeuveau™ were based on Evolus' unlawful activities, including the misappropriation of trade secrets and secret manufacturing processes belonging to Allergan and Medytox.  ¶ 62.

The investing public learned the truth about Jeuveau™ on July 6, 2020, when the U.S. International Trade Commission ("ITC") issued its Initial Final Determination in a case brought by Allergan and Medytox against Evolus, alleging that Evolus stole certain trade secrets to develop Jeuveau™.  ¶¶ 5, 63.  Coming as a great surprise to the unsuspecting investors, the ITC Judge

found that Evolus misappropriated the botulinum toxin strain as well as the manufacturing processes that led to its development and manufacture. *Id.* To make things even more catastrophic, the ITC judge recommended a ten-year long ban on Evolus' ability to import Jeuveau™ into the United States and a ten-year long cease and desist order preventing Evolus from selling Jeuveau™ in the United States. *Id.*

This news caused a precipitous and immediate decline in the price of Evolus shares, which fell 37% over the course of two trading days, to close at $3.35 on July 8, 2020, on unusually high trading volume. ¶¶ 6, 64. Following the news of the ITC's Initial Final Determination and the subsequent price drop of Evolus' shares, several securities analysts downgraded Evolus' rating and significantly lowered the Company's price target. ¶ 6. On August 6, 2020, the ITC Court issued a 282-page public version of its Initial Final Determination, which revealed the depth and scope of the evidentiary record developed before the ITC, which only Defendants, but not the investing public, were apprised of. ¶ 65.

## ARGUMENT

I. THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

A. The PSLRA's Provisions Concerning the Appointment of Lead Plaintiff

The PSLRA mandates that the Court decide the lead plaintiff issue "as soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a) and (a)(3)(B).

First, the PSLRA provides that within 20 days after the date on which the first class action is filed, the plaintiff to that action shall publish, in a widely circulated national business publication or wire service, a notice advising members of the proposed class of the pendency of the action and

their right to move for appointment as lead plaintiff within 60 days of the notice publication.  *See*

*Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court will, no later than 90 days after the date on

which a notice is published, consider any motion filed by any purported class member in response

to the notice and appoint as lead plaintiff the movant that the court determines to be "most capable

of adequately representing the interests of class members."  *Id*.  The PSLRA provides a

presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of

persons" that:

    (aa)    has either filed the complaint or made a motion in response to a notice;

    (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The presumption may be rebutted only upon proof by another

class member that the presumptive most adequate plaintiff "will not fairly and adequately protect

the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of

adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, the Evolus Investor Group has complied with the procedural

prerequisites of the PSLRA and has, what is to the best of its knowledge, the largest financial

interest in the litigation of any other Class member(s) seeking appointment as lead plaintiff.

Movant is unaware of any unique defenses against it that Defendants could raise.  Therefore,

Movant is entitled to the presumption that it is the most adequate plaintiff to represent the Class

and, as a result, should be appointed lead plaintiff in the Action.

**B.**    **Movant Satisfies the Lead Plaintiff Provisions of the PSLRA**

As described in further detail below, Movant should be appointed lead plaintiff because it satisfies all of the requirements of the PSLRA.  Movant filed a timely motion to be appointed lead plaintiff, holds the largest financial interest in the relief sought by the Class, and satisfies the typicality and adequacy requirements of Rule 23.

**1.**    **Movant Filed a Timely Motion**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the *Malakouti* Action published notice of the action on October 16, 2020, within 20 days of the filing of the first-filed complaint, through *Globe Newswire*, a widely circulated national business-oriented wire service.  *See* Fortunato Decl., Ex. 4.  Consequently, any member of the proposed Class was required to seek appointment as lead plaintiff within 60 days after publication of that notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i).  Therefore, the time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §§ 78u-4(a)(3)(A) and (B) expires on December 15, 2020. Pursuant to the PSLRA and within the requisite time frame after publication of the required notice, Movant timely moves this Court to be appointed lead plaintiff on behalf of all members of the Class.

**2.**    **Movant Has the Largest Financial Interest in the Relief Sought**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial interest in the relief sought by an action.  As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class.  *See* Fortunato Decl., Ex. 2.  The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff.  *See Weltz v. Lee*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001); *Foley*, 272 F.R.D. at 128 ("Although courts have differed on how much weight to assign to each of the *LAX* factors, [the

6

Second Circuit], as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."). *See also Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) (same); *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-cv-4617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *13-14 (S.D.N.Y. Jan. 24, 2006) ("We believe that the best yardstick by which to judge 'largest financial interest' is the amount of loss, period.").

Under the PSLRA, damages are calculated based on (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated, or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. § 78u-4(e).

Within the Class Period, Movant purchased Evolus securities in reliance upon the materially false and misleading statements issued by Defendants and were injured thereby. The Evolus Investor Group has suffered substantial losses of $109,691.33 under a last-in-first-out ("LIFO") analysis as a result of Defendants' alleged fraudulent statements. *See eSpeed*, 232 F.R.D. at 101 (noting that courts prefer losses to be calculated under LIFO); *see also* Fortunato Decl., Ex. 2 (Loss Chart). Movant, thus, has a significant financial interest in the outcome of this Action. To the best of Movant's knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

**3.    Movant Meets Rule 23's Typicality and Adequacy Requirements**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a class may be certified only if the following four

7

requirements are satisfied:   (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant.  Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed.  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA.").  *See also Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 105 (S.D.N.Y. 2007); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### a.      **Movant's Claims Are Typical of the Claims of the Class**

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  A plaintiff satisfies the typicality requirement if the plaintiff has:  (a) suffered the same injuries as the absent class members; (b) the injuries are as a result of the same course of conduct by defendants; and (c) the plaintiff's claims are based on the same legal issues that prove the defendant's liability.  *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  "However, the claims of the class representative need not be identical to those of all members of the class." *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, No. 08 MDL No.

1963 (RWS), 2008 U.S. Dist. LEXIS 106327, at *29 (S.D.N.Y. Dec. 29, 2008); *see also In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 U.S. Dist. LEXIS 55368, at *12 (S.D.N.Y. July 7, 2008) ("Indeed, [t]he possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact.") (quotations omitted).

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with, the claims of the other Class members. *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("The typicality requirement is satisfied when the claims of the proposed lead plaintiff 'arise from the same conduct from which the other class members' claims and injuries arise.'"). The Evolus Investor Group, like the other members of the Class, acquired Evolus securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and were damaged thereby. Thus, Movant's claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and its losses were a result of Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Reimer v. Ambac Fin. Grp., Inc.*, No. 08 Civ. 411 (NRB), 2008 U.S. Dist. LEXIS 38729, at *12 (S.D.N.Y. May 9, 2008) ("[Typicality] is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

Movant therefore satisfies the required *prima facie* showing of the typicality requirements of Rule 23 for purposes of this Motion.

### b.      Movant Is an Adequate Representative

The Evolus Investor Group is also an adequate representative for the Class. Under Rule 23(a)(4), representative parties must "fairly and adequately protect the interests of the class."

9

Adequate representation will be found if the representative has:  (a) retained able and experienced counsel and (b) the representative has no fundamental conflicts of interest with the interests of the class as a whole.  *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider:  (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *15 (S.D.N.Y. July 29, 2009) (Movant "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel.").  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative class and whether there is evidence of any antagonism between the interests of a movant and other members of the class.  15 U.S.C. § 78u-4(a)(3)(B).

The Evolus Investor Group meets the requirements under Rule 23(a)(4) to fairly and adequately protect the interests of the putative Class.  Not only is there no evidence of conflict between the interests of Movant and those of the other members of the putative Class, but Movant has a significant and compelling interest in prosecuting the Action based on the large financial loss it has incurred as a result of the wrongful conduct alleged therein.  *See In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998) (plaintiff's "financial stake in the litigation provides an adequate incentive for [plaintiff] to vigorously prosecute the action").  Indeed, the Evolus Investor Group has already taken steps which demonstrate that it both recognizes and will protect the interests of the Class, including:  (1) executing certifications detailing each member of the Evolus Investor Group's Class Period transactions and expressing their willingness to serve as Class

representative; (2) moving this Court to be appointed lead plaintiff; (3) committing to providing fair and adequate representation, overseeing counsel, and obtaining the largest possible recovery against all culpable parties consistent with good faith and vigorous advocacy, among other things (*see* Fortunato Decl., Ex. 3); and (4) retaining competent and experienced counsel, who, as shown below, are experienced in class action litigation such as this involving allegations of securities fraud.  Therefore, Movant will prosecute the Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and therefore satisfy 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  In addition, because Movant sustained the largest amount of losses from Defendants' alleged wrongdoing, the Evolus Investor Group is the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead the Action.

## II.    MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection only when necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Here, Movant has selected and retained BES as proposed Lead Counsel for the Class.

As set forth in its accompanying firm résumé (Fortunato Decl., Ex. 5), BES is highly accomplished in, and is currently acting as lead counsel in, a number of federal securities actions and has achieved many multi-million-dollar recoveries for investors.  The members of the firm have extensive experience in successfully prosecuting complex securities class actions such as this and are well-qualified to represent the Class.  Thus, this Court may be assured that if the instant Motion is granted, the members of the Class will receive the highest caliber of legal representation.

11

## <u>CONCLUSION</u>

For all the foregoing reasons, Movant respectfully requests that the Court:  (1) appoint Movant as Lead Plaintiff on behalf the Class; (2) approve Movant's selection of BES as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

DATED: December 15, 2020          Respectfully submitted,

**BRAGAR EAGEL & SQUIRE, P.C.**

By: */s/ Melissa A. Fortunato*
Melissa A. Fortunato
Marion C. Passmore
810 Seventh Avenue, Suite 620
New York, NY 10019
Telephone:  (212) 308-5858
Facsimile:  (212) 214-0506
Email: fortunato@bespc.com
Email: passmore@bespc.com

*Counsel for Movant and Proposed*
*Lead Counsel for the Class*

12

## <u>CERTIFICATE OF SERVICE</u>

I, Melissa A. Fortunato, hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this 15th day of December, 2020.

*/s/ Melissa A. Fortunato*

Melissa A. Fortunato
