UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE EVOLUS INC. SEC. LITIG. | Case No.  1:20-cv-08647-PGG<br><br>MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF PETER DIAFERIA AND MITCHELL SISUN FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 5

    I.     DIAFERIA AND SISUN SHOULD BE APPOINTED LEAD PLAINTIFF ........ 5

          A.    Diaferia and Sisun Possesses the Largest Financial Interest in the Litigation ................................................................................................... 6

          B.    Diaferia and Sisun Satisfy the Requirements of Rule 23 ........................... 8

          C.    Diaferia and Sisun Are an Appropriate Group .......................................... 9

    II.    AHMAD IS SUBJECT TO THE UNIQUE DEFENSE THAT HE LACKS STANDING ......................................................................................................... 11

    III.    DIAFERIA AND SISUN'S SELECTION OF COUNSEL SHOULD BE APPROVED ......................................................................................................... 12

CONCLUSION ......................................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)..........................................................................5, 8

*Barnet v. Elan Corp., PLC*,
236 F.R.D. 158 (S.D.N.Y. 2005) ...............................................................................................9

*Brady v. Top Ships Inc.*, No. 17-CV-4987 (JFB) (SIL),
2018 U.S. Dist. LEXIS 121765 (E.D.N.Y. July 20, 2018) ......................................................10

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
2018 WL 3093965 (S.D.N.Y. June 21, 2018) .......................................................................1, 6

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018)...........................................................................................................4, 9

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018).......................................................................4, 9

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)...............................................................................................3, 6, 7, 11

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP,
2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008)........................................................7

*Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289,
2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012).............................................................10

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ..........................................................................................4, 9

*Foster v. Maxwell Techs., Inc.*, Nos. 13-cv-00580- BEN-RBB et al.,
2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) .......................................................7

*Galmi v. Teva Pharms. Indus. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017)........................................................................................3

*In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*,
2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005).......................................................4, 11

*In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK),
2017 U.S. Dist. LEXIS 207531 (E.D.N.Y. Dec. 15, 2017) ...........................................4, 9, 10

*In re Comverse Tech., Inc. Sec. Litig.*, 06-CV-1825 (NGG)(RER),
　2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ...........................................................7

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
　2008 WL 2811358 (S.D.N.Y. July 7, 2008) ......................................................................3, 8

*Janbay v. Canadian Solar, Inc.*,
　272 F.R.D. 113 (S.D.N.Y. 2010) ........................................................................................3, 8

*Kaplan v. Gelfond*,
　240 F.R.D. 88 (S.D.N.Y. 2007) ..........................................................................................5, 8

*Kux-Kardos v. VimpelCom, Ltd.*,
　151 F. Supp. 3d 471 (S.D.N.Y. 2016).....................................................................................7

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
　2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017)......................................................................1, 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
　229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................................2, 6

*Spokeo, Inc. v. Robins*,
　136 S. Ct. 1540 (2016).......................................................................................................5, 11

*Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*,
　454 U.S. 464 (1982)............................................................................................................5, 11

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
　529 U.S. 765 (2000)................................................................................................................11

*Warth v. Seldin*,
　422 U.S. 490 (1975)................................................................................................................11

*Weltz v. Lee*,
　199 F.R.D. 129 (S.D.N.Y. 2001) .............................................................................................9

*West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731,
　2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 9, 2014) .........................................................10

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...................................................................................1, 5, 6, 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ....................................................................................12

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb) ......................................................................................4

15 U.S.C. § 78u-4(a)(3)(B)(v) ..................................................................................................12

iv

PSLRA ..................................................................................................................... *passim*

## **Rules**

Federal Rules of Civil Procedure Rule 23 ............................................................ *passim*

Movants Diaferia and Sisun[1] submit this Memorandum of Law in further support of their motion for appointment as Co-Lead Plaintiffs and approval of their selection of counsel (Dkt. No. 38); and in opposition to the competing motions of (i) Raja Ahmad ("Ahmad") (Dkt. No. 24); (ii) Dr. Raffy Mirzayan, Alice Yanlengsim Yeo, both individually and on behalf of Triple A&E LLC, Gary R. Whaler, Jr., and Theresa R. Whaler (the "Mirzayan Group") (Dkt. No. 45); (iii) Josh Thrailkill ("Thrailkill") (Dkt. No. 39); and (iv) James LeFebvre ("LeFebvre") (Dkt. No. 27).[2]

## PRELIMINARY STATEMENT

This is a securities fraud class action on behalf of investors in Evolus securities. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court should appoint as lead plaintiff the movant with the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). While the PSLRA does not define "financial interest," courts in this Judicial District generally consider a movant's claimed financial loss to be the most important factor in assessing financial interest within the meaning of the PSLRA. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at

---

[1] All capitalized terms herein are defined in Diaferia and Sisun's moving brief, unless otherwise indicated. *See* Dkt. No. 41.

[2] Four additional movants initially filed similar competing motions: (i) Brian Blanchette ("Blanchette") (Dkt. No. 13); (ii) a group consisting of Armin Malakouti, Mahmood Gholami, and Daniel Mierlak (the "Malakouti Group") (Dkt. No. 17); (iii) a group consisting of Peter Sissins, David Pressly, Nhung Tran, Chris Riccardi (the "Sissins Group") (Dkt. No. 30); and (iv) Kingsgrove Large Cap, LP ("Kingsgrove") (Dkt. No. 31). On December 15, 2020, Blanchette filed a notice of withdrawal of his motion. Dkt. No. 23. On December 29, 2020, the Malakouti Group and Kingsgrove filed notices of withdrawal of their respective motions (Dkt. Nos. 50, 52), while the Sissins Group filed a notice of non-opposition to the competing motions (Dkt. Nos. 51).

1

*1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).  Alongside financial loss, courts also consider net shares purchased (*i.e.*, shares retained) in assessing financial interest.  *Id.*  The following table compares Diaferia and Sisun's financial interest in this litigation to those of the competing movants:

| Movant(s) | Shares Retained | Loss | |
|---|---|---|---|
| | | FIFO | LIFO |
| Diaferia & Sisun | 36,050 | $652,565 | $626,306 |
| *Diaferia* | *28,350* | *$348,311* | *$349,064* |
| *Sisun* | *7,700* | *$304,254* | *$277,242* |
| Mirzayan Group | 35,208 | $524,629 | $524,629 |
| *R. Mirzayan* | *24,200* | *$213,875* | *$213,875* |
| *A.Y. Yeo* | *0* | *$5,403* | *$5,403* |
| *Triple A&E LLC* | *3,715* | *$153,050* | *$153,050* |
| *T. Whaler* | *4,967* | *$72,022* | *$72,022* |
| *G. Whaler* | *(76)* | *$26,002* | *$26,006* |
| *G. & T. Whaler (jointly)* | *2,402* | *$54,272* | *$54,272* |
| Thrailkill | 18,000 | $267,161 | $267,161 |
| Lefebvre | 4,000 | $213,643 | $213,653 |
| Ahmad | 0 | $0 | $0 |

As the table reflects, Diaferia and Sisun have a larger financial interest in this action than any competing movant by a significant margin.  Diaferia and Sisun incurred an aggregate loss of ***$652,565*** on a FIFO basis or ***$626,306*** on a LIFO basis in connection with their purchases of Evolus securities as a result of the Defendants' alleged malfeasance, more than $100,000 more than the Mirzayan Group, the movant with the next-largest loss.  In addition, Diaferia and Sisun retained 36,050 shares, significantly more than the 35,208 shares retained by the Mirzayan Group.  Even considered individually, Diaferia alone incurred a loss of more than $348,000 calculated on either a FIFO or LIFO basis, considerably more than any individual competing movant or individual member of any competing movant group considered alone.  As such, Diaferia and Sisun plainly have the largest financial interest within the meaning of the PSLRA of any putative Class members seeking appointment as Lead Plaintiff.

Although one competing movant, Ahmad, claims to have incurred a loss of $748,164 in connection with his Class Period purchases of Evolus securities, Ahmad sold all of his Class Period holdings of Evolus stock by January 14, 2020, and thus held *zero* Evolus securities that were damaged by the corrective disclosures that laid bare Evolus's malfeasance on March 4, 2020 and July 6, 2020, as alleged in the Complaint in this Action. *See* Dkt. No. 1 ¶¶ 60, 63-64. Accordingly, Ahmad held no Evolus shares that declined in value as a consequence of the revelation of the Defendants' alleged fraud, and thus has incurred no losses whatsoever that are recoverable in this Action pursuant the loss causation methodology mandated by the Supreme Court in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). With respect to fraud claims arising under Section 10(b) of the Exchange Act, "if . . . the purchaser sells the shares . . . before the relevant truth beings to leak out, *the misrepresentation will not have led to any loss*." *Id.* at 342 (emphasis added). *See also Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 498 (D. Conn. 2017) (disregarding losses not "directly tied to the misconduct alleged in the complaint"). Ahmad thus has *zero* recoverable losses in this Action and, lacking any financial interest in this litigation, his motion must be denied.

Diaferia and Sisun also satisfy the typicality and adequacy requirements of Rule 23. Diaferia and Sisun, like all Class members, purchased Evolus securities at prices artificially inflated by the Company's misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations or omissions. These shared claims, which are based upon the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirements of Rule 23. *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010). Diaferia and Sisun's significant losses give them a sufficient stake in this litigation's outcome to ensure vigorous prosecution; Diaferia and Sisun are aware of no conflict

3

between their interests and those of the putative Class; and in Pomerantz, Diaferia and Sisun have retained qualified and experienced counsel.  For all of the foregoing reasons, Diaferia and Sisun satisfy the adequacy requirements of Rule 23.  *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at \*2 (S.D.N.Y. Apr. 12, 2018) (same).

Moreover, Diaferia and Sisun comprise a small and cohesive partnership of investors who have further  demonstrated their adequacy by the submission of a Joint Declaration contemporaneously with their motion, attesting to, *inter alia*, their shared understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA and their preparedness to coordinate their efforts to prosecute this action diligently on behalf of the Class.  *See* Dkt. No. 43-4.  In *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018), the Supreme Court recently affirmed the propriety of appointing such groups as lead plaintiff, finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups".  *See also In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 U.S. Dist. LEXIS 207531, at \*13 (E.D.N.Y. Dec. 15, 2017) (affirming adequacy of group of four investors to serve as Lead Plaintiff under similar circumstances).

By contrast, the fact that Ahmad did not retain *any* shares at the time that Evolus's alleged fraud came to light not only reduces his financial interest in this litigation to *zero*, but also subjects him to unique defenses that disqualify him from appointment as Lead Plaintiff.  The PSLRA precludes the appointment of a lead plaintiff that "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). *See also In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243, at \*19 (N.D. Ill. Mar. 15, 2005) ("The PSLRA . . . provides that we ask simply whether [a movant]

4

is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."). "[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)). Apparently lacking any injury caused by Evolus's alleged malfeasance, it is highly likely that Ahmad will ultimately be found to lack standing to pursue securities fraud claims against the Defendants if appointed as Lead Plaintiff, or at the very least will have to spend considerable time litigating this issue, at the expense of its capacity to pursue the Class's fraud claims.

For the reasons set forth herein, Diaferia and Sisun respectfully submit that their motion should be granted in its entirety, and that the competing motions should be denied.

## **ARGUMENT**

### I.    **DIAFERIA AND SISUN SHOULD BE APPOINTED LEAD PLAINTIFF**

The PSLRA creates a strong presumption that the "most adequate plaintiff"—*i.e.*, the Lead Plaintiff—is the movant or group of movants that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest need only make a *prima facie* showing at this stage that he or she satisfies the adequacy and typicality requirements of Rule 23. *See Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Here, the most adequate class representatives are Diaferia and Sisun.

A.      **Diaferia and Sisun Possesses the Largest Financial Interest in the Litigation**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in this Judicial District generally recognize that the amount of financial loss is the most significant factor to be considered.  *Chahal*, 2018 WL 3093965, at *4; *Nurlybaev*, 2017 WL 5256769, at *1; *Pirelli Armstrong Tire*, 229 F.R.D. at 404-05.  Alongside loss, courts will often consider net shares purchased (*i.e.*, retained shares) as well in assessing financial interest.  *Id.*

Under either of the foregoing analyses, no movant seeking appointment as Lead Plaintiff in the Action has alleged a larger financial interest in this litigation than Diaferia and Sisun.  As the table at p. 2 illustrates, Diaferia and Sisun's loss of over $600,000 exceeds the loss of the Mirzayan Group, the movant alleging the second-largest loss, by over $100,000.  Likewise, Diaferia and Sisun retained 36,050 shares, significantly more than the 35,208 shares retained by the Mirzayan Group.  Indeed, Diaferia alone incurred a loss of more than $348,000 calculated on either a FIFO or LIFO basis, much more than any individual competing movant or individual member of any competing movant group considered alone.  As such, Diaferia and Sisun clearly have the largest financial interest within the meaning of the PSLRA of any putative Class member seeking appointment as Lead Plaintiff.

While one competing movant, Ahmad, claims to have incurred a loss of $748,164 in connection with his Class Period purchases of Evolus securities, Ahmad's recoverable losses in this Action are in fact *zero*.  The seminal Supreme Court decision *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), unambiguously established the principle that any assessment of financial interest for the purposes of lead plaintiff appointment must take into account only

6

*recoverable* losses—*i.e.*, losses actually traceable to the alleged fraud and its disclosure.  Fifteen years after *Dura*, it is by now axiomatic that if "the purchaser sells the shares . . . before the relevant truth beings to leak out, the misrepresentation will not have led to any loss." 544 U.S. at 342 (emphases added).  *See also In re Comverse Tech., Inc. Sec. Litig.*, 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007) ("[U]nder *Dura* and its progeny," losses are only recoverable if "proximately . . . linked to the misconduct at issue in this litigation."); *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 476 (S.D.N.Y. 2016) ("[I]n evaluating financial loss, courts must consider only those losses proximately caused by the defendant's misrepresentations or other fraudulent conduct."); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *11 (N.D. Cal. Aug. 22, 2008) ("loss causation can only be demonstrated with respect to shares retained as of the date of the corrective disclosure") (emphasis added); *Foster v. Maxwell Techs., Inc.*, Nos. 13-cv-00580- BEN-RBB *et al.*, 2013 U.S. Dist. LEXIS 154538, at *10 (S.D. Cal. Oct. 24, 2013) ("The misrepresentation does ***not*** lead to a loss if the purchaser sells the shares ***before*** the truth is revealed.") (emphases added).

Here, the schedule of transactions appended to Ahmad's Certification attests that he purchased a total of 340,000 shares of Evolus stock during the Class Period.  *See* Dkt. No. 26-2. However, Ahmad's transaction schedule also makes clear that he ***sold all of these shares*** in a series of transactions beginning on March 14, 2019 and ending on January 14, 2020.  *See id.* at *3.  The Complaint in this Action alleges that the Defendants misled investors during the Class Period by failing to disclose that the botulinum toxin bacterial strain and manufacturing processes used to develop Evolus's Jeuveau product had been misappropriated from the companies Allergan and Medytox, and that this misappropriation subjected Evolus to a real threat of regulatory and/or court action likely to impact the Company's ability to commercialize Jeuveau.  *See* Dkt. No. 1 ¶ 4.  The

7

Complaint further alleges that investors began to learn the truth about Jeuveau on March 4, 2020, when Medytox stated that an International Trade Commission ("ITC") attorney had submitted an opinion backing Medytox's misappropriation claims against Evolus, causing the Company's stock price to fall sharply. *Id.* ¶ 60. The Complaint further alleges that a subsequent and final (*i.e.*, Class Period-ending) disclosure occurred on July 6, 2020, when the ITC Court issued a Final Initial Determination finding, *inter alia*, that Evolus had misappropriated Medytox's trade secrets, which news was also followed by a sharp drop in Evolus's stock price. *Id.* ¶¶ 63-64.

Accordingly, by the time of the two corrective disclosures alleged in the Complaint, Ahmad held *zero* shares of Evolus stock. Accordingly, having sold all of his Evolus shares *prior* to any disclosure of the fraud at issue of this litigation, *none* of Ahmad's claimed losses are in fact a consequence of the alleged fraud, and thus his losses are *not* recoverable in this litigation.

## B.    Diaferia and Sisun Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Diaferia and Sisun have also made the requisite *prima facie* showings that they satisfy the typicality and adequacy requirements of Rule 23. *Aude*, 2018 WL 1634872, at *3; *Kaplan*, 240 F.R.D. at 94.

First, Diaferia and Sisun's claims satisfy the typicality requirement of Rule 23(a)(3) because their claims in the Action are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *Orion Sec. Litig.*, 2008 WL 2811358, at *5; *Janbay*, 272 F.R.D. at 120. Second, Diaferia and Sisun satisfy the adequacy requirement of Rule 23(a)(4) because they have a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, are aware of no conflict between their interests and those of the putative Class, and, as discussed in greater detail below, they have selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to

8

serve as Lead Counsel for the Class. *Foley*, 272 F.R.D. at 131; *Dookeran*, 2018 WL 1779348, at *2. Diaferia and Sisun have further demonstrated their adequacy by submission of a Joint Declaration attesting to, *inter alia*, their respective backgrounds and investment experience; their understanding of the posture of this litigation; their understanding of the significance of their motion; their understanding of the responsibilities of a lead plaintiff appointed pursuant to the PSLRA; and their readiness to undertake those responsibilities on behalf of the Class. *See generally* Dkt. No. 43-4.

### C.    Diaferia and Sisun Are an Appropriate Group

Diaferia and Sisun are an appropriate group, and as such the Court should consider their aggregate financial interest in this litigation in determining the most adequate plaintiff for the Class. *See*, *e.g.*, *China Agritech*, 138 S. Ct. at 1807 n.3 ("District courts often permit aggregation of plaintiffs into plaintiff groups"); *Blue Apron*, 2017 U.S. Dist. LEXIS 207531, at *13; *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff); *Cendant*, 264 F.3d at 266 ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted).

Here, Diaferia and Sisun comprise a small, cohesive partnership of two investors, each of whom incurred significant losses in connection with their purchases of Evolus securities. *See* Dkt. No. 43-1. Contemporaneously with their motion, Diaferia and Sisun submitted a Joint Declaration attesting to, *inter alia*, their respective backgrounds and investment experience, their awareness of the posture of this litigation generally and of the significance of their motion specifically, their

9

understanding of the responsibilities of lead plaintiffs, and their reasons for seeking appointment jointly as Co-Lead Plaintiffs in this Action. *See generally* Dkt. No. 43-4. Courts routinely appoint investor groups as lead plaintiff under such circumstances. *See, e.g.*, *Blue Apron*, 2017 U.S. Dist. LEXIS, at *17 (appointing group of four unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *Brady v. Top Ships Inc.*, No. 17-CV-4987 (JFB) (SIL), 2018 U.S. Dist. LEXIS 121765, at *20 (E.D.N.Y. July 20, 2018) (appointing group of three investors as lead plaintiff, finding the group "sufficiently demonstrated its members' plans for cooperation and involvement in the litigation for the Court to find this group will best serve the class."); *West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2014 U.S. Dist. LEXIS 49595, at *7 (E.D. Pa. Apr. 9, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2012 U.S. Dist. LEXIS 89192, at *11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

\* \* \* \*

Because Diaferia and Sisun have the largest financial interest in the relief sought by the Class and otherwise satisfy Rule 23, they are the presumptive "most adequate plaintiffs" of the Class within the meaning of the PSLRA. To overcome the strong presumption entitling Diaferia and Sisun to appointment as Lead Plaintiffs, the PSLRA requires **"*proof*"** that the presumptive Lead Plaintiffs are inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any arguments to the contrary should be flatly rejected.

10

## II.    AHMAD IS SUBJECT TO THE UNIQUE DEFENSE THAT HE LACKS STANDING

The fact that Ahmad has incurred zero losses that are recoverable in this litigation not only reduces his financial interest in this action to zero (as discussed above), it also further disqualifies him from consideration because, having sold all of his Evolus shares months prior to the disclosures of the Company's alleged fraud, Ahmad has incurred no injury traceable to Defendants' malfeasance and thus lacks standing to pursue fraud claims in this litigation. "[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Valley Forge Christian College*, 454 U.S. at 472). "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1. Standing is granted by Article III "only to redress or otherwise to protect against injury to the complaining party." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771–72 (2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  In a securities fraud action under Section 10(b) of the Exchange Act, injury-in-fact requires that the plaintiff actually held the securities at issue on which the alleged fraud was revealed to the market—*i.e.*, that the economic loss that the plaintiff incurred on its investment was actually caused by the revelation of the fraud, rather than by other market forces. *See*, *e.g.*, *Dura*, 544 U.S. at 343-44.  As the Supreme Court held in *Dura*, "if . . . the purchaser sells the shares . . . before the relevant truth beings to leak out, *the misrepresentation will not have led to any loss*." *Dura*, 544 U.S. at 342 (emphasis added).

"The PSLRA . . . provides that we ask simply whether [a movant] is *likely* to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *Bally Total Fitness*, 2005 U.S. Dist. LEXIS 6243, at *19 (emphasis added).  If appointed as a Lead Plaintiff, Ahmad will clearly be forced to spend considerable time and energy litigating the question of his standing, at the expense of his ability to pursue fraud claims on behalf of the Class.

11

There is simply no reason to burden the Class with a Lead Plaintiff subject to such debilitating issues.

## III.    DIAFERIA AND SISUN'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with the Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Diaferia and Sisun have selected Pomerantz as Lead Counsel for the Class.  As its resume reflects, Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  *See* Dkt. No. 43-5.  Thus, the Court may be assured that by approving Diaferia and Sisun's selection of counsel, the members of the Class will receive the best legal representation available.

## CONCLUSION

For all of the foregoing reasons, Diaferia and Sisun respectfully request that this Court enter an Order: (1) appointing Diaferia and Sisun as Lead Plaintiffs for the Class; and (2) approving Diaferia and Sisun's selection of Lead Counsel for the Class.

Dated:  December 29, 2020

Respectfully Submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016

12

Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Movants Peter Diaferia and Mitchell Sisun and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Peter Diaferia and Mitchell Sisun*

13