**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EVOLUS INC. SECURITIES LITIGATION | Master File No. 1:20-cv-08647 (PGG) |

**JAMES LEFEBVRE'S MEMORANDUM OF LAW IN OPPOSITION
TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF LEAD COUNSEL**

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ...................................................................................... 1

II.     ARGUMENT................................................................................................................... 3

      A.      The PSLRA-Mandated Procedure for Appointing a Lead Plaintiff......................... 3

      B.      LeFebvre Is the *Bona Fide* Movant with the Largest Financial Interest ................ 3

      C.      The Groups Cannot Trigger the Most Adequate Plaintiff Presumption ................. 6

      D.      The Presumption that Movant Is the Most Adequate Plaintiff Has Not Been Rebutted ......................................................................................................................... 9

      E.      LeFebvre's Selection of Counsel Should Be Approved ......................................... 9

III.    CONCLUSION................................................................................................................ 10

i

## TABLE OF AUTHORITIES

<u>CASES</u>

*Cha v. Kinross Gold Corp.*,
  2012 WL 2025850 (S.D.N.Y. May 31, 2012)........................................................................5

*Dura Pharmaceuticals v. Broudo*,
  544 U.S. 336 (2005) ...........................................................................................................2

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002).............................................................................................4

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ..............................................................................................6

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005)..........................................................................................9

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015)................................................................................8

*In re Stitch Fix, Inc. Sec. Litig.*,
  393 F. Supp. 3d 833 (N.D. Cal. 2019) ...............................................................................8

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009)........................................................................................9

*Jakobsen v. Aphria, Inc.*,
  2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ...................................................................8

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015)..........................................................................4, 6

*Kniffin v. Micron Tech., Inc.*,
  379 F. Supp. 3d 259 (S.D.N.Y. 2019)...........................................................................7, 10

*McDermid v. Inovio Pharm., Inc.*,
  2020 WL 3288189 (E.D. Pa. June 18, 2020) .....................................................................8

*Nakamura v. BRF S.A.*,
  2018 WL 3217412 (S.D.N.Y. July 2, 2018) ......................................................................7

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
  275 F.R.D. 187 (S.D.N.Y. 2011)........................................................................................7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004).................................................................................. 3

*Sallustro v. CannaVest Corp.*,
   93 F. Supp. 3d 265 (S.D.N.Y. 2015)................................................................... 2, 4, 5

*Simco v. Aegean Marine Petroleum Network Inc.*,
   2018 WL 11226076 (S.D.N.Y. Oct. 30, 2018) .......................................................... 4

*Tan v. NIO Inc.*,
   2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) ........................................................... 7

*Topping v. Deloitte Touche Tohmatsu CPA*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015)................................................................... 9, 10

*Tsirekidze v. Syntax-Brillian Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008).................................................................. 8

## STATUTES

15 U.S.C. § 78u-4(a)(3)(B)(i) ..................................................................................... 1, 3

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................... 2, 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)............................................................................... 2, 6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).............................................................................. 3, 9

15 U.S.C. § 78u-4(a)(3)(B)(v) .................................................................................... 3, 9

## RULES

Fed. R. Civ. P. 23.................................................................................................. 2, 3, 6

James LeFebvre ("LeFebvre" or "Movant") respectfully submits this memorandum of law in further support of his motion for appointment as lead plaintiff and approval of lead counsel, and in opposition to the competing motions.[1]

## I.    PRELIMINARY STATEMENT

Nine movants (or movant groups) filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): LeFebvre (Dkt. No. 27); Brian Blanchette and Michael Getz (the "Blanchette and Getz Group," Dkt. No. 13");[2] Armin Malakouti, Mahmood Gholami, and Daniel Mierlak (the "Investor Group," Dkt. No. 17); Raja Ahmad ("Ahmad," Dkt. No. 24); Peter Sissins, David Pressly, Chris Riccardi, and Nhung Tran (the "Evolus Investor Group," Dkt. No. 30); Kingsgrove Large Cap, LP ("Kingsgrove," Dkt. No. 31); Peter Diaferia and Mitchell Sisun (the "Diaferia and Sisun Group," Dkt. No. 38); Josh Thrailkill ("Thrailkill," Dkt. No. 39); and Dr. Raffy Mirzayan, Alice Yanlengsim Yeo, both individually and on behalf of Triple A&E LLC, Gary R. Whaler, Jr. and Theresa R. Whaler (the "Second Investor Group," Dkt. No. 45).[3]

With respect to the lead plaintiff determination, the question presently before the Court is which of these movants is the "most adequate plaintiff"—*i.e.*, the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA directs courts to appoint the "most adequate plaintiff" as lead plaintiff, and provides a rebuttable presumption that the most adequate plaintiff is the movant with the "largest financial

---

[1] On November 13, 2020, the Court consolidated this action with a substantially similar action. *See* Dkt. No. 12.

[2] Blanchette and Getz withdrew their motion on December 15, 2020. *See* Dkt. No. 23.

[3] Since two groups refer to themselves as the "Investor Group," the second "Investor Group" to file its motion is referred to herein as the "Second Investor Group."

interest in the relief sought by the class" who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

While there are a variety of methodologies to determine which movant has the largest financial interest, the modified Last-in, First-out ("LIFO") methodology has become widely accepted in this District.   This method employs the commonly used LIFO method for determining financial loss except that all shares that were purchased or sold prior to a corrective disclosure are removed since these transactions are not recoverable under *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336, 342-43 (2005).  *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) (holding that losses from sales prior to a corrective disclosure "are not recoverable under *Dura* and cannot be considered in calculating [movant's] losses").  After an "apples-to-apples" comparison under this method, it is clear that LeFebvre has the third largest financial interest of any movant after excluding securities transactions where no securities were held through the only corrective disclosure alleged in the complaints.

The two movants with purportedly larger losses than LeFebvre, however, are ineligible to be appointed as lead plaintiff because they are groups of individuals that lack any pre-litigation relationships and were cobbled together for purposes of this action by their counsel.  Courts consistently reject motions by such lawyer-driven groups as violating the stated intent of the PSLRA.  As such, LeFebvre has the largest financial interest of any *bona fide* movant.

Since LeFebvre is also adequate and typical of the class he seeks to represent, LeFebvre is the presumptively "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Moreover, since

2

no movant has rebutted the presumption, LeFebvre should be appointed lead plaintiff, and his selection of counsel should be approved.[4]

## II.    ARGUMENT

### A.    The PSLRA-Mandated Procedure for Appointing a Lead Plaintiff

The PSLRA directs courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," *i.e.*, the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" is the movant that "has either filed the complaint or made a motion," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii). After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

### B.    LeFebvre Is the *Bona Fide* Movant with the Largest Financial Interest

The PSLRA does not specify a means of calculating the "largest financial interest," and "in the absence of statutory guidance or Second Circuit case law, the method used and the factors considered in determining each movant's financial interest remain fully within the discretion of the district court." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,

---

[4] "The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v).

229 F.R.D. 395, 406–07 (S.D.N.Y. 2004); *see also In re Cavanaugh*, 306 F.3d 726, 730 n.4 (9th Cir. 2002) ("To make this comparison, the district court must calculate each potential lead plaintiff's financial interest in the litigation. In so doing, the court may select accounting methods that are both rational and consistently applied.").

Courts have typically considered: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See, e.g.*, *CannaVest*, 93 F. Supp. 3d at 270 (collecting cases). Most courts in this District agree that the fourth factor, the largest financial loss, is the most important factor. *Id.* While there are a variety of methods for determining financial loss, in recent years courts in this District have followed the lead of this Court and have accepted the modified LIFO methodology where losses related to securities that were not held at a corrective disclosure are excluded. *See CannaVest*, 93 F. Supp. 3d at 270; *see also Simco v. Aegean Marine Petroleum Network Inc.*, No. 18-cv-4993, 2018 WL 11226076, at *2 (S.D.N.Y. Oct. 30, 2018) (citing *CannaVest* and confirming that "Losses resulting from shares sold prior to corrective disclosures are not considered in evaluating a movant's financial interests."); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) ("[A]ny losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation.").

Here, determining the modified LIFO figures for each movant is not particularly complicated since there is only one corrective disclosure alleged in the two complaints that were consolidated. *See* Dkt. No. 1 at ¶¶ 63-64; *see also Cox v. Evolus, Inc. et al.*, No. 1:20-cv-09053-UA (S.D.N.Y. Oct. 28, 2020), Dkt. No. 1 at ¶¶ 63-64. As the following chart demonstrates,

4

using the modified LIFO method, LeFebvre has the largest financial loss of any non-group movant:[5]

| Name | Gross Shares | Net Shares | Net Expenditure | Modified LIFO Loss |
|---|---|---|---|---|
| Second Investor Group | 47,922 | 35,284 | -$652,833.28 | -$428,304.76 |
| *Dr. Raffy Mirzayan* | *24,200* | *24,200* | *-$301,033.28* | *-$214,266.68* |
| *Alice Yanlengsim Yeo* | *449* | *0* | *-$5,403.49* | *$0.00* |
| *Triple A&E LLC* | *10,115* | *3,715* | *-$166,429.87* | *-$87,624.74* |
| *Gary and Theresa Whaler* | *13,158* | *7,369* | *-$179,966.64* | *-$126,413.33* |
| Diaferia and Sisun Group | 58,297 | 36,050 | -$804,071.91 | -$416,133.93 |
| *Peter Diaferia* | *28,350* | *28,350* | *-$449,925.80* | *-$349,415.64* |
| *Mitchell Sisun* | *29,947* | *7,700* | *-$354,146.11* | *-$66,718.29*[6] |
| James LeFebvre | 46,496 | 15,000 | -$262,314.39 | -$233,821.91 |
| Kingsgrove Large Cap, LP | 22,000 | 22,000 | -$189,716.00 | -$110,837.27 |
| Evolus Investor Group | 13,550 | 13,550 | -$158,475.20 | -$109,893.07 |
| *Peter Sissins* | *2,050* | *2,050* | *-$47,477.50* | *-$40,127.44* |
| *David Pressly* | *10,000* | *10,000* | *-$71,532.70* | *-$35,678.73* |
| *Nhung Tran* | *500* | *500* | *-$12,005.00* | *-$10,212.30* |
| *Chris Riccardi* | *1,000* | *1,000* | *-$27,460.00* | *-$23,874.60* |
| Investor Group | 6,323 | 6,193 | -$77,968.31 | -$58,081.40 |
| *Armin Malakouti* | *900* | *770* | *-$17,097.30* | *-$16,654.00* |
| *Mahmood Gholami* | *5,000* | *5,000* | *-$50,846.00* | *-$32,919.02* |
| *Daniel Mierlak* | *423* | *423* | *-$10,025.01* | *-$8,508.39* |
| Raja Ahmad | 340,000 | 0 | -$748,294.84 | $0.00 |
| Josh Thraikill | 107,207 | 0 | -$267,148.79 | $0.00 |

---

[5] The data in this chart is derived from the movants' loss charts. Moreover, a FIFO calculation was not included since "the overwhelming trend ... nationwide has been to use LIFO to calculate such losses." *Cha v. Kinross Gold Corp.*, No. 12-cv-1203, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012); *CannaVest*, 93 F. Supp. 3d at 270. Also, as is customary, the gross and net share figures do not include options transactions.

[6] Mitchell Sisun's options contracts that expired before the corrective disclosure are not included in the modified LIFO figure since these options were not held through the corrective disclosure.

Since LeFebvre has the largest financial interest in the relief sought by the class, filed a timely motion (*see* Dkt. No. 28 at 4-5) and satisfies the requirements of Rule 23 (*see* Dkt. No. 28 at 6-7), he is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**C.      The Groups Cannot Trigger the Most Adequate Plaintiff Presumption**

As the above chart demonstrates, two groups of movants claim a larger financial loss than LeFebvre: the Diaferia and Sisun Group and the Second Investor Group.  These groups cannot be appointed lead plaintiff because their submissions both confirm that the groups were cobbled together "by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel," and, "based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001). Each of these groups specifically admit that they were put together by their counsel. For example, the Diaferia and Sisun Group admits in its joint declaration, which purports to demonstrate their cohesion, that they were introduced to each other after "consulting with our counsel." *See* Dkt. No. 43-4 at ¶ 8.  Likewise, the Second Investor Group also admits that it was their counsel that put them together and set up a conference call to introduce them.  Dkt. No. 48-1 at ¶ 9 ("After discussing the allegations against Evolus, the procedural background of the Action, the process of appointing a lead plaintiff in cases such as this, and attorneys' fees with Faruqi & Faruqi, we learned of each other's existence and similar willingness to litigate the claims of the Class. We then held a joint conference call…."). Of course, these groups were introduced to each other by their counsel since if they had known each other before the action was filed, they would say so.  And the fact that the groups participated in a single conference call is insufficient evidence of their cooperation. *See, e.g.*, *Khunt*, 102 F. Supp. 3d at 533 (declining

to appoint a proposed group as lead plaintiff where they "effectively admit[ted] to having no pre-litigation relationship ... [and] [t]heir only involvement in the litigation thus far appears to have been a single conference call").

These groups are unable to demonstrate that aggregation is appropriate. *Nakamura v. BRF S.A.*, 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018) (recognizing that a "proposed plaintiff group has the burden of showing that aggregation is appropriate"). While these groups will certainly claim that they are "cohesive," they are clearly anything but. Both groups tout their joint declarations as demonstrating cohesion. But these declarations are of the type that are consistently rejected by courts for being boilerplate, conclusory and meaningless.[7] *See, e.g.*, *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) ("vague discussions of general communication protocols and status reports hashed out over preliminary conference calls" and "boilerplate plans for cooperation" did not establish that a proposed group would work effectively and cohesively as lead plaintiff) (citing *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011)); *Tan v. NIO Inc.*, No. 19-cv-1424, 2020 WL 1031489, at *4 (E.D.N.Y. Mar. 3, 2020) ("the group's testimony about the members' involvement in the case thus far and their plans for cooperation moving forward [] represent little more than the type of 'conclusory assurances' the courts have repeatedly rejected as inadequate.").

---

[7] These descriptors certainly apply to the Diaferia and Sisun Group's join declaration since it is the **second time in this case** that the same lawyers have cobbled together groups of people that do not know each other and then submitted a nearly **verbatim joint declaration** with their motion as evidence of cohesion. *Compare* Dkt. No. 16-4 *with* 43-4. Certainly, these groups with their boilerplate declarations that were put together by their counsel fail to meet its burden to demonstrate that its formation was designed to accomplish something other than attaining the largest financial interest.

In reality, the joint declaration filed by the Diaferia and Sisun Group actually demonstrates that there is no cohesion between the two members. In the joint declaration, they admit that "if a disagreement arises, we agree to resolve such disagreement by a majority vote, in which each of us possesses a number of votes equal to our losses incurred in connection with our Class Period purchases of Evolus securities, calculated in terms of U.S. dollars." Dkt. No. 43-4 at ¶ 9. In a two-person group, this means that one of the members gets to make every decision for the group: this is not cohesive in anyway, effectively eliminates one of the members of the group, and is fatal to their motion.

The Diaferia and Sisun Group may try to save their motion by claiming that they are cohesive since Diaferia has the largest individual loss. However, this fact is irrelevant since he did not move individually, but only as a member of a group. As such, the Court should not consider him, or any group members, individually for appointment as lead plaintiff. *Jakobsen v. Aphria, Inc.*, No. 18-cv-11376, 2019 WL 1522598, at *4 (S.D.N.Y. Mar. 27, 2019) ("There are no separate motions to appoint any member of the Wan Group as lead plaintiff on an individual basis. As such, this Court does not consider whether each individual member of the Wan Group could be appointed as lead plaintiff."); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 624 n.4 (S.D.N.Y. 2015) (refusing to appoint group member with the largest loss because it "at no time sought to serve as individual lead plaintiff").[8]

---

[8] *See also Tsirekidze v. Syntax-Brillian Corp.*, No. 07-cv-2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) ("The [] Group moved for lead plaintiff as a group and will be evaluated as such."); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) ("the Court declines to . . . consider their individual losses" because "the group members have not requested individual consideration"); *McDermid v. Inovio Pharm., Inc.*, 2020 WL 3288189, at *5 (E.D. Pa. June 18, 2020) ("Congress instructs courts to consider timely motions and select a lead plaintiff from among those movants. . . . The Inovio Group 'decided to move together as a group. . . .' That group motion is the one before the Court, and the Court will not retroactively amend it . . . .") (citation omitted)

**D.      The Presumption that Movant Is the Most Adequate Plaintiff Has Not Been Rebutted**

As discussed above, after excluding the cobbled-together groups, it is clear that LeFebvre has the largest financial interest and is thus the presumptively most adequate plaintiff.  The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No proof has been presented that LeFebvre would be inadequate or subject to unique defenses. As such, LeFebvre should be appointed as lead plaintiff, and other movants should not be entitled to further consideration. *See Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry").[9]

**E.      LeFebvre's Selection of Counsel Should Be Approved**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the approval of the Court, *see* 15 U.S.C. § 78u-4(a)(3)(B)(v), and "[t]here is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015). As such, LeFebvre's selection of Glancy Prongay & Murray LLP should be approved.

Glancy Prongay & Murray LLP has the expertise, resources, and experience needed to efficiently and effectively conduct this litigation. *See* Dkt. No. 29-4 (Glancy Prongay & Murray LLP firm résumé). The firm has more than 20 years of experience successfully representing

_____

[9] As such, the Court should reject any movant's request that the Court should conduct a comparative analysis between the movants. *See In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98-99 (S.D.N.Y. 2005) ("The lead plaintiff determination does not depend on the court's judgment of which party would be best lead plaintiff for the class, but rather which candidate fulfils the requirements of the Act.").

9

injured investors. *See id.* By approving LeFebvre's selection of counsel, the Court will ensure that the class will receive the highest caliber of legal representation. Accordingly, LeFebvre's selection of lead counsel for the class should be approved. *See Kniffin*, 379 F. Supp. 3d at 266 (approving Glancy Prongay & Murray LLP as lead counsel and finding the firm "competent and experienced").

## III.   CONCLUSION

For the foregoing reasons, LeFebvre respectfully requests that the Court deny the competing lead plaintiff motions and enter an order: (1) appointing LeFebvre as lead plaintiff; (2) approving his selection of Glancy Prongay & Murray LLP as lead counsel for the class; and (3) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: December 29, 2020          **GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Gregory B. Linkh*
Gregory B. Linkh
230 Park Ave., Suite 530
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

and-

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Movant James LeFebvre and*
*Proposed Lead Counsel for the Class*

10

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On December 29, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 29, 2020, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh