**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EVOLUS INC. SECURITIES LITIGATION | Case No. 1:20-cv-08647 (PGG) |
| | CLASS ACTION |

**THE INVESTOR GROUP'S MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .............................................................................................................................. 4

I.    AHMAD LACKS STANDING BECAUSE HE COMPLETELY SOLD OUT OF HIS
      POSITION IN EVOLUS BEFORE THE CORRECTIVE DISCLOSURE ALLEGED
      IN THE COMPLAINT ...................................................................................................... 4

II.   DIAFERIA AND SISUN SHOULD BE DISQUALIFIED BECAUSE THEIR
      CERTIFICATION IS FACIALLY INCORRECT ............................................................ 7

III.  THE REMAINING COMPETING MOTIONS SHOULD BE DENIED
      BECAUSE THEY HAVE A SMALLER FINANCIAL INTEREST THAN THE
      INVESTOR GROUP .......................................................................................................... 9

IV.   THE INVESTOR GROUP WOULD CLEARLY BE THE MOST ADEQUATE
      LEAD PLAINTIFF ........................................................................................................... 11

V.    THE INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF AND
      THE INVESTOR GROUP'S SELECTION OF THE FARUQI FIRM SHOULD
      BE APPROVED ................................................................................................................ 12

CONCLUSION........................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008) ...................................................................................11

*Bhojwani v. Pistiolis*,
   No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588 (S.D.N.Y. July 31, 2007) ........................7

*In re Boeing Co. Aircraft Sec. Litig.*,
   No. 19-CV-02394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020) ................................................7

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ...............................................................................................5, 6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ....................................................................................................6

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ..........................................................................................11

*In re Intelligroup Securities Litig.*,
   527 F. Supp. 2d 262 (D.N.J. 2007) ........................................................................................5

*Levine v. AtriCure, Inc.*,
   508 F. Supp. 2d 268 (S.D.N.Y. 2007) ..................................................................................11

*Li Hong Cheng v. Canada Goose Holdings Inc.*,
   No. 19-CV-8204 (VSB), 2019 WL 6617981 (S.D.N.Y. Dec. 5, 2019) ...................................7

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ...............................................................................................................4

*In re McKesson HBOC, Inc. Sec. Litig.*,
   97 F. Supp. 2d 993 (N.D. Cal. 1999) .....................................................................................6

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
   720 F. Supp. 2d 517 (D.N.J. 2010) ........................................................................................5

*Perlmutter v. Intuitive Surgical, Inc.*,
   No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ...................................6

*Plaut v. Goldman Sachs Grp., Inc.*,
   No. 18-CV-12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ..............................7

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ...........................................................................................................4

ii

*Tomaszewski v. Trevena, Inc.*,
   383 F. Supp. 3d 409 (E.D. Pa. 2019) .................................................................................7

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) .......................................................................................11

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*,
   529 U.S. 765 (2000)............................................................................................................4

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
   No. CIV A 07-177 FLW, 2007 WL 2683636 (D.N.J. Sept. 7, 2007).................................7

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(i) ....................................................................................................10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)........................................................................................10, 11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)..........................................................................................4, 11

15 U.S.C. § 78u-4(a)(3)(B)(v) ...................................................................................................12

15 U.S.C.A. § 78u–4(b)(4)............................................................................................................5

Securities Exchange Act of 1934, § 21D(b)(4)..............................................................................4

**Other Authorities**

Const. Art. 3, § 2, cl. 1 ................................................................................................................4

Dr. Raffy Mirzayan, Alice Yanlengsim Yeo, individually and on behalf of Triple A&E LLC, Gary R. Whaler, Jr. and Theresa R. Whaler (the "Investor Group"), respectfully submits this memorandum of law in opposition to the other motions to be appointed lead plaintiff and in further support of its motion to (1) be appointed Lead Plaintiff for the Action and (2) approve its choice of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.  ECF No. 45.[1]

## PRELIMINARY STATEMENT

The Investor Group is a small cohesive group of sophisticated investors with $526,444.45 in losses arising from the alleged fraud in this case, which has retained a single highly experienced law firm to represent it and the putative class. After considering the other seven movants, the Investor Group is the only movant that fully meets the requirements under the PSLRA and Rule 23 that can fairly and adequately represent Evolus, Inc. ("Evolus" or "the Company") shareholders in this class action.

Of the seven other movants that sought appointment as lead plaintiff on December 15, 2020[2] only two reported a financial interest larger than the Investor Group:  Raja Ahmad ("Ahmad") (ECF Nos. 24-26), and Peter Diaferia ("Diaferia") & Mitchell Sisun ("Sisun") (ECF Nos. 38, 40, 41, 43).  Neither should be appointed lead plaintiff in this case.

---

[1]    On November 13, 2020, the Court entered an order, consolidating all securities actions on file against Evolus, Inc., and captioned the action *In re Evolus Inc. Securities Litigation*, Docket No. 1:20-cv-08647-PGG. Unless stated otherwise, the following conventions apply: (1) all references to the docket are to the master consolidated action bearing the docket number 1:20-cv-08647-PGG; (2) all citations, internal quotation marks and footnotes are omitted; and (3) all emphases are added.

[2]    *See* Motion of Armin Malakouti, Mahmood Gholami, Daniel Mirlak (ECF Nos. 17-20), Motion of James LeFebvre (ECF Nos. 27-29), Motion of Peter Sissins, David Pressly, Nhung Tran, Chris Riccardi (ECF Nos. 30, 32, 35, 37), Motion of Kingsgrove Large Cap, LP (ECF Nos. 31, 33, 34, 36), Motion of  Josh Thrailkill (ECF Nos. 39, 42, 44, 46).

1

Ahmad is disqualified from leading this Action because he has not suffered damages that are attributable to the reported fraud. As reflected in his PSLRA Certification, Ahmad completely sold out his entire position in Evolus stock before the end of the Class Period on July 6, 2020 when the only corrective disclosure revealing the fraud was made to the market. *See* Complaint ¶ 63 (ECF No. 1). In other words, Ahmad sold all of his Evolus stock at a time when the stock price continued to be artificially inflated due to the alleged fraud. The LIFO and FIFO loss formulas that are generally accepted by the courts to appoint lead plaintiffs under the PSLRA provide a rough estimate of losses at the beginning of a case, but do not adequately account for a situation such as Mr. Ahmad's situation.

Messrs. Diaferia and Sisun also are disqualified because they submitted incorrect certifications regarding their Evolus trades. The purchase price for nineteen (19) of Diaferia's transactions are outside of the range of stock price performance on the dates of those transactions. The purchase price for 1 of Sisun's transactions similarly is outside of the range of stock price performance for Evolus on the date of that transaction. In other words, they reported purchasing their Evolus stock at a price at which Evolus stock never traded on those dates. Whether by accident or not, the submission of a sworn statement of stock trades on which the Court has to rely to make the lead plaintiff determination, that is incorrect, renders them inadequate to take on the heavy responsibilities and duties owed to absent class members under the PSLRA and Rule 23. This Court should not bestow that kind of responsibility on these movants.[3]

---

[3]    Messrs. Diaferia and Sisun also have moved for lead plaintiff with two laws firms, Pomerantz, LLP ("Pomerantz") and the Portnoy Law Firm ("Portnoy") (listed as "Additional Counsel"). ECF No. 41 at 13. The involvement of two firms in this case is not necessary.

The remaining competing movants who are not disqualified have suffered smaller financial losses than the Investor Group's $526,444.45 making the Investor Group the presumptive lead plaintiff. The chart below shows the losses of the movants that are qualified to serve.

| Movant | Firm | Losses | Status |
|---|---|---|---|
| The Investor Group | Faruqi & Faruqi, LLP | $526,444.45 | Only qualified movant with largest losses and should be appointed lead plaintiff |
| Raja Ahmad | The Rosen Law Firm, P.A. | $748,294.84 | Disqualified |
| Peter Diferia Mitchell Sisun | Pomerantz, LLP Portnoy Law Firm ("Additional Counsel) | $626,306.00 | Disqualified |
| Josh Thrailkill | Roch Cyulnik Freedman, LLP | $267,418.11 | Lacks largest financial interest (Notice of Non-Opposition filed on 12/29/20-ECF No. 56) |
| James LeFebvre | Glancy Prongay & Murray, LLP | $213,057.81 | Lacks largest financial interest |
| Kingsgrove Large Cap, LP | Robbins Geller Rudman & Dowd, LLP | $110,837.27 | Lacks largest financial interest (Motion withdrawn on 12/29/20-ECF No. 52) |
| Peter Sissins, David Pressly, Nhung Tran, Chris Riccardi | Brager Eagel & Squire, P.C. | $109,691.33 | Lacks largest financial interest (Notice of Non-Opposition filed on 12/29/20-ECF No. 51) |
| Armin Malakouti, Mahmood Gholami, Daniel Mierlak | Lowey Dannenberg, P.C. | $55,653.07 | Lacks largest financial interest (Motion withdrawn on 12/29/20-ECF No. 50) |

The Investor Group respectfully submits that it is the movant that meets all of the requirements of the PSLRA and Rule 23 and it should be appointed Lead Plaintiff and its counsel appointed Lead Counsel. For the reasons summarized above and those explained more fully below, the Investor Group's motion should be granted in its entirety.

3

## ARGUMENT

**I.    AHMAD LACKS STANDING BECAUSE HE COMPLETELY SOLD OUT OF HIS POSITION IN EVOLUS BEFORE THE CORRECTIVE DISCLOSURE ALLEGED IN THE COMPLAINT**

Ahmad should be disqualified from appointment as Lead Plaintiff because, based on his reported Evolus transactions, he sold all of the shares that he purchased during the Class Period and held no Evolus securities on the date that the Defendants' alleged fraud was disclosed to the market. As such, Ahmad has incurred no injury traceable to Defendants' alleged securities fraud and lacks standing to pursue fraud claims in this litigation, which will subject him to a unique defense. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Article III judicial power exists only to redress or otherwise to protect against injury to the complaining party. U.S.C.A. Const. Art. 3, § 2, cl. 1. *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765 (2000). "[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), as revised (May 24, 2016) (quoting *Valley Forge Christian College v. Am. United for Separation of Church and State, Inc.,* 454 U.S. 464, 472 (1982)). "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992).

Here, in a securities fraud action under Section 10(b) of the Securities & Exchange Act of 1934, injury-in-fact requires that the plaintiff actually held the securities at issue on which the alleged fraud was revealed to the market, *i.e.*, that the economic loss that the plaintiff incurred on its investment was actually caused by the revelation of the fraud, rather than by other market forces. An investor claiming securities fraud under the Securities Exchange Act cannot satisfy the requirement of proving that the fraud caused an economic loss simply by alleging in the complaint, and subsequently establishing, that the price of the security on the date of purchase was inflated because of the misrepresentation. Securities Exchange Act of 1934, § 21D(b)(4), as

4

amended, 15 U.S.C.A. § 78u–4(b)(4); *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336 (2005). If the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have caused any loss. *Id.* at 342. In other words, the plaintiff is required to plead that the decline in the stock price was caused by the market's discovery of defendant's fraud. *Id.*; *see also In re Intelligroup Securities Litig.*, 527 F. Supp. 2d 262 (D.N.J. 2007). "[I]n order [t]o establish loss causation, a plaintiff must allege . . . that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Id*. at 297 (internal quotations omitted); *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.,* 720 F. Supp. 2d 517, 559 (D.N.J. 2010).

Ahmad attests that he sold the last of his holdings of Evolus securities on January 14, 2020. *See* ECF No. 26-2. As the Complaint alleges, Defendants' fraud did not come to light until July 6, 2020, at which point the value of the Company's securities fell precipitously. *See* ECF No. 1 ¶¶ 5-6, 63-64. Having sold all of his Evolus securities more than *five months* earlier when Evolus stock was still artificially elevated by Defendants' fraudulent statements to the market, Ahmad held zero Evolus securities when the alleged fraud was revealed to the market on July 6, 2020, meaning that he incurred no economic loss whatsoever that is traceable to the Defendants' misconduct, an issue that is likely to be raised later in this case by Defendants challenging class certification.

In view of this unique defense he alone faces, Ahmad fails the PSLRA and the Rule 23 tests to be appointed lead plaintiff. Of the 340,000 shares Ahmad purchased during the Class Period, he sold **all 340,000** shares prior to the only corrective disclosure alleged in the complaint. *See* ECF No. 26-3. Since Ahmad sold all of his shares before the only corrective disclosure in the

5

complaint, Ahmad actually appears to have off-loaded his entire position while Defendants continued to mislead the market with allegedly false inflationary statements and therefore **benefitted** from the fraud because he sold shares at prices that were artificially inflated due to the alleged fraud. Courts disqualify movants who sell their stock while the price is inflated due to the alleged fraud and who do not retain any shares purchased during the class period. *Dura Pharm.,* 544 U.S. at 342 ("[I]f [] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d 29 (2d Cir. 2009) (finding in-and-out traders were neither typical or adequate because they could not establish loss causation); *Perlmutter v. Intuitive Surgical, Inc.,* No. 10-CV-03451-LHK, 2011 WL 566814, at *9 (N.D. Cal. Feb. 15, 2011) ("[T]he fact that [movant] received more money from selling stock at fraudulently inflated prices than he spent purchasing stock at inflated prices makes it more likely that [movant] benefitted from Defendants' alleged fraud."); *In re McKesson HBOC, Inc. Sec. Litig.,* 97 F. Supp. 2d 993, 996-97 (N.D. Cal. 1999) ("A net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed. By contrast, a net seller has arguably profited more from the fraud than it has been injured, possibly reducing its incentive to litigate.") (emphasis in original).

In sum, if appointed as a Lead Plaintiff, Ahmad will clearly be forced to spend considerable time and energy litigating the question of his standing, at the expense of its ability to pursue fraud claims on behalf of the Class, and at the risk of greatly delaying this action if another Lead Plaintiff must be appointed to take his place.

6

## II.    DIAFERIA AND SISUN SHOULD BE DISQUALIFIED BECAUSE THEIR CERTIFICATION IS FACIALLY INCORRECT

Diaferia and Sisun are inadequate because their Certifications (*see* ECF No. 43-3) are facially incorrect, attesting—under penalty of perjury—to purchases of Evolus securities at prices that do not accurately reflect the market trading price of Evolus stock on those dates. The purchase price for nineteen (19) of Diaferia's transactions are outside of the range of stock price performance on the dates of those transactions. The purchase price for 1 of Sisun's transactions similarly is outside of the range of stock price performance for Evolus on the date of that transaction.

Courts routinely deny lead plaintiff motions that are accompanied by false and erroneous submissions on the grounds that they demonstrate the movant's inadequacy to meet the burden and responsibilities of serving in a representative capacity. *See, e.g., In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. CIV A 07-177 FLW, 2007 WL 2683636, at *7-8 n.8 (D.N.J. Sept. 7, 2007) (denying motion by movant whose certification "contained incorrect trading data and loss calculations," finding it to be "plagued with misinformation"); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-CV-02394, 2020 WL 476658 (N.D. Ill. Jan. 28, 2020) (denying motion by movants where errors in loss calculations demonstrated that movants either knowingly submitted incorrect information or failed to review their submissions before filing); *Tomaszewski v. Trevena, Inc.,* 383 F. Supp. 3d 409, 414-15 (E.D. Pa. 2019) (denying lead plaintiff motion where errors in loss charts "speak to a level of carelessness" that casts doubt that applicant possesses "the necessary adequacy and sophistication to be lead plaintiff"); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588, at *3 (S.D.N.Y. July 31, 2007); *Plaut v. Goldman Sachs Grp., Inc.,* No. 18-CV-12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (denying lead plaintiff motion where movant made clerical errors in their certification); *Li Hong*

*Cheng v. Canada Goose Holdings Inc.,* No. 19-CV-8204 (VSB), 2019 WL 6617981, at \*6 n.7 (S.D.N.Y. Dec. 5, 2019) (certification submitted "erroneously omitt[ed] to disclose that [movant] previously sought appointment in [a prior] action . . . although [movant] submits that this was 'due to a clerical error' in which 'a different document was ultimately filed on his behalf,' . . . this error 'nonetheless speaks to a level of carelessness,' and causes me 'to doubt whether [movant] possesses the necessary adequacy and sophistication to be lead plaintiff.'").

Here, the schedule of transactions that Diaferia and Sisun appended to their certification—which they attested to be an accurate record of their class period transactions in Evolus securities, under penalty of perjury—is facially wrong as shown in the below chart19 of Diaferia's trades are outside of the Evolus historical trading range and 1 of Sisun's trades are outside of the Evolus historical trading range. *See* ECF No. 43-3.

8

| Diaferia Account 1 | | | | | | |
| Transaction | Trading Date | Shares | Price | Amount | Within Daily Trading Range? | Low | High |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Purchase | 2/1/2019 | 34 | $21.05 | $715.70 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 85 | $20.69 | $1,758.65 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 97 | $19.22 | $1,864.34 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 100 | $20.35 | $2,035.00 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 100 | $21.19 | $2,119.00 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 200 | $19.23 | $3,846.00 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 300 | $21.18 | $6,354.00 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 400 | $20.70 | $8,280.00 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 500 | $21.15 | $10,575.00 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 703 | $19.24 | $13,525.72 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 1,000 | $19.25 | $19,250.00 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 3,481 | $21.20 | $73,797.20 | No | $16.02 | $18.50 |

| Diaferia Account 2 | | | | | | |
| Transaction | Trading Date | Shares | Price | Amount | Within Daily Trading Range? | Low | High |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Purchase | 2/1/2019 | 900 | $18.85 | $16,965.00 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 2,449 | $19.20 | $47,020.80 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 3,000 | $19.00 | $57,000.00 | No | $16.02 | $18.50 |
| Purchase | 2/1/2019 | 3,651 | $18.99 | $69,332.49 | No | $16.02 | $18.50 |
| Purchase | 2/7/2019 | 100 | $29.15 | $2,915.00 | No | $23.50 | $29.00 |
| Purchase | 2/7/2019 | 250 | $29.08 | $7,270.00 | No | $23.50 | $29.00 |
| Purchase | 2/7/2019 | 1,150 | $29.25 | $33,637.50 | No | $23.50 | $29.00 |

| Sisun Account 2 | | | | | | |
| Transaction | Trading Date | Shares | Price | Amount | Within Daily Trading Range? | Low | High |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Purchase | 2/4/2019 | 200 | $22.50 | $4,500.00 | No | $20.30 | $22.35 |

One of two things must be true: either Diaferia and Sisun knowingly submitted inaccurate information to the Court; or Diaferia and Sisun failed to review their transaction schedule thoroughly enough to spot errors that are apparent at only a glance. In either scenario, Diaferia and Sisun are clearly inadequate within the meaning of Rule 23, and, as such, the PSLRA mandates denial of Diaferia and Sisun's motion.

III.    **THE REMAINING COMPETING MOTIONS SHOULD BE DENIED BECAUSE THEY HAVE A SMALLER FINANCIAL INTEREST THAN THE INVESTOR GROUP**

The remaining opposing movants, Josh Thrailkill represented by Roch Cyulnik

9

Freedman, LLP,[4] James LeFebvre represented by Glancy Prongay & Murray, LLP, Kingsgrove

Large Cap, LP represented by Robbins Geller Rudman & Dowd LLP,[5] Peter Sissins, David

Pressly, Nhung Tran, and Chris Riccardi represented by Bragar Eagel & Squire, P.C.,[6] and

Armin Malakouti, Mahmood Gholami, and Daniel Mierlak represented by Lowey Dannenberg,

P.C.[7] (collectively the "remaining competing movants"), should not be appointed lead plaintiff

because they all have suffered lower losses than the Investor Group during the Class Period due

to the alleged fraud.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress

established a presumption in the PSLRA that requires the Court to appoint the "most adequate

plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate

plaintiff" is the person who has the "largest financial interest in the litigation" and who also

satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C.

§ 78u-4(a)(3)(B)(iii)(I).

Further, the PSLRA establishes a rebuttable presumption that the "most adequate

plaintiff" is the person that: (aa) has either filed the complaint or made a motion in response to a

notice [published by a complainant]; (bb) in the determination of the Court, has the largest

financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of

---

[4]     Josh Thrailkill filed a Notice of Non-Opposition to the Competing Motions on December 29, 2020. ECF No. 56.

[5]     Kingsgrove Large Cap, LP withdrew their motion on December 29, 2020. ECF No. 52.

[6]     Peter Sissins, David Pressly, Nhung Tran, and Chris Riccardi filed a Notice of Non-Opposition to the Competing Motions on December 29, 2020. ECF No. 51.

[7]     Armin Malakouti, Mahmood Gholami and Daniel Mierlaks withdrew their motion on December 29, 2020. ECF No. 50.

Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Levine v. AtriCure, Inc.,* 508 F. Supp. 2d 268, 276-77 (S.D.N.Y. 2007) (same); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008) (describing the PSLRA's process for determining the "most adequate plaintiff"); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009) (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Fuwei Films Sec. Litig.,* 247 F.R.D. 432, 436 (S.D.N.Y. 2008); *Baughman*, 250 F.R.D. at 125.

## IV.    THE INVESTOR GROUP WOULD CLEARLY BE THE MOST ADEQUATE LEAD PLAINTIFF

Here, with losses of $526,444.45, the Investor Group has the largest financial interest in the litigation out of the remaining competing movants. The Investor Group would not be subject to any unique defenses that may distract it from fulfilling all of its duties as Lead Plaintiff. The Investor Group also satisfies Rule 23's typicality and adequacy requirements. The Investor Group's claims are typical of the Class's claims because it suffered losses on its Evolus investment as a result of the defendants' false and misleading statements. Further, the Investor Group has no conflict with the Class and will adequately protect the Class's interests given its significant stake in the litigation and its conduct to date in prosecuting the litigation, including its submission of the requisite certification and selection of experienced class counsel. Accordingly, the Investor Group is the presumptive Lead Plaintiff, and would clearly be the most adequate Lead Plaintiff.

In sum, the remaining competing movants should not be appointed lead plaintiff because they all have suffered lower losses than the Investor Group during the class period.

**V.     THE INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF AND THE INVESTOR GROUP'S SELECTION OF THE FARUQI FIRM SHOULD BE APPROVED**

The Investor Group is the only proposed lead plaintiff that meets Rule 23's adequacy requirement and should be selected as lead plaintiff. The Investor Group is a small cohesive group of sophisticated investors with $526,444.45 in losses arising from the alleged fraud in this case. Additionally, the Investor Group has provided indisputably accurate certifications and no conflict of interest exists as provided in the Joint Declaration submitted in the Investor Groups opening papers (ECF No. 45). Finally, the Investor Group suffered large recognizable losses during the Class Period, which is larger than all except two competing movants who are disqualified and whose losses should not be considered.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain lead counsel for the Class, subject to the Court's approval. The Investor Group has selected Faruqi & Faruqi, LLP (the "Faruqi Firm") to be Lead Counsel for the Class. The Faruqi Firm is a highly experienced and successful minority-owned and woman-owned law firm whose adequacy to serve as lead counsel in this case has not been challenged and, as reflected in the firm's resume. *See* Declaration of James M. Wilson, Jr. in Support of The Investor Group's Motion For Appointment As Lead Plaintiff And Approval Of Lead Counsel (ECF No. 48), Ex. D, Firm Resume (ECF No. 48-4), and Ex. E, Women's Business Enterprise National Council Certificate (ECF No. 48-5).

**CONCLUSION**

For the foregoing reasons and the reasons set forth in its Opening Memorandum of Law, the Investor Group respectfully requests that the Court (1) appoint the Investor Group as Lead

Plaintiff for the Action, (2) approve the Investor Group's selection of the Faruqi Firm as Lead

Counsel for the Class and (3) grant such other relief as the Court may deem just and proper.

Dated: December 29, 2020                    Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:    */s/ James M. Wilson, Jr.*
       James M. Wilson, Jr.

James M. Wilson, Jr.
Robert W. Killorin (*pro hac vice*
forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com
        rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff and*
*[Proposed] Lead Counsel for the putative*
*Class*

13