**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE EVOLUS INC. SECURITIES LITIGATION | **CASE No.: 1:20-cv-08647-PGG** <br><br> **REPLY MEMORANDUM OF LAW OF RAJA AHMAD IN FURTHER SUPPORT OF HIS LEAD PLAINTIFF MOTION** <br><br> **CLASS ACTION** |

1

2

Lead Plaintiff Movant Raja Ahmad ("Movant" or "Ahmad") respectfully submits this reply memorandum of law in further support of his lead plaintiff motion. Dkt. No. 24.

## PRELIMINARY STATEMENT

Ahmad lost $748,294. Only three other movants remain, the two groups of unrelated investors and an individual—all having smaller losses. Thus, none of these movants can trigger the lead plaintiff presumption due to their smaller financial interest.

The competing movants argue that Ahmad's losses should not be credited because he sold all of his shares prior to a corrective disclosure—this argument is false. The alleged fraud slowly leaked into the market through partial corrective disclosures throughout the Class Period. Therefore, Ahmad is not a complete "in-and-out" trader and his losses should be credited.

In sum, Ahmad has the largest financial interest and has made a *prima facie* showing of adequacy and typicality and is the presumptive Lead Plaintiff. Because no movant has rebutted that presumption with the requisite proof that Ahmad is inadequate or atypical, Ahmad should be appointed Lead Plaintiff and his selection of The Rosen Law Firm P.A. as Lead Counsel should be approved. The competing motions should be denied.

## ARGUMENT

### I.    AHMAD SHOULD BE APPOINTED LEAD PLAINTIFF

Ahamad has the largest financial loss of the remaining movants:

| Movant(s) | Loss |
|---|---|
| 1. Raja Ahmad | $748,294 |
| 2. "Diaferia Group" of Peter Diaferia and Mitchell Sisun | $626,306 |
| 3. "Investor Group" of Dr. Raffy Mirzayan, Alice Yanlengsim Yeo, both individually and on behalf of Triple A&E LLC, Gary R. Whaler and Theresa R. Whaler | $526,444 |
| 4. James LeFebvre | $213,057[1] |

Competing movants argue that Ahmad's financial losses should not be credited because he sold his shares prior to the corrective disclosure at the end of the Class Period.[2]  This is not a case that rests on one lone corrective disclosure at the end of the Class Period. During the Class Period, as alleged in the complaints, the relevant truth slowly leaked out through partial corrective disclosures—even as Defendants continuously provided false assurances.

As early as on February 28, 2019, the complaints acknowledge that the truth was leaking out, when "***the ITC reached a decision to commence a formal investigation into a potential violation** under section 337 of the Tariff Act of 1930, prompted by the complaint filed in January 2019 **by Allergan and Medytox, alleging misappropriation of certain trade secrets by Evolus**. **The investigation commenced on March 1, 2019.***" Dkt. No. 1 ¶28; Case No. 1:20-cv-09053, Dkt. No. 1 ¶28. (Emphasis added.) That investigation was announced by the United States International Trade Commission on March 1, 2019, in a press release entitled "USITC

---

[1] In his initial motion filing, LeFebvre claimed a $213,057.81 loss, including a $570 gain from option transactions. Dkt. No. 29-3. In his opposition filing, LeFebvre claimed a $233,821.91 "Modified LIFO Loss". Dkt. No. 55 at 9.

[2] The Class Period is February 1, 2019 through July 6, 2020.

INSTITUTES SECTION 337 INVESTIGATION OF CERTAIN BOTULINUM TOXIN PRODUCTS, PROCESSES FOR MANUFACTURING OR RELATING TO SAME AND CERTAIN PRODUCTS CONTAINING SAME".[3] On this news, Evolus shares fell $1.39 per share, or 5%, to close at $26.26 per share on March 4, 2019, the next trading day, damaging investors.

As another example, the complaints explain that on August 12, 2019, during an earnings call, when faced with questions regarding the "'***Korean situation***' [***meaning the legal proceedings pending against Daewoong and Evolus alleging misappropriation of proprietary technology***], Defendant Moatazedi assured investors that he and the Company 'continue to remain confident in [Evolus'] IP.'" Dkt. No. 1 ¶43; Case No. 1:20-cv-09053, Dkt. No. 1 ¶43. (Emphasis added.) The complaints allege that during the same earnings call, Defendant Moatazedi stated "we'll let the court system continue to work through the case." Dkt. No. 1 ¶44; Case No. 1:20-cv-09053, Dkt. No. 1 ¶44. Even with these allegedly false reassurances, the market noted the continued and growing concerns with the "Korean situation." On this news, Evolus shares fell $1.71 per share, or 10%, to close at $16.00 per share on August 13, 2019, damaging investors.

The complaints further note that on February 25, 2020, on an earnings call, "Importantly, Defendant Moatazedi commented on the impending ITC decision . . . 'it's customary for various redacted versions of motions, briefs and transcripts to become public. However, I would caution you not to draw any definite conclusions from individual documents'" and "[i]n response to a question . . . regarding the 'potential realistic scenarios that could emerge from the ITC case, from the worst case to the best case,' Defendant Moatazedi dodged the question." Dkt. No. 1

---

[3] https://www.usitc.gov/press_room/news_release/2019/er0301ll1057.htm.

¶56; Case No. 1:20-cv-09053, Dkt. No. 1 ¶56. (Emphasis added.). Again, as Defendants continued to provide allegedly false reassurances regarding the "Korean situation," the market noted the continued and growing concerns with the ITC (and other legal and regulatory) processes. The earnings call occurred before trading hours, and on this news, Evolus shares fell $0.67, or 7%, to close at $8.68 per share on February 25, 2020.

Explicitly, the complaints, and the Diaferia Group note that "on March 4, 2020, Medytox issued a statement in which it disclosed that a staff attorney at the ITC . . . submitted an opinion backing Medytox's claim . . . Medytox commented that 'ITC attorneys' opinions are known to have a profound effect on the final decision of the court.' Expectedly, on this news, Evolus' and Daewoong's shares fell 5.7%." Dkt. No. 1 ¶60; Case No. 1:20-cv-09053, Dkt. No. 1 ¶60; Dkt. No. 54 at 8 and 13.

Where, as, here, the truth of the alleged fraud is leaking into the market through partial corrective disclosures, Courts do not disregard financial losses from shares bought and sold during the class period. Recently, Judge Buchwald found similarly in *Di Scala v. Proshares Ultra Bloomberg Crude Oil, et. al.,* 2020 WL 7698321, at *3 (S.D.N.Y. Dec. 28, 2020). In that case, a lead plaintiff movant sought to exclude all "in-and-out" transactions before the first alleged partial disclosure in that complaint's "The Truth Emerges" section—like the competing movants here. "However, the Court finds that [competing movants] reliance on this single allegation reflecting the low trading price of [Evolus'] shares is insufficient to establish the date of [Evolus'] first corrective disclosure." *Id*. The Court made clear that "[w]ithout more, the Court declines to rely on the *Dura* methodology at the lead plaintiff stage." *Id*. (citing *Cook v. Allergn PLC*, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) (McMahon, J.)); *see, also, In re CMED Sec. Litig.*, 2012 WL 1118302, at *4 n.8 (S.D.N.Y. Apr. 2, 2012) (declining to "consider the 'Dura

5

LIFO losses'" because "[t]he Court is not aware of any case" that used that method to "calculate[] losses for purposes of appointing a lead plaintiff where the pleadings allege partial corrective disclosures"); *Fialkov v. Celladon Corp.*, 2015 WL 11658717, at *5 (S.D. Cal. Dec. 9, 2015) (were partial corrective disclosures rejecting use of *Dura* loss calculations: "At this stage in the proceedings, the Court is inclined to adopt the most expansive view of potential recovery in determining which party has the greatest financial interest for the appointment as lead plaintiff.").

Given the numerous partial corrective disclosures and leakage here, Ahmad is not a complete in and out trader and his losses should be credited.

## CONCLUSION

Because Ahmad has the largest financial interest and has made a *prima facie* showing of adequacy and typicality he is the presumptive Lead Plaintiff.  No party has rebutted the presumption with the requisite proof that Ahmad is inadequate or atypical.  As such, Ahmad's motion should be granted in its entirety and the competing motions should be denied.

Dated: January 5, 2021               Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

6

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim