**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EVOLUS INC. SECURITIES LITIGATION | Master File No. 1:20-cv-08647 (PGG) |

**JAMES LEFEBVRE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

James LeFebvre ("LeFebvre") respectfully submits this memorandum of law in further support of his motion for appointment as lead plaintiff and approval of lead counsel, and in reply to the three oppositions filed by competing lead plaintiff movants (Dkt. Nos. 53, 54, 57).

## I.    INTRODUCTION

Only three competing movants filed opposition memoranda to LeFebvre's lead plaintiff motion: Raja Ahmad ("Ahmad"); the "Second Investor Group" composed of Dr. Raffy Mirzayan, Alice Yanlengsim Yeo, individually and on behalf of Triple A&E LLC, Gary R. Whaler, Jr. and Theresa R. Whaler; and Peter Diaferia and Mitchell Sisun (the "Diaferia and Sisun Group").

While the two movant "groups" claim to have a larger financial interest than LeFebvre, these "groups" have failed to provide any evidence that their members had a pre-litigation relationship even though they have now had two separate opportunities to do so. As such, it is clear that these groups are artificial creations of their counsel, cobble together for the purpose of achieving lead plaintiff (and lead counsel) status. Courts throughout the country routinely reject such lawyer-driven groups as inadequate to represent the class, and the same result is warranted here.

To the extent that any members of these "groups" now claim that they should be considered individually for appointment as lead plaintiff, this only further confirms the artificialness of the groups. Regardless, since no "group" members have moved for appointment individually, they are not entitled to consideration outside their "group." Moreover, an individual willing to initially sign on to an ill-conceived group and then abandon the group once it becomes inconvenient is inadequate to represent the class.

Besides the two "groups," Ahmad also claims to have a larger loss than LeFebvre.  This claim is false since it ignores this Court's holding that *Dura Pharmaceuticals, Inc. v. Broudo*, 544 US 336 (2005) mandates that losses on shares purchased and then sold "before the misconduct

1

identified was ever revealed to the public are not to be included." *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015).[1] Ahmad sold all his shares nearly six months before any corrective disclosure. As such, Ahmad's financial interest is zero.

Since the groups are ineligible for appointment as lead plaintiff and Ahmad has no financial interest in this action, LeFebvre is the *bona fide* movant with the largest financial interest and is therefore the presumptively most adequate plaintiff. While the three competing movants attack each other's ability to adequately represent the class, **no movant** has contested LeFebvre's suitability to represent the class. As such, no movant has rebutted the presumption that LeFebvre is the most adequate plaintiff. Accordingly, LeFebvre should be appointed lead plaintiff, and his selection of counsel should be approved.

## II.   LᴇFEBVRE SHOULD BE APPOINTED LEAD PLAINTIFF

### A.   The Two Movant Groups Are Ineligible For Appointment As Lead Plaintiff

The two "groups" have effectively admitted that their members have no pre-litigation relationship and that they were cobbled together by their counsel for purposes of aggregating losses and thereby achieving lead plaintiff (and lead counsel) status. Such groups are ineligible for appointment as lead plaintiff. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) (If a group is "created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, [the court] could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner"); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015) ("A plaintiff group will generally be rejected if the court determines that it is simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff.");

---

[1] All internal quotation marks, brackets, and citations are omitted herein unless otherwise noted.

*Jakobsen v. Aphria, Inc.*, No. 18-cv-11376, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) ("The proposed plaintiff group has the burden of showing that aggregation is appropriate" and "[a] proposed plaintiff group cannot be appointed lead plaintiff if it was assembled as makeshift by attorneys to claim the greatest financial interest in the litigation").

As explained in LeFebvre's opposition to the groups' lead plaintiff motions, both groups admit in their joint declarations filed with the Court that they are creations of their counsel. *See* LeFebvre Opp. (Dkt. No. 55) at 6-7. The groups do not demonstrate that their members have pre-litigation relationships. The groups' declarations are also mere collections of boilerplate assertions—which further serves to demonstrate the groups' inadequacy. *See id.* at 7. Despite having now had a second opportunity to cure these deficiencies in their opposition memoranda, the groups have failed to provide any evidence indicating they are anything, but groups of unrelated members cobbled together by their counsel. As such, the Second Investor Group and the Diaferia and Sisun Group's lead plaintiff motions should be denied in their entirety.[2]

**B.       No Member Of Either Movant Group Should Be Considered Individually**

No member of the two purported "groups" filed a motion requesting to be considered individually for appointment as lead plaintiff. As such, the individual group members should not be considered as potential lead plaintiff candidates. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) (movant must have "made a motion"); *Aphria*, 2019 WL 1522598, at *4 ("There are no separate motions to appoint any member of the Wan Group as lead plaintiff on an individual basis. As such,

---

[2] Ahmad similarly points out in his opposition memorandum that the groups are improper. *See* Ahmad Opp. (Dkt. No. 53) at 9 ("The Diaferia Group and Investor Group are inappropriate group movants solely brought together by counsel to create the largest financial interest. Their members are dispersed throughout the country and no specific client driven reasons are provided for the groupings. The joint declarations submitted by the two groups are the type of general conclusory declarations that Courts in this District and elsewhere have rejected.").

this Court does not consider whether each individual member of the Wan Group could be appointed as lead plaintiff."); *Petrobras*, 104 F. Supp. 3d at 624 n.4 (refusing to appoint a group member with the largest loss because it "at no time sought to serve as individual lead plaintiff").[3]

None of the groups' members even requested to be considered individually in their opposition memoranda—though such a request would be ineffective because lodging a request in an opposition memorandum falls short of the PSLRA requirement to timely file a motion. If any of the members of these groups request to be considered individually on reply, that too would be insufficient because it would not qualify as filing a motion. Regardless, any such new argument or request for relief on reply should be rejected. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 398 F. Supp. 2d 244, 250 n.7 (S.D.N.Y. 2005) ("Reply papers are not the proper place for new arguments or requests for relief."). Additionally, any such request would only serve to demonstrate the individuals' inadequacy, and would be separate grounds to reject the motion. *See Inovio*, 467 F. Supp. 3d at 280 (holding "[t]he Group's eleventh-hour willingness to discard [a member]" demonstrates that it is not cohesive); *Tsirekidze*, 2008 WL 942273, at *4 ("The willingness to abandon the group only suggests how loosely it was put together.").

### C. Even If The Court Were To Consider The Group Members Individually, LeFebvre Still Has The Largest Financial Interest Of Any *Bona Fide* Movant

Three individuals claim that they have larger losses than LeFebvre: Ahmad, Diaferia and Sisun. Two of these individuals (Ahmad and Sisun) simply do not have the losses they claim, and their actual losses are less than LeFebvre's. Moreover, Diaferia and Sisun are each inadequate to

---

[3] *See also Tsirekidze v. Syntax-Brillian Corp.*, No. 07-cv-2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) ("The [] Group moved for lead plaintiff as a group and will be evaluated as such."); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 836 (N.D. Cal. 2019) ("the Court declines to . . . consider their individual losses" because "the group members have not requested individual consideration"); *McDermid v. Inovio Pharm., Inc.*, 2020 WL 3288189, at *5 (E.D. Pa. June 18, 2020) (similar).

represent the class.

First, while Ahmad claims a loss of $748,294 in his opposition memorandum (*see* Ahmad Opp. at 6), his actual loss is $0. Ahmad fails to exclude losses "resulting from in-and-out transactions, which took place during the class period, but before [a corrective disclosure]" as required by *CannaVest*, 93 F. Supp. at 273. As both movant groups also recognize, Ahmad sold all of his shares before the first corrective disclosure in this action. *See* SIG Opp. (Dkt. No. 57) at 4 (Ahmad "held no Evolus securities on the date that the Defendants' alleged fraud was disclosed to the market"); Diaferia & Sisun Opp. (Dkt. No. 54) at 11 (Ahmad "sold all of his Evolus shares months prior to the disclosures of the Company's alleged fraud"). Ahmad sold all his Evolus shares on January 14, 2020. *See* Dkt. No. 26-3 (Ahmad's Loss Chart). However, the complaint filed in this action alleges that the "Truth Began[] to Emerge" on July 6, 2020—which is almost ***6 months*** after Ahmad exited his position. *See* Complaint (Dkt. No. 1) ¶ 63. Ahmad also acknowledges in his opening memorandum in support of his lead plaintiff motion that "on July 6, 2020, the investing public learned the truth about Jeuveau." *See* Dkt. No. 26 at 3. Accordingly, Ahmad's losses are $0 if properly calculated.[4]

Second, Sisun likewise fails to exclude losses from transactions that occurred prior to any corrective disclosure. When properly calculated, his loss is $66,718.29. Counsel for Mr. Sisun attempts to boost his loss, however, by arguing that many of his in-and-out transactions were held through March 4, 2020 and that March 4, 2020 is a corrective disclosure. *See* Diaferia & Sisun Opp. at 8. However, the complaint in this action does not allege a corrective disclosure on March 4, 2020—it instead only alleges that the defendants made false statements on that day. *See*

---

[4] Moreover, the fact that Ahmad sold all his shares before the corrective disclosure creates a standing issue, as the other movants have identified. *See* SIG Opp. at 4-6; Diaferia & Sisun Opp. at 11.

Complaint ¶¶ 60, 62. The Complaint alleges that the "Truth Began[] to Emerge" on July 6, 2020. *Id.* ¶ 63.[5] Moreover, counsel for Sisun filed a nearly-identical related action that also did not allege a corrective disclosure on March 4, 2020, and in fact affirmatively stated the "Truth Began[] to Emerge" on July 6, 2020. *See Cox v. Evolus, Inc.*, 1:20-cv-09053-PGG (SDNY Oct. 28, 2020), Dkt. No. 1 (the "Cox Complaint," filed by Pomerantz LLP) ¶¶ 60, 62-63. Sisun also stated that "[t]he investing public learned the real truth about Jeuveau™ on July 6, 2020" in his opening memorandum in support of his lead plaintiff motion. *See* Dkt. No. 41 at 8. As such, Sisun should not be permitted to reverse course and now claim March 4, 2020 as a corrective disclosure to inflate his losses.

Third, as pointed out by the competing movants, both Diaferia and Sisun are inadequate since their certifications list transactions that do not reflect the market trading price on the dates the transactions were alleged to have taken place. *See* Ahmad Opp. at 11-12; SIG Opp. at 7-9. If the certifications do not reflect market trading prices, then "either Diaferia and Sisun knowingly submitted inaccurate information to the Court; or Diaferia and Sisun failed to review their transaction schedule thoroughly enough to spot errors that are apparent at only a glance. In either scenario, Diaferia and Sisun are clearly inadequate within the meaning of Rule 23, and, as such, the PSLRA mandates denial of Diaferia and Sisun's motion." SIG Opp. at 9.

*         *         *

---

[5] The claim that the March 4, 2020 event was a "corrective disclosure" is also dubious. The Complaint alleges that on March 4, 2020 a competitor to Evolus "issued a statement in which it disclosed that a staff attorney at the ITC, who plays a vital role in the decision of the ITC, submitted an opinion backing Medytox's claim that Daewoong and Evolus used Medytox's botulinum toxin strain," and Evolus swiftly responded. Complaint ¶ 60. Speculation by an Evolus competitor regarding the outcome of a legal proceeding based on an opinion is not the type of new information normally considered a "corrective disclosure."

As demonstrated in the following chart, when using the appropriate method articulated by the Court in *CannaVest*, Mr. LeFebvre has the largest financial interest of any *bona fide* movant (even if compared to the ineligible individual members of the purported groups) and is therefore the presumptively most adequate plaintiff:

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | Modified LIFO Loss |
|---|---|---|---|---|
| ~~Peter Diaferia~~ | ~~28,350~~ | ~~28,350~~ | ~~$449,925.80~~ | ~~$349,415.64~~ |
| James LeFebvre | 46,496 | 15,000 | $262,314.39 | $233,821.91 |
| Dr. Raffy Mirzayan | 24,200 | 24,200 | $301,033.28 | $214,266.68 |
| Gary and Theresa Whaler | 13,158 | 7,369 | $179,966.64 | $126,413.33 |
| Triple A&E LLC | 10,115 | 3,715 | $166,429.87 | $87,624.74 |
| ~~Mitchell Sisun~~ | ~~29,947~~ | ~~7,700~~ | ~~$354,146.11~~ | ~~$66,718.29[6]~~ |
| Alice Yanlengsim Yeo | 449 | 0 | $5,403.49 | $0.00 |
| Raja Ahmad | 340,000 | 0 | $748,294.84 | $0.00 |

## III.    NO MOVANT HAS REBUTTED THE PRESUMPTION THAT LeFEBVRE IS THE MOST ADEQUTE PLAINTIFF

The presumption that LeFebvre is the most adequate plaintiff can only be rebutted through "proof" by a competing movant that LeFebvre "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). None of the three competing movants have even attempted to present evidence that LeFebvre is inadequate. In fact, LeFebvre is the only one of the four remaining movants whose suitability to be lead plaintiff is ***not contested***. Moreover, LeFebvre has a Bachelor of Arts degree in Accounting, is a certified public accountant, and has been the partner in a firm for 40 years. He has also been managing his own investment portfolio for 40 years. Thus, LeFebvre is an ideal, sophisticated lead plaintiff candidate who is more than capable of adequately representing the interests of the class. As such, LeFebvre should be

---

[6] Mitchell Sisun's options contracts that expired before the corrective disclosure are not included in the modified LIFO figure since these options were not held through the corrective disclosure.

appointed as lead plaintiff, and no other movant is entitled to further consideration. *See Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (the lead plaintiff process ends when "a candidate succeeds in both the first and second phases of inquiry").

## IV.    CONCLUSION

For the foregoing reasons, LeFebvre respectfully requests that the Court enter an order: (1) appointing LeFebvre as lead plaintiff; (2) approving his selection of Glancy Prongay & Murray LLP as lead counsel for the class; and (3) granting such other relief as the Court may deem just and proper.

Respectfully submitted,

DATED: January 5, 2021

**GLANCY PRONGAY & MURRAY LLP**

By:   *s/ Gregory B. Linkh*
Gregory B. Linkh
230 Park Ave., Suite 530
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: glinkh@glancylaw.com

and-

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Counsel for Movant James LeFebvre and*
*Proposed Lead Counsel for the Class*

8

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On January 5, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 5, 2021, at New York, New York.

/s/ Gregory B. Linkh
Gregory B. Linkh