UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE EVOLUS INC. SEC. LITIG. | Case No.  1:20-cv-08647-PGG<br><br>REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF PETER DIAFERIA AND MITCHELL SISUN FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 3

    I.     THE STATUTORY PRESUMPTION IN FAVOR OF DIAFERIA AND
          SISUN'S APPOINTMENT HAS NOT BEEN REBUTTED ................................. 3

          A.    Diaferia and Sisun's Transaction Schedules Are Accurate .......................... 4

          B.    Diaferia and Sisun Are An Appropriate Group ............................................ 6

    II.    AHMAD IS INELIGIBLE FOR LEAD PLAINTIFF APPOINTMENT
          BECAUSE HE DID NOT HOLD EVOLUS STOCK AT THE TIME OF THE
          ALLEGED CORRECTIVE DISCLOSURES ....................................................... 9

CONCLUSION ...................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)...............................................................................3

*Barnet v. Elan Corp., PLC*,
236 F.R.D. 158 (S.D.N.Y. 2005) ...............................................................................................7

*Beckman v. Ener1, Inc.*, 11 Civ. 5794 (PAC) *et al.*,
2012 U.S. Dist. LEXIS 19972 (S.D.N.Y. Feb. 15, 2012).........................................................8

*Brady v. Top Ships Inc.*, No. 17-CV-4987 (JFB) (SIL),
2018 U.S. Dist. LEXIS 121765 (E.D.N.Y. July 20, 2018).......................................................7

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
2018 WL 3093965 (S.D.N.Y. June 21, 2018) ..........................................................................1

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018)...........................................................................................................3, 6

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).............................................................................................................2, 9

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ..............................................................................................2

*In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*,
2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005).........................................................10

*In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK),
2017 U.S. Dist. LEXIS 207531 (E.D.N.Y. Dec. 15, 2017) ..................................................6, 7

*In re CMED Sec. Litig.*, 11 Civ. 9297 (KBF),
2012 U.S. Dist. LEXIS 47785 (S.D.N.Y. Apr. 2, 2012).........................................................8

*In re Comverse Tech., Inc. Sec. Litig.*, 06-CV-1825 (NGG)(RER),
2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007).........................................................9

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
2008 WL 2811358 (S.D.N.Y. July 7, 2008) ............................................................................2

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................................................4

*Kukkadapu v. Embraer S.A.*, 16 Civ. 6277 (RMB),
   2016 U.S. Dist. LEXIS 153452 (S.D.N.Y. Oct. 20, 2016) ......................................................8

*Kux-Kardos v. VimpelCom, Ltd.*,
   151 F. Supp. 3d 471 (S.D.N.Y. 2016)......................................................................................9

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289,
   2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012)..............................................................8

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
   2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017)...........................................................................1

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) .............................................................................................1

*Rosian v. Magnum Hunter Res. Corp.*, 13 Civ. 2668 (KBF) *et al.*,
   2013 U.S. Dist. LEXIS 146236 (S.D.N.Y. Oct. 7, 2013) ..........................................................8

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) .............................................................................................6

*West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731,
   2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 9, 2014) ............................................................7

## Statutes

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) .................................................................................................4

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) .................................................................................................1, 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)..................................................................................................1

15 U.S.C. § 78u-4(e)(1) ..................................................................................................................5

PSLRA ................................................................................................................................. *passim*

## Rules

Federal Civil Procedure Rule 23.............................................................................................1, 3, 4, 8

iii

Movants Diaferia and Sisun[1] submit this Memorandum of Law in further support of their motion for appointment as Co-Lead Plaintiffs and approval of their selection of counsel (Dkt. No. 38); and in opposition to the competing motions of (i) Ahmad (Dkt. No. 24); (ii) the Mirzayan Group (Dkt. No. 45); and (iii) LeFebvre (Dkt. No. 27).[2]

## PRELIMINARY STATEMENT

The PSLRA instructs the Court to appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the litigation; **and** who satisfies the adequacy and typicality requirements of Rule 23.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The movant who satisfies both of the foregoing statutory criteria is entitled to a strong presumption that he is the "most adequate plaintiff" of the Class—*i.e.*, the Lead Plaintiff—a presumption that can be rebutted only upon "proof" that the presumptive lead plaintiff is inadequate, atypical and/or subject to a unique defense.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Of the four competing movants before the Court, only Diaferia and Sisun satisfy both of these statutory criteria.  ***First***, having incurred an aggregate loss of ***$652,565*** on a FIFO basis or ***$626,306*** on a LIFO basis in connection with their Class Period purchases of Evolus securities, Diaferia and Sisun have the largest financial interest in this action of any eligible competing movant.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire*

---

[1] All capitalized terms herein are defined in Diaferia and Sisun's moving or opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 41, 54.

[2] As noted in Diaferia and Sisun's opposition brief, four competing movants (Blanchette, the Malakouti Group, the Sissins Group, and Kingsgrove) either withdrew their motions or stated their non-opposition to competing motions.  *See* Dkt. Nos. 23, 50-52.  On December 29, 2020, one additional movant, Thrailkill, also filed a notice stating his non-opposition to the motions of Ahmad and Diaferia and Sisun.  Dkt. No. 56.

*Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004). Although one competing movant, Ahmad, has alleged a larger loss than Diaferia and Sisun, Diaferia did not hold *any* Evolus securities at the time of the corrective disclosures that laid bare the Defendants' alleged fraud in March and July 2020, and thus has *zero* recoverable losses under the loss-causation methodology mandated by the Supreme Court in the action *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), which only permits recovery of losses incurred as a result of the disclosure of the alleged fraud, as opposed to other market forces.  **Second**, in addition to their significant financial interest, Diaferia and Sisun have made the requisite *prima facie* showings of adequacy and typicality within the meaning of the PSLRA.  *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011).  By contrast, Ahmad's lack of recoverable losses also disqualifies him under this prong of the analysis as well, because it renders him inadequate and subject to the unique defense that he lacks standing to pursue fraud claims against the Defendants.

The competing movants can only muster meritless arguments to challenge Diaferia and Sisun's appointment.  First, Ahmad and the Mirzayan Group incorrectly accuse Diaferia and Sisun of filing false Certifications (Dkt. No. 43-3) and an inaccurate damages analysis (Dkt. No. 43-1) because certain transactions set forth in these documents reflect trade prices outside of the price range within which Evolus stock traded on the days in question.  *See* Dkt. No. 53 at 11-12; Dkt. No. 57 at 7-9.  This is not the case.  These supposedly incorrect prices are all, in fact, correct, and variously reflect purchase orders filled outside of regular market hours, application of the PSLRA-mandated 90-day lookback price to post-Class Period stock sales, and the exercise of call options. *See* Reply Declaration of Jeremy A. Lieberman ("Lieberman Decl."), Ex. A.  In sum, the

transaction prices reflected in Diaferia and Sisun's submissions are entirely accurate, and ***not*** evidence of either carelessness or dishonesty, as the competing movants suggest.

Second, Ahmad and LeFebvre mischaracterize Diaferia and Sisun as an impermissible investor group and urge denial of their motion on this basis. *See* Dkt. No. 53 at 9-11; Dkt. No. 55 at 6-8. Not so. The PSLRA expressly permits lead plaintiff groups [*cite*], and the Supreme Court has recently acknowledged their propriety. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups"). Moreover, Ahmad and LeFebvre's mischaracterization of Diaferia and Sisun's propriety as a group disregards the robust factual showing that Diaferia and Sisun have made in their Joint Declaration regarding, *inter alia*, their cohesiveness, their understanding of this litigation, and their readiness to supervise their counsel in fulfilling their obligations to absent class members as Lead Plaintiffs appointed pursuant to the PSLRA.

Accordingly, for the reasons set forth herein and in their moving and opposition briefs, Diaferia and Sisun respectfully request that the Court grant their motion in its entirety and deny the competing motions of Ahmad, the Mirzayan Group and LeFebvre.

## ARGUMENT

### I.    THE STATUTORY PRESUMPTION IN FAVOR OF DIAFERIA AND SISUN'S APPOINTMENT HAS NOT BEEN REBUTTED

The PSLRA creates a strong presumption that the "most adequate plaintiff"—*i.e.*, the Lead Plaintiff—is the movant or group of movants that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest need only make a *prima facie* showing at this stage that he or she satisfies the adequacy and typicality requirements of Rule 23. *See Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr.

3

4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007).  Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).  Here, the most adequate class representatives are Diaferia and Sisun.  As discussed in detail in Diaferia and Sisun's opposition brief, Diaferia and Sisun have satisfied the requisite financial interest and Rule 23 criteria to secure the presumption that they are the "most adequate plaintiffs" of the Class, and thus the presumptive Lead Plaintiffs in this litigation.  *See* Dkt. No. 54.  As discussed in greater detail *infra* at Section II, although one competing movant, Ahmad, has alleged a larger financial interest than Diaferia and Sisun, Ahmad retained *zero* shares of Evolus stock when the fraud at issue was revealed to the market, and thus lacks any recoverable loss caused by the Defendants' malfeasance.  Accordingly, Ahmad is doubly ineligible to serve as Lead Plaintiff, since he both (i) lacks any financial interest in this litigation whatsoever and (ii) is subject to the unique defense that he lacks standing to pursue fraud claims against the Defendants.

The presumption in Diaferia and Sisun's favor having been established, the competing movants bring only two meritless arguments against their appointment.  Lacking factual or legal support, these arguments fall well short of the high standard of proof that the PSLRA requires.

A.      **Diaferia and Sisun's Transaction Schedules Are Accurate**

Both Ahmad and the Mirzayan Group challenge Diaferia and Sisun's appointment on the purported basis that their Certifications (Dkt. No. 43-3) and damages analysis (Dkt. No. 43-1) are inaccurate.  Specifically, Ahmad and the Mirzayan Group collectively take issue with over 30 of Diaferia and Sisun's transactions, arguing that because the purchase or sale prices at issue fall outside of the ranges within which Evolus stock traded on the days in question, the Certifications and damages analyses must be inaccurate, and thus evidence of either carelessness or dishonesty.  *See* Dkt. No. 53 at 11-12; Dkt. No. 57 at 7-9.  Yet Ahmad and the Mirzayan Group are mistaken.

4

As discussed below, all of the challenged transaction prices are in fact accurate, and these submissions provide no basis to question either the honesty or diligence of Diaferia or Sisun.

First, the Mirzayan Group identifies a total of 20 purchases by Diaferia and Sisun on three days in February 2019 that fell outside of the ranges within which Evolus stock traded on those days: 16 purchases by Diaferia (12 purchases made in Diaferia's Account 1 and four in his Account 2) on February 1, 2019; three purchases by Diaferia (Account 2) on February 7, 2019; and one purchase by Sisun (Account 2) on February 4, 2019 where the price paid by Sisun similarly fell outside of the trading range for Evolus stock on that date. *See* Dkt. No. 57 at 8-9. However, in each of these instances, the purchases at issue were filled outside of regular market hours. All 19 of Diaferia's challenged purchases were filled after market hours, while Sisun's single challenged purchase was filled before market hours. *See* Lieberman Decl. Ex. A. Accordingly, despite falling outside of the trading ranges for the days in question, all of these purchase prices are accurate.

Second, Ahmad identifies a total of nine sales of Evolus stock by Diaferia (three in Account 1, and six in Account 2) on July 9, 2020, all valued at a sales price of $3.4133 per share, which falls outside of the trading range on that date. *See* Dkt. No. 53 at 10-11. However, $3.4133 is not the actual sales price for those transactions. Rather, because those nine sales occurred after the end of the Class Period, the PSLRA's damages cap provision prescribes a methodology that calculates damages with reference to the greater of "the mean trading price" of the security from the end of the Class Period until the date of sale (if sold within ninety days of the end of the Class Period) (the "lookback price") and the actual sale price. 15 U.S.C. § 78u-4(e)(1). Here, the lookback price of $3.4133 is greater than Diaferia's actual sale price of $3.03. Accordingly, pursuant to the PSLRA, Diaferia's damages analysis correctly reflects the lookback price as of the July 9, 2020 "sale" price rather than the actual sales price of $3.03 for Diaferia's nine Evolus stock

5

sales on July 9, 2020. *See* Dkt. No. 43-1; Lieberman Decl. Ex. A. Accordingly, the fact that these trades are valued outside of the trading range for July 9, 2020 merely reflects the movants' correct application of the PSLRA's damages cap provision.

Finally, Ahmad identifies one purchase by Sisun on April 22, 2019 and another on January 21, 2020 (both in Account 2) at prices outside of the trading ranges for the days in question. Dkt. No. 53-1. However, as Sisun's transaction schedule reflects, Sisun acquired Evolus call options during the Class Period—that is, contracts giving Sisun the right to purchase Evolus stock at specified prices within specific time periods. *See* Dkt. No. 43-3 at *6. On April 22, 2019 and January 2, 2020, Sisun exercised certain of those call options, and thus was able to acquire Evolus stock at contractually pre-specified prices that happened to fall outside of the trading ranges for the days in question.

In sum, none of the alleged "errors" in Diaferia and Sisun's submissions are, in fact, errors. Diaferia and Sisun's respective Certifications and their damages analysis accurately set forth their transactions in Evolus securities and provide no reason to doubt either their probity or competence. Accordingly, Ahmad and the Mirzayan Group's effort to rebut the presumption in favor of Diaferia and Sisun on this purported basis misses the mark.

**B.    Diaferia and Sisun Are An Appropriate Group**

Finally, contrary to the assertions by Ahmad and the Mirzayan Group, Diaferia and Sisun are an appropriate Co-Lead Plaintiff group. As the Supreme Court acknowledged in *China Agritech*, "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups." 138 S. Ct. at 1807 n.3. *See also In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 U.S. Dist. LEXIS 207531, at *13 (E.D.N.Y. Dec. 15, 2017) (affirming adequacy of group of four investors to serve as Lead Plaintiff under similar circumstances); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs

6

is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest

loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158,

162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment

of groups and appointing group consisting of six members with the largest financial interest as

lead plaintiff).

Here, Diaferia and Sisun are a small and cohesive partnership of two investors who have

made a robust proffer via their Joint Declaration. *See* Dkt. No. 43-4. The Joint Declaration attests,

*inter alia*, to the movants' respective backgrounds, including their investment experience (*id.* ¶¶

2-3); their understanding of the current status of the litigation (*id.* ¶ 4); their awareness of the

significance of their motion and understanding of the responsibilities of a lead plaintiff appointed

pursuant to the PSLRA (*id.* ¶¶ 4-5); their reasons for seeking appointment as co-lead plaintiffs

with one another (*id.* ¶¶ 5-6, 8); their readiness to participate actively in this litigation, including

their readiness to supervise counsel (*id.* ¶¶ 7, 11-12); and even a dispute-resolution mechanism in

the unlikely event they are unable to reach consensus with respect to a litigation decision (*id.* ¶ 9).

Courts in the Second Circuit and elsewhere routinely consider such declarations to demonstrate a

group's propriety. *See, e.g.*, *Blue Apron*, 2017 U.S. Dist. LEXIS, at *17 (appointing group of four

unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to

serve the best interests of the class," and finding that the group is not "so large as to be unwieldy

and impracticable"); *Brady v. Top Ships Inc.*, No. 17-CV-4987 (JFB) (SIL), 2018 U.S. Dist. LEXIS

121765, at *20 (E.D.N.Y. July 20, 2018) (appointing group of three investors as lead plaintiff,

finding the group "sufficiently demonstrated its members' plans for cooperation and involvement

in the litigation for the Court to find this group will best serve the class."); *West Palm Beach Police

Pension Fund v. DFC Global Corp.*, No. 13-6731, 2014 U.S. Dist. LEXIS 49595, at *7 (E.D. Pa.

Apr. 9, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2012 U.S. Dist. LEXIS 89192, at *11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

In the alternative, if the Court is not inclined to appoint two investors to serve as Co-Lead Plaintiffs, rejecting the applications of Diaferia and Sisun *in toto* is not the appropriate remedy; rather, the Court should disaggregate their losses and consider each movant individually.  *See*, *e.g.*, *Kukkadapu v. Embraer S.A.*, 16 Civ. 6277 (RMB), 2016 U.S. Dist. LEXIS 153452 (S.D.N.Y. Oct. 20, 2016), at *6 ("consider[ing] the larger shareholder (i.e. loss) of [two movants jointly seeking appointment as lead plaintiff] as if it had moved to be appointed as lead plaintiff alone" and appointing that investor as the sole lead plaintiff for the class); *Rosian v. Magnum Hunter Res. Corp.*, 13 Civ. 2668 (KBF) *et al.*, 2013 U.S. Dist. LEXIS 146236, at *13 (S.D.N.Y. Oct. 7, 2013) ("disaggregat[ing] the group *sua sponte* and consider[ing] its members as individual contenders for lead plaintiff"); *Beckman v. Ener1, Inc.*, 11 Civ. 5794 (PAC) *et al.*, 2012 U.S. Dist. LEXIS 19972, at *12 (S.D.N.Y. Feb. 15, 2012) (same); *In re CMED Sec. Litig.*, 11 Civ. 9297 (KBF), 2012 U.S. Dist. LEXIS 47785, at *8 (S.D.N.Y. Apr. 2, 2012) (same).  Here, considered individually, Diaferia still possesses a larger financial interest than any individual competing movant, having incurred a loss of approximately $348,311 on a FIFO basis and $349,064 on a LIFO basis.  *See* Dkt. No. 43-1 at *5.  Diaferia also has made a *prima facie* showing that he satisfies the adequacy and typicality requirements of Rule 23.  *See generally* Dkt. No. 41.  Accordingly, if the Court is inclined to appoint a single investor as Lead Plaintiff rather than a group, then Diaferia and Sisun respectfully submit that it should consider Diaferia first, before turning to the other movants.

8

## II.    AHMAD IS INELIGIBLE FOR LEAD PLAINTIFF APPOINTMENT BECAUSE HE DID NOT HOLD EVOLUS STOCK AT THE TIME OF THE ALLEGED CORRECTIVE DISCLOSURES

As discussed at length in Diaferia and Sisun's opposition brief (Dkt. No. 54 at 3, 6-8, 11-12), although Ahmad has alleged a larger financial interest in this action than Diaferia and Sisun, he held *zero* shares of Evolus stock when the Defendants' alleged fraud was disclosed to the market, and thus the PSLRA mandates denial of his motion on two separate, but related, bases.

First, under the loss-causation methodology mandated by the Supreme Court in *Dura*, it is axiomatic that any assessment of financial interest for the purposes of lead plaintiff appointment must take into account only *recoverable* losses—*i.e.*, losses actually traceable to the alleged fraud and its disclosure: if "the purchaser sells the shares . . . *before* the relevant truth beings to leak out, the misrepresentation will *not* have led to any loss." 544 U.S. at 342 (emphases added).  *See also In re Comverse Tech., Inc. Sec. Litig.*, 06-CV-1825 (NGG)(RER), 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007); *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 476 (S.D.N.Y. 2016).  Here, although Ahmad attests to having purchased 340,000 Evolus shares during the Class Period, he also attests to having sold all of these shares in a series of transactions that concluded on January 14, 2020.  *See* Dkt. No. 26-2.  The Complaint in this Action alleges that the market first began to learn of Defendants' alleged malfeasance on March 4, 2020, with the announcement that an ITC attorney had found merit in the misappropriation claims pending against Evolus in connection with development of its Jeuveau product, news that precipitated a sharp drop in Evolus's share price (*see* Dkt. No. 1 ¶ 60)—*i.e.*, nearly two months after Ahmad had sold the last of his Evolus shares.  Ahmad likewise held no Evolus shares at the time of the second and final corrective disclosure of July 6, 2020, when the ITC issued a Final Initial Determination finding that Evolus had misappropriated trade secrets in developing Jeuveau, an announcement that was also followed by a sharp drop in Evolus's share price.  *See id.* ¶¶ 63-64.  Having sold all

9

of his Evolus shares prior to these two disclosures, none of Ahmad's losses are a consequence of the Defendants' alleged fraud.  Accordingly, his financial interest in this litigation is *zero*.

Second, lacking any injury traceable to the Defendants' alleged fraud, Ahmad is clearly subject to the unique defense that he lacks standing.   "[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'"  *Spokeo*, 136 S. Ct. at 1548 (quoting *Valley Forge Christian College*, 454 U.S. at 472).  "[T]he injury must affect the plaintiff in a personal and individual way."  In a securities fraud action alleging violations of Section 10(b) of the Exchange Act, injury-in-fact requires that a plaintiff must have held the securities at issue at the time the alleged fraud was disclosed to the market—*i.e.*, that the plaintiff's economic loss was caused by the fraud's revelation, as opposed to other market forces.  Here, as discussed above, Ahmad has already attested that he did *not* hold *any* Evolus stock on the dates on which the Defendants' alleged fraud was revealed to the market. The PSLRA . . . provides that we ask simply whether [a movant] is *likely* to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."  *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 U.S. Dist. LEXIS 6243, at \*19 (N.D. Ill. Mar. 15, 2005) (emphasis added).  If Ahmad is appointed as Lead Plaintiff, the Defendants will clearly have a field day litigating the question of his standing, to the significant detriment of Ahmad's ability to pursue fraud claims on behalf of the Class.

## CONCLUSION

For all of the foregoing reasons, Diaferia and Sisun respectfully request that this Court enter an Order: (1) appointing Diaferia and Sisun as Lead Plaintiffs for the Class; and (2) approving Diaferia and Sisun's selection of Lead Counsel for the Class.

10

Dated:  January 5, 2021

Respectfully Submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Movants Peter Diaferia and Mitchell Sisun and Proposed Lead Counsel for the Class*

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, CA 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Additional Counsel for Peter Diaferia and Mitchell Sisun*

11