# EXHIBIT C

Registration No. 333-

## UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
**WASHINGTON, D.C. 20549**

## FORM S-1

**REGISTRATION STATEMENT**
**UNDER**
**THE SECURITIES ACT OF 1933**

# Evolus, Inc.

(Exact name of registrant as specified in its charter)

| Delaware | 2834 | 46-1385614 |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification Number) |

**17901 Von Karman Avenue, Suite 150**
**Irvine, California 92614**
**(949) 284-4555**
(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices)

**Murthy Simhambhatla, Ph.D.**
**Chief Executive Officer**
**Evolus, Inc.**
**17901 Von Karman Avenue, Suite 150**
**Irvine, California 92614**
**(949) 284-4555**
(Name, address, including zip code, and telephone number, including area code, of agent for service)

*Copies to:*

| Michael A. Hedge | Jeffrey J. Plumer | Michael J. Zeidel |
|---|---|---|
| Alexa M. Ekman | Vice President, Legal | Skadden, Arps, Slate, Meagher & Flom LLP |
| K&L Gates LLP | Evolus, Inc. | 4 Times Square |
| 1 Park Plaza, Twelfth Floor | 17901 Von Karman Avenue, Suite 150 | New York, New York 10036 |
| Irvine, California 92614 | Irvine, California 92614 | (212) 735-3000 |
| (949) 253-0900 | (949) 284-4555 | |

**Approximate date of commencement of proposed sale to the public:**
As soon as practicable after the effective date of this Registration Statement.

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, check the following box. ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company" and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☐ | Accelerated filer | ☐ |
| Non-accelerated filer | ☒ (Do not check if a smaller reporting company) | Smaller reporting company | ☐ |
| | | Emerging Growth Company | ☒ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided to Section 7(a)(2)(B) of the Securities Act. ☒

**CALCULATION OF REGISTRATION FEE**

| Title of Each Class of Securities to be Registered | Proposed Maximum Aggregate Offering Price(1) | Amount of Registration Fee(2) |
|---|---|---|
| Common Stock, $0.00001 par value per share | $75,000,000 | $9,337.50 |

(1)    Estimated solely for the purpose of calculating the amount of the registration fee in accordance with Rule 457(o) under the Securities Act of 1933, as amended. Includes the offering price of shares that the underwriters have the option to purchase to cover over-allotments, if any.

(2)    Calculated pursuant to Rule 457(o) based on an estimate of the proposed maximum aggregate offering price.

**The Registrant hereby amends this Registration Statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment that specifically states that this registration statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933, as amended, or until the Registration Statement shall become effective on such date as the Securities and Exchange Commission, acting pursuant to said Section 8(a), may determine.**

The information in this preliminary prospectus is not complete and may be changed. We may not sell these securities until the registration statement filed with the Securities and Exchange Commission is effective. This preliminary prospectus is not an offer to sell these securities and is not soliciting an offer to buy these securities in any jurisdiction where the offer or sale is not permitted.

SUBJECT TO COMPLETION, DATED    , 2018

**PRELIMINARY PROSPECTUS**



*Shares*

## Evolus, Inc.

*Common Stock*

We are offering        shares of our common stock. This is our initial public offering and no public market currently exists for our common stock. We expect the initial public offering price to be between $     and $     per share. We have applied to list our common stock on the Nasdaq Global Market, or Nasdaq, under the symbol "EOLS."

Upon completion of this offering, our parent company, ALPHAEON Corporation, or ALPHAEON, will own        shares of our outstanding common stock, representing approximately      % of the total voting power of our outstanding common stock (or approximately      % of the total voting power of our outstanding common stock, if the underwriters exercise in full their option to purchase additional shares of our common stock in this offering). As a result of ALPHAEON's ownership of our common stock following this offering, we will be a "controlled company" under the listing requirements of Nasdaq, or the Nasdaq Marketplace Rules, and expect to take advantage of the "controlled company" exemptions under the Nasdaq Marketplace Rules. See "Management—Controlled Company."

We are an "emerging growth company" under the federal securities laws and, as such, will be subject to reduced public company reporting requirements. See "Prospectus Summary—Implications of Being an Emerging Growth Company."

**Investing in our common stock involves a high degree of risk. Please read "Risk Factors" beginning on page 13 of this prospectus.**

**Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these securities or determined if this prospectus is truthful or complete. Any representation to the contrary is a criminal offense.**

| | PER SHARE | TOTAL |
|---|---|---|
| Public Offering Price | $ | $ |
| Underwriting Discounts and Commissions[(1)] | | |
| Proceeds to Evolus, Inc. (before expenses) | | |

(1)  See "Underwriting" beginning on page 145 of this prospectus for a description of compensation payable to the underwriters.

Delivery of the shares of common stock is expected to be made on or about        , 2018. We have granted the underwriters an option for a period of 30 days to purchase an additional        shares of our common stock. If the underwriters exercise the option in full, the total underwriting discounts and commissions payable by us will be $     , and the total proceeds to us, before expenses, will be $     .

### Cantor                                         Mizuho Securities

**SunTrust Robinson Humphrey**                        **JMP Securities**

Prospectus dated        , 2018

TABLE OF CONTENTS

|  | Page |
|---|---|
| PROSPECTUS SUMMARY | 1 |
| RISK FACTORS | 13 |
| FORWARD-LOOKING STATEMENTS AND STATISTICAL DATA | 56 |
| USE OF PROCEEDS | 58 |
| DIVIDEND POLICY | 60 |
| CAPITALIZATION | 61 |
| DILUTION | 64 |
| SELECTED FINANCIAL DATA | 66 |
| MANAGEMENT'S DISCUSSION AND ANALYSIS OF FINANCIAL CONDITION AND RESULTS OF OPERATIONS | 68 |
| BUSINESS | 83 |
| MANAGEMENT | 111 |
| EXECUTIVE AND DIRECTOR COMPENSATION | 117 |
| CERTAIN RELATIONSHIPS AND RELATED PARTY TRANSACTIONS | 124 |
| PRINCIPAL STOCKHOLDERS | 131 |
| DESCRIPTION OF CAPITAL STOCK | 133 |
| SHARES ELIGIBLE FOR FUTURE SALE | 138 |
| MATERIAL U.S. FEDERAL INCOME TAX CONSEQUENCES TO NON-U.S. HOLDERS OF OUR COMMON STOCK | 141 |
| UNDERWRITING | 145 |
| LEGAL MATTERS | 151 |
| EXPERTS | 151 |
| WHERE YOU CAN FIND ADDITIONAL INFORMATION | 151 |
| INDEX TO THE FINANCIAL STATEMENTS | F-1 |

_____

We have not, and the underwriters have not, authorized anyone to provide any information or to make any representations other than those contained in this prospectus or in any free writing prospectus prepared by or on behalf of us. We and the underwriters take no responsibility for, and can provide no assurance as to the reliability of, any other information that others may give you. This prospectus is an offer to sell only the shares offered hereby, but only under the circumstances and in the jurisdictions where it is lawful to do so. The information contained in this prospectus or in any applicable free writing prospectus is current only as of its date, regardless of its time of delivery or any sale of shares of our common stock. Our business, financial condition, results of operations and prospects may have changed since that date.

Through and including               , 2018 (25 days after the date of this prospectus), all dealers that buy, sell or trade shares of our common stock, whether or not participating in this offering, may be required to deliver a prospectus. This delivery requirement is in addition to the obligation of dealers to deliver a prospectus when acting as underwriters and with respect to their unsold allotments or subscriptions.

For investors outside the United States: We have not, and the underwriters have not, done anything that would permit this offering or possession or distribution of this prospectus in any jurisdiction where action for that purpose is required, other than in the United States. Persons outside the United States who come into possession of this prospectus must inform themselves, and observe any restrictions relating

to, the offering of the shares of common stock and the distribution of this prospectus outside the United States.

EVOLUS™ is one of our trademarks that is used in this prospectus. This prospectus also includes trademarks, trade names and service marks that are the property of other organizations, such as BOTOX® and BOTOX® Cosmetic, which we refer to throughout this prospectus as BOTOX. Solely for convenience, trademarks and trade names referred to in this prospectus appear without the ® and ™ symbols, but those references are not intended to indicate that we will not assert, to the fullest extent under applicable law, our rights, or that the applicable owner will not assert its rights, to these trademarks and trade names. We do not intend our use or display of other companies' trade names or trademarks to imply a relationship with, or endorsement or sponsorship of us by, any other companies.

ii

We are reliant on the ability of Daewoong, as the licensor of our only product candidate, and will be reliant on future licensors of any future product candidates, to maintain their intellectual property and protect their intellectual property against misappropriation, infringement or other violation. We may not have primary control over Daewoong's or our future licensors' patent prosecution activities. Furthermore, we may not be allowed to comment on prosecution strategies, and patent applications currently being prosecuted may be abandoned by the patent owner without our knowledge or consent. With respect to patents that are issued to our licensors, or patents that may issue on patent applications, third parties may challenge their validity, enforceability or scope, which may result in such patents being narrowed or invalidated. As a licensee, we are reliant on Daewoong and our future licensors to defend any third-party claims, including Daewoong's defense in connection with the Medytox Litigation, which is defined below. Our licensors may not defend or prosecute such actions as vigorously or in the manner that we would have if entitled to do so, and we will be subject to any judgement or settlement resulting from such actions. Also, a third-party may challenge the validity of our in-licensing transactions. Furthermore, even if they are unchallenged, any of our future in-licensed patents and patent applications may not adequately protect the licensors or our intellectual property or prevent others from designing around their or our claims.

***Third-party claims of intellectual property infringement, including the Medytox Litigation, may prevent or delay our development and commercialization efforts.***

Our commercial success depends in part on our avoiding infringement of the proprietary rights of third parties. Competitors in the field of dermatology, aesthetic medicine and neurotoxins have developed large portfolios of patents and patent applications in fields relating to our business. In particular, there are patents held by third parties that relate to the treatment with neurotoxin-based products for the indication we are currently developing. There may also be patent applications that have been filed but not published that, when issued as patents, could be asserted against us. There is a substantial amount of litigation, both within and outside the United States, involving patent and other intellectual property rights in the technology, medical device and pharmaceutical industries, including patent infringement lawsuits, interferences, oppositions and inter-party reexamination proceedings before the U.S. Patent and Trademark Office, or USPTO. Numerous U.S. and foreign issued patents and pending patent applications, which are owned by third parties, exist in the fields in which we are developing DWP-450. As the technology, medical device and pharmaceutical industries expand and more patents are issued, the risk increases that our product candidates may be subject to claims of infringement of the patent rights of third parties.

Third parties may assert that we or any of our current or future licensors, including Daewoong, are employing their proprietary technology without authorization. There may be third-party patents or patent applications with claims to materials, methods of manufacture or methods for treatment related to the use or manufacture of DWP-450 or any future product candidates. Because patent applications can take many years to issue, there may be currently pending patent applications which may later result in issued patents that DWP-450 or any future product candidates may infringe. In addition, third parties may obtain patents in the future and claim that use of our technologies infringes upon these patents. If any third-party patents were held by a court of competent jurisdiction to cover the manufacturing process of DWP-450 or any future product candidates, the holders of any such patents may be able to block our ability to commercialize such product candidate unless we obtain a license under the applicable patents, or until such patents expire. Similarly, if any third-party patent were held by a court of competent jurisdiction to cover aspects of our methods of use, the holders of any such patent may be able to block our ability to develop and commercialize the applicable product candidate unless we obtain a license or until such patent expires. In either case, such a license may not be available on commercially reasonable terms or at all.

In addition to claims of patent infringement, third parties may bring claims against us asserting misappropriation of proprietary technology or other information in the development, manufacture and commercialization of our product candidates. Defense of such a claim would require dedicated time and resources, which time and resources could otherwise be used by us toward the maintenance of our own intellectual property and the development and commercialization of our product candidates or by any of our current or future licensors for operational upkeep and manufacturing of our products. Presently, we, ALPHAEON, SCH and Daewoong are defendants to a lawsuit brought by Medytox, Inc., or Medytox, on June 7, 2017 in the Superior Court of the State of California, alleging, among other things, that Daewoong stole Medytox's botulinum toxin bacterial strain, or the BTX strain, that Daewoong misappropriated certain trade secrets of Medytox, including the process used to manufacture

37

DWP-450 (which Medytox claims is similar to its biopharmaceutical drug, Meditoxin) using the BTX strain, and that Daewoong thereby interfered with Medytox's plan to license Meditoxin to us. Medytox claims that as a result of Daewoong's conduct, we entered into the Daewoong Agreement instead of an agreement with Medytox to license Meditoxin.

With specific regard to us, Medytox alleges that (i) we have violated California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 because Daewoong's alleged knowledge of the misappropriation of certain trade secrets of Medytox is imputed to us as a result of our relationship with Daewoong, (ii) we have stolen the BTX strain through our possession of and refusal to return the BTX strain, (iii) we have engaged in unlawful, unfair and fraudulent business acts and practices in violation of California Bus. & Prof. Code § 17200, including conversion of the BTX strain and misrepresentations to the public regarding the source of the botulinum toxin bacterial strain used to manufacture DWP-450, and (iv) the Daewoong Agreement is invalid and in violation of Medytox's rights.

Medytox seeks, among other things, (i) actual, consequential and punitive damages, (ii) a reasonable royalty, as appropriate, (iii) a declaration that the Daewoong Agreement is void and unenforceable and that Medytox is entitled to disgorgement of all property wrongfully and unjustly retained or acquired by the defendants, including unlawfully gained profits, (iv) injunctive relief prohibiting us from using the license under the Daewoong Agreement and distributing DWP-450, and (v) attorneys' fees and costs.

Daewoong filed a motion to dismiss or stay for forum non conveniens, claiming that the place where the complaint has been filed, in the Superior Court of the State of California, is not the proper place for the trial of the claims in the complaint because, among other reasons, the underlying facts that gave rise to the complaint occurred in South Korea. Daewoong's motion to dismiss was granted by the Superior Court of the State of California on October 12, 2017. As a result, the action filed with the Superior Court of the State of California is stayed pending resolution of the proceedings in South Korea. In October 2017, Medytox initiated a civil lawsuit against Daewoong and its parent company Daewoong Co. Ltd in the Seoul Central District Court in Seoul, South Korea related to the same subject matter in the Medytox litigation. None of us, ALPHAEON or SCH are parties to the litigation in the Seoul Central District Court.

Given the early stage in the Medytox Litigation, we are unable to predict the likelihood of success of Medytox's claims against us, ALPHAEON, SCH or Daewoong or to quantify any risk of loss. The Medytox Litigation and any other similar claims, suits, government investigations, and proceedings are inherently uncertain and their results may not be favorable for us. For example, if the Medytox Litigation has a negative outcome for us, ALPHAEON or Daewoong, it could result in us losing access to DWP-450 and the manufacturing process and require us to negotiate a new license with Medytox for continued access to DWP-450. We may not be able to successfully negotiate such license on terms acceptable to us or at all. If we are unable to license DWP-450, we may not be able to find a replacement product, if at all, without expending significant resources and being required to seek additional regulatory approvals, which would be uncertain, time consuming and costly. Regardless of the outcome, such proceedings can have an adverse impact on us because of legal costs, diversion of management resources, and other factors. An adverse ruling against either us or one of the other defendants of any such proceedings could adversely affect our business, financial position, results of operations, or cash flows and could also result in reputational harm. Any of these consequences could adversely affect our business and results of operations.

In December 2017, Medytox filed a Citizen Petition, or the Citizen Petition, with the FDA. The Citizen Petition seeks to delay approval of the BLA submitted by us in May 2017 for DWP-450 until the FDA determines the identity and source of the botulinum strain for DWP-450 and validates the integrity of the data and information in the BLA. Medytox further requests that the FDA require the source and identity information in the BLA to include a single nucleotide polymorphism analysis of the whole genome sequence of the botulinum strain for DWP-450. The Citizen Petition alleges, among other things, that we made false statements in the BLA about the source and identity of the botulinum strain for DWP-450. If successful, the Citizen Petition could significantly delay, or even prevent, the FDA's approval of the BLA. Even if the FDA ultimately denies the Citizen Petition, the FDA may substantially delay approval of or deny the BLA in connection with its response to the Citizen Petition or issues raised therein.

Parties making claims against us or any of our current or future licensors may request and obtain injunctive or other equitable relief, which could effectively block our ability to further develop and commercialize one or more of our product candidates. Defense of these claims, regardless of their merit, would involve substantial litigation

38

expense and would be a substantial diversion of employee resources from our business. In the event of a successful claim of infringement, we or any of our current or future licensors may have to pay substantial damages, including treble damages and attorneys' fees for willful infringement, obtain one or more licenses from third parties which may not be commercially or more available, pay royalties or redesign our infringing products or manufacturing processes, which may be impossible or require substantial time and monetary expenditure. Furthermore, even in the absence of litigation, we may need to obtain licenses from third parties to advance our research, manufacture clinical trial supplies or allow commercialization of DWP-450 or any future product candidates. We may fail to obtain any of these licenses at a reasonable cost or on reasonable terms, if at all. In that event, we would be unable to further develop and commercialize one or more of our product candidates, which could harm our business significantly. Similarly, third-party patents could exist which might be enforced against our products, resulting in either an injunction prohibiting our sales, or, with respect to our sales, an obligation on our part to pay royalties and/or other forms of compensation to third parties.

*We may become involved in lawsuits to protect or enforce our intellectual property or the patents and other intellectual property of our licensors, which could be expensive and time-consuming.*

Competitors may infringe our intellectual property, including any future patents we may acquire, or the patents and other intellectual property of our licensors, including Daewoong. As a result, we or any of our current or future licensors may be required to file infringement claims to stop third-party infringement or unauthorized use. This can be expensive, particularly for a company of our size, and time-consuming. In addition, in an infringement proceeding, a court may decide that a patent of ours or any of our current or future licensors is not valid or is unenforceable, or may refuse to stop the other party from using the technology at issue on the grounds that our patent claims do not cover its technology or that the factors necessary to grant an injunction against an infringer are not satisfied.

An adverse determination of any litigation or other proceedings could put one or more of such patents at risk of being invalidated or interpreted narrowly. Interference, derivation or other proceedings brought at the USPTO may be necessary to determine the priority or patentability of inventions with respect to any of our future patent applications or those of our licensors or collaborators. Litigation or USPTO proceedings brought by us or any of our current or future licensors may fail or may be invoked against us or our licensors by third parties. Even if we are successful, domestic or foreign litigation or USPTO or foreign patent office proceedings may result in substantial costs and distraction to our management or the management of any of our current or future licensors, including Daewoong. We may not be able, alone or with any of our current or future licensors or collaborators, to prevent misappropriation of our proprietary rights, particularly in countries where the laws may not protect such rights as fully as in the United States.

Furthermore, because of the substantial amount of discovery required in connection with intellectual property litigation or other proceedings, there is a risk that some of our confidential information could be compromised by disclosure during this type of litigation or proceedings. In addition, during the course of this kind of litigation or proceedings, there could be public announcements of the results of hearings, motions or other interim proceedings or developments or public access to related documents. If investors perceive these results to be negative, the market price for our common stock could be significantly harmed.

Most of our competitors are larger than we are and have substantially greater resources. They are, therefore, likely to be able to sustain the costs of complex patent litigation longer than we could. Accordingly, despite our efforts, we may not be able to prevent third parties from infringing upon or misappropriating our intellectual property. In addition, the uncertainties associated with litigation could compromise our ability to raise the funds necessary to continue our clinical trials, continue our internal research programs, or in-license needed technology or other product candidates. There could also be public announcements of the results of the hearing, motions, or other interim proceedings or developments. If securities analysts or investors perceive those results to be negative, it could cause the price of shares of our common stock to decline.

*We may not be able to protect our intellectual property rights throughout the world.*

Filing, prosecuting and defending patents on product candidates in all countries throughout the world would be prohibitively expensive, and our intellectual property rights in some countries outside the United States can be less extensive than those in the United States. In addition, the laws of some foreign countries do not protect intellectual property rights to the same extent as federal and state laws in the United States and in some cases

39

FORWARD-LOOKING STATEMENTS AND STATISTICAL DATA

**Special Note Regarding Forward-Looking Statements**

This prospectus contains forward-looking statements that involve risks and uncertainties, including statements based on our current expectations, assumptions, estimates and projections about future events, our business, financial condition, results of operations and prospects, our industry and the regulatory environment in which we operate. Any statements contained herein that are not statements of historical facts may be deemed to be forward-looking statements. In some cases, you can identify forward-looking statements by terms such as "anticipate," "believe," "could," "estimate," "expect," "intend," "may," "plan," "potential," "predict," "project," "should," "will," "would" or the negative of those terms, or other comparable terms intended to identify statements about the future. Forward-looking statements include, but are not limited to, statements about:

- our ability to obtain and maintain regulatory approval of DWP-450, and any related restrictions, limitations and/or warnings in the label of DWP-450;

- our ability to successfully commercialize DWP-450, if approved;

- the potential market size, opportunity and growth potential for DWP-450, if approved;

- the attractiveness of DWP-450's characteristics (including the benefits of a 900 kDa botulinum toxin type A complex) and the rate and degree of physician and patient acceptance of DWP-450, if approved;

- our ability to build our own sales and marketing capabilities, or seek collaborative partners, to commercialize DWP-450, if approved;

- the pricing of DWP-450, if approved, and the flexibility of our pricing and marketing strategy compared to our competitors;

- the performance of our third-party licensors, suppliers, manufacturers and distributors;

- our expectations regarding our future development of DWP-450 for other indications;

- the accuracy of our estimates regarding expenses, future revenue, capital requirements and needs for additional financing;

- the timing or likelihood of regulatory filings and approvals or clearances for DWP-450;

- regulatory and legislative developments in the United States, EU, Canada and other countries;

- developments and projections relating to our competitors and our industry, including competing products and procedures;

- the loss of key management personnel;

- our future financial performance;

- the results of the Medytox Litigation, the Citizen Petition and any future legal proceedings; and

- our use of the net proceeds from this offering.

These forward-looking statements are subject to a number of risks, uncertainties and assumptions described under the section entitled "Risk Factors" and elsewhere in this prospectus. We also operate in a very competitive and rapidly changing environment. New risks emerge from time to time and it is not possible for our management to predict all risks, nor can we assess the impact of all factors on our business or the extent to which any factor, or combination of factors, may cause actual results to differ materially from those contained in, or implied by, any forward-looking statements. In light of these risks, uncertainties and assumptions, the forward-looking events and circumstances described in this prospectus may not occur and actual results could differ materially and adversely from those anticipated or implied in the forward-looking statements contained in this prospectus.

You should not rely upon forward-looking statements as predictions of future events. Although we believe that the expectations reflected in the forward-looking statements are reasonable, the future results, levels of activity, performance, events, circumstances or achievements reflected in the forward-looking statements may never be achieved or occur. Except as required by law, we undertake no obligation to update publicly any forward-looking statements for any reason after the date of this prospectus to conform these statements to actual results or to changes in our expectations.

You should read this prospectus and the documents that we reference in this prospectus and have filed with the SEC as exhibits to the registration statement on Form S-1, of which this prospectus is a part, with the understanding that our actual future results, levels of activity, performance and achievements may be materially different from what we expect. We qualify all of our forward-looking statements by these cautionary statements.

**Statistical Data**

We obtained the industry, statistical and market data in this prospectus from our own internal estimates and research as well as from industry and general publications and research, surveys and studies conducted by third parties. All of the market data used in this prospectus involves a number of assumptions and limitations. While we believe that the information from these industry publications, surveys and studies is reliable, the industry in which we operate is subject to a high degree of uncertainty and risk due to a variety of important factors, including those described in the section entitled "Risk Factors." These and other factors could cause results to differ materially from those expressed in the estimates made by third parties and by us.

57