# EXHIBIT M

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**08/14/2017** at 10:20:00 PM
Clerk of the Superior Court
By Marlene Orellana, Deputy Clerk

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
SEONG H. KIM, Cal. Bar No. 166604
REBECCA EDELSON, Cal. Bar No. 150464
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:    310.228.3700
Facsimile:    310.228.3701
Email:    shkim@sheppardmullin.com
    redelson@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
HWAN KIM (admitted *pro hac vice*)
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
Telephone:    202.747.1900
Facsimile:    202.747.1901
Email:    hkim@sheppardmullin.com

Attorneys for Plaintiff MEDYTOX INC.

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

| | |
|---|---|
| MEDYTOX INC., a Korean corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DAEWOONG PHARMACEUTICALS CO., LTD., a Korean corporation, DAEWOONG CO., LTD., a Korean corporation, ALPHAEON CORP., a California corporation, SCH-AEON, LLC, a Delaware limited liability company, EVOLUS, INC., a Delaware corporation, BYUNG KOOK LEE, an individual, JAE CHUN YOON, an individual, JAE SEUNG YOON, an individual, CHANG WOO SUH, an individual, Does 1 through 25,<br><br>Defendants. | Case No.: 30-2017-00924912-CU-IP-CJC<br><br>The Hon. Deborah C. Servino<br>Dept. C22<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1.  **VIOLATION OF CALIFORNIA UNIFORM TRADE SECRETS ACT**<br>2.  **CONVERSION**<br>3.  **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>4.  **UNJUST ENRICHMENT**<br>5.  **BREACH OF WRITTEN CONTRACT**<br>6.  **VIOLATION OF CAL. BUS. & PROF. CODE SECTION 17200**<br>7.  **DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

FIRST AMENDED COMPLAINT

Initial Complaint Filed: June 7, 2017
Trial Date: [None Set]

Plaintiff Medytox Inc. ("Medytox") alleges as follows for its First Amended Complaint against Daewoong Pharmaceuticals Co., Ltd., a.k.a. Daewoong Pharmaceutical Co., Ltd., ("Daewoong Pharmaceutical"), Daewoong Co., Ltd. ("Daewoong"), Evolus, Inc. ("Evolus"), Alphaeon Corp. ("Alphaeon"), and SCH-AEON, LLC ("SCH-AEON"), Messrs. Byung Kook Lee ("BK Lee"), Jae Chun Yoon ("C Yoon"), Jae Seung Yoon ("S Yoon"), Chang Woo Suh ("CW Suh"), and Does 1 through 25 (collectively, all defendants are referred to as "Defendants"):

## INTRODUCTION

1.      Medytox filed this lawsuit because Defendants stole Medytox's biopharmaceutical drug "Meditoxin," which is used to treat certain muscular conditions and to remove skin wrinkles. Meditoxin and other C. botulinum toxin Type A neurotoxin ("BTX") drugs are used much like the commonly known drug called "Botox."

2.      Medytox is a world-renowned producer of BTX drugs. Meditoxin is produced by using BTX, its underlying bacterial strain, and Medytox's confidential and proprietary manufacturing process, know-how, and technology. The global market for BTX drugs is approximately $3 billion per year and expected to be nearly $6 billion by 2023. Medytox is informed and believes that California is one of the largest markets for such drugs.

3.      Daewoong and Daewoong Pharmaceutical (collectively, the "Daewoong Defendants") misappropriated Medytox's valuable assets and related intellectual property so that Daewoong Pharmaceutical could avoid incurring the risk, time, and expense of independently developing its own BTX drug. The Daewoong Defendants then embarked on a scheme to steal Medytox's customer. Specifically, Medytox was in negotiations with Evolus to supply and license a BTX drug named Neuronox, which is also sold under the name Meditoxin and other brand names. Following the theft, Daewoong Pharmaceutical entered into an agreement with Evolus, which was later acquired by Alphaeon (and/or its affiliates) to supply and license what they stole from Medytox. Ultimately, this calculated theft reportedly netted the Daewoong Defendants and

-2-

FIRST AMENDED COMPLAINT

had printed, and records of his emails.  Medytox was surprised to discover, *inter alia*, that BK Lee had printed several copies of the *entire* Meditoxin Master Record.

39.     In the course of its investigation, Medytox also discovered that BK Lee had emailed to his personal email account the entire list of the hardware equipment that constituted the Meditoxin production line, blueprints for key hardware components, equipment specifications, diagrams for the production process, and the drug substance record that detailed the exact specifications for the production of Meditoxin.  In sum, BK Lee misappropriated all of the information necessary for the efficient production of Meditoxin.  Based on information and belief, this misconduct occurred beginning in early 2008 and through August 2008, preceding BK Lee's departure from Medytox in August 2008.  BK Lee had taken the complete set of documents that allows for the exact replication of the Meditoxin manufacturing facility.  BK Lee went to great lengths to take what he needed and to hide his wrongful activities from Medytox.  Based on information and belief, BK Lee took efforts (such as sending pieces of the confidential information to his private email under an innocuous subject line) to surreptitiously remove proprietary confidential information from Medytox's computers and to conceal his unlawful activities from Medytox.

40.     Based on information and belief, the Daewoong Defendants, S Yoon, C Yoon, CW Suh, and Does 1-25 engaged in purposeful conduct to conceal their misconduct from Medytox.  Medytox is informed and believes that the Daewoong Defendants, either directly or through Defendants Alphaeon, Evolus and/or SCH-AEON (collectively, the "Alphaeon Defendants"), stated in their regulatory filings before the U.S. Federal Drug Administration and the Korea Ministry of Drug and Food Safety, as well as on the website of Daewoong Pharmaceutical, that the Daewoong Defendants discovered the BTX bacterial strain from a soil sample in June 2010.  Further, on or about April 14, 2016, at the Dubai World Dermatology and Laser Conference, Chung Sei Kim, one of the Daewoong Defendants' scientists overseeing the BTX drug development at the Daewoong Defendants, represented to Medytox (through Hyunho Jung, the founder of Medytox) that he had personally isolated the Daewoong Defendants' BTX bacterial strain from soil samples that the Daewoong Defendants had accumulated over the years and he

-11-

FIRST AMENDED COMPLAINT

57.    Based on information and belief, Alphaeon and its affiliates wrongly claim an interest in Evosyal, including the right to market and distribute under license Daewoong Pharmaceutical granted to Evolus.  Daewoong Pharmaceutical did not have the right to grant a license because the subject matter of the license includes trade secrets and other property stolen from Medytox.

**H.    Medytox Has Been, And Will Be, Severely Harmed By Defendants' Wrongdoing**

58.    Medytox developed Meditoxin and related trade secrets at great expense, and through years of painstaking research, experimentation, and trial and error.  If Defendants are not enjoined from their ongoing misappropriation, misrepresentations to consumers, and unjust exploitation of Medytox's property, they will cause severe and irreparable harm to Medytox, and Medytox has no adequate remedy at law.

59.    The global markets for BTX drugs are vast and on the cusp of rapid development. The impending period of drastic market growth, which is expected to double in the next six or so years, will set the competitive landscape for the industry going forward.  The growth, profitability, and even survival of individual firms will likely be determined by what happens now and in the coming period. Defendants' exploitation of the stolen Meditoxin Trade Secret and its BTX Strain irreparably harms Medytox during its growth process.  Allowing the conduct to continue, and awarding monetary compensation after the fact, will not sufficiently unravel the harm caused to Medytox by Defendants' conduct.  With this action, Medytox seeks to vindicate its rights, prevent any further wrongful disclosure or further misuse of its property, and obtain compensation for its injuries to the extent that they are ascertainable, and for Defendants' unjust enrichment resulting from their unlawful conduct.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Violation of California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.***

**(Against All Defendants)**

60.    Medytox incorporates paragraphs 1 through 59 as though fully set forth herein.

61.    Medytox is the rightful owner of the Meditoxin Trade Secret, identified above, which constitutes protectible trade secrets as defined by California's Uniform Trade Secrets Act.

62.    These trade secrets relate to the process for efficiently handling and producing botulinum toxin drug, which is licensed, sold, shipped and/or used in interstate and foreign commerce, including in California, which is one of the largest markets for such drugs.

63.    Medytox developed the Meditoxin Trade Secret through many years of hard work, research and development.  The Meditoxin Trade Secret derives independent economic value from being kept a secret, and not being readily ascertainable through proper means.

64.    At all relevant times, Medytox has taken reasonable measures to keep the information secret.  Among other things, Medytox restricts access to the Meditoxin Trade Secret to only those who "need to know."  Medytox computers, tablets, and smart phones provided to Medytox employees are restricted and password protected, and subject to other security measures.  Medytox secures its physical facilities by restricting access and then monitoring actual access with security cameras and guards.  Medytox also requires employees, contractors, and consultants to sign confidentiality agreements.

65.    Medytox revealed the Meditoxin Trade Secret to BK Lee while he was employed at Medytox, subject to his agreement and duty to safeguard the Meditoxin Trade Secret and use the information solely for Medytox's benefit.  BK Lee knew and acknowledged that he was subject to a duty to maintain the secrecy and limit the use of Medytox's trade secrets.  In fact, BK Lee signed a written confidentiality agreement, which all employees of Medytox were required to sign as a condition of their employment at Medytox.  The agreement specifically recites that the confidentiality obligation is ongoing during and continues even after termination of employment at Medytox.  The confidentiality agreement also states, among other things, that BK Lee shall return all information assets of Medytox upon termination of his employment, that he shall not disclose or otherwise use any trade secrets of Medytox even after termination, and that BK Lee will accept criminal and civil liabilities in the event of any improper disclosure or use.

66.    Nonetheless, as described above, BK Lee, Daewoong Pharmaceutical and Daewoong (acting through S Yoon, C Yoon and CW Suh) conspired with each other to steal the

-18-

Meditoxin Trade Secret, to use the same to compete with Medytox, and to conceal their theft and misappropriation from Medytox. At all relevant times, each of these defendants knew that their disclosure, possession, and use of Medytox's trade secrets were wrongful, without Medytox's consent, and in breach of BK Lee's obligations to hold the Meditoxin Trade Secret confidential.

67.    As alleged above, BK Lee disclosed and used Medytox's Meditoxin Trade Secret without Medytox's consent (express or implied), even though he acquired access to the Meditoxin Trade Secret under circumstances giving rise to a duty to maintain its secrecy or limit its use for Medytox. His disclosure to and use for the Daewoong Defendants, S Yoon, C Yoon, CW Suh, and Does 1-25 of Medytox's Meditoxin Trade Secret was in breach of that duty. Based on information and belief, in doing so, BK Lee was acting in his individual capacity and for personal gain as well as in his capacity as the agent of the Daewoong Defendants, S Yoon, C Yoon, and CW Suh and Does 1-25 or, alternatively, they and BK Lee conspired with one another to misappropriate the Meditoxin Trade Secret.

68.    As alleged above, the Daewoong Defendants, S Yoon, C Yoon, CW Suh, and Does 1-25 acquired the Meditoxin Trade Secret through BK Lee, knowing or having reason to know that they were acquiring it by improper means, including: (i) breach of BK Lee's obligations to maintain the Meditoxin Trade Secret in trust for Medytox, (ii) BK Lee's theft, and (iii) inducement of BK Lee to breach his obligations to Medytox. As alleged above, the Daewoong Defendants, S Yoon, C Yoon, CW Suh, and Does 1-25 have used and/or disclosed the Meditoxin Trade Secret without Medytox's consent (express or implied) after acquiring from BK Lee through improper means knowledge of the Meditoxin Trade Secret. At the time of their disclosure or use, they knew or had reason to know that Daewoong's knowledge of the Meditoxin Trade Secret was derived from BK Lee who had utilized improper means to acquire it, including in breach of his duty to Medytox to maintain its secrecy and limit its use for Medytox. Based on information and belief, to the extent that any of these Defendants did not directly engage in such conduct themselves, those who directly engaged in such conduct were acting as the agents of the others, or in furtherance of a conspiracy among them and BK Lee to misappropriate the Meditoxin Trade Secret.

-19-

69. The Alphaeon Defendants have been and are on notice that the Daewoong Defendants, S Yoon, C Yoon, CW Suh, Does 1-25, and BK Lee misappropriated the Meditoxin Trade Secret. The Nabota drug they propose and threaten to distribute was created by misappropriation of the Meditoxin Trade Secret. The Alphaeon Defendants, however, have refused to refrain from developing, marketing, and/or pursuing regulatory approval of the drug Nabota. The Alphaeon Defendants continue to seek FDA clearance to sell Nabota to consumers in California and the rest of the United States. Thus, the Alphaeon Defendants are using and threaten to use the Meditoxin Trade Secret in connection with Nabota without Medytox's consent (express or implied), knowing or having reason to know that the Nabota's use of the Meditoxin Trade Secret was derived from improper means.

70. As the Daewoong Defendants' partners or joint venturers, the Daewoong Defendants' knowledge of the Meditoxin Trade Secret is imputed to the Alphaeon Defendants (to the extent that the Alphaeon Defendants do not have direct knowledge of the Meditoxin Trade Secret). The Alphaeon Defendants' acquisition, use, threatened use of the Meditoxin Trade Secret without Medytox's consent is with knowledge or with reason to know that their knowledge of the Meditoxin Trade Secret was: (a) derived from or through the Daewoong Defendants who had utilized improper means to acquire it; and/or (b) derived from or through BK Lee who owed a duty to Medytox to maintain its secrecy or limit its use. The Alphaeon Defendants also failed to put a stop to their partner's or joint venturer's (Daewoong Pharmaceutical) continued improper use of the Meditoxin Trade Secret after knowing or having reason to know about the Daewoong Defendants' misappropriation of the Meditoxin Trade Secret.

71. The Defendants' misconduct is continuing in nature, for which Medytox has no adequate remedy at law. Unless and until enjoined and restrained by order of this Court, the Defendants will continue to misappropriate the Meditoxin Trade Secret to unjustly enrich themselves and damage Medytox, including by diverting business away from Medytox. Medytox seeks an injunction to prevent the ongoing misappropriation, and for the return of all trade secrets that rightfully belong to Medytox.

72.    As a direct and proximate result of the Defendants' misconduct, Medytox has and continues to suffer injuries in an amount in excess of the jurisdictional minimum of this Court. Furthermore, as a direct and proximate result of their conduct, the Defendants were and are continuing to be unjustly enriched.  Medytox seeks recovery of its actual damages, restitution/disgorgement of the Defendants' unjust enrichment, a reasonable royalty, as appropriate, and an award of attorneys' fees and costs incurred in connection with Medytox's efforts to seek redress for the Defendants' misconduct.

73.    The Defendants' theft and misappropriation of the Meditoxin Trade Secret was and continues to be intentional, knowing, willful, malicious, fraudulent, oppressive, and in bad faith, justifying the award of exemplary damages against Defendants, as well as Medytox's attorneys' fees and costs.

## SECOND CAUSE OF ACTION

### Conversion

### (Against All Defendants)

74.    Medytox incorporates paragraphs 1 through 59 as though fully set forth herein. Medytox, however, does not rely on the misappropriation of its Meditoxin Trade Secret for this cause of action.

75.    Medytox owns the BTX Strain, which it maintains in a secure storage facility.

76.    Defendants stole from and continue to possess and use Medytox's BTX Strain, which Medytox uses to produce its botulinum toxin drug "Meditoxin."

77.    Pursuant to the aforementioned conspiracy, BK Lee stole Medytox's BTX Strain from Medytox's secured storage facility without Medytox's knowledge or consent, and delivered the same to the Daewoong Defendants and, on information and belief, the Alphaeon Defendants, which now possess and use the same to manufacture Daewoong Pharmaceutical's "Nabota/Evosyal/DWP-450" drug to compete with Medytox's "Meditoxin" drug.

78.    Defendants' misconduct is continuing in nature, for which Medytox has no adequate remedy at law.  Unless and until enjoined and restrained by order of this Court, these Defendants will continue to use Medytox's BTX Strain to unjustly enrich themselves and damage

-21-