# EXHIBIT Q

**UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.**

**Before the Honorable David P. Shaw
Administrative Law Judge**

| | |
|---|---|
| In the Matter of<br><br>CERTAIN BOTULINUM TOXIN<br>PRODUCTS, PROCESSES FOR<br>MANUFACTURING OR RELATING TO<br>SAME AND CERTAIN PRODUCTS<br>CONTAINING SAME | Inv. No. 337-TA-1145 |

## JOINT DISCOVERY STATEMENT

Pursuant to Order No. 4 dated March 12, 2019, Complainants Allergan plc and Allergan,

Inc. (together with their subsidiaries, "Allergan") and Medytox Inc. ("Medytox") (collectively,

"Complainants"), and Respondents Daewoong Pharmaceuticals Co., Ltd. ("Daewoong") and

Evolus, Inc. ("Evolus") (collectively, "Respondents") (Complainants and Respondents, together,

the "Private Parties"), and the Commission Investigative Staff (the "Staff") hereby submit this

Joint Discovery Statement addressing the topics identified in Order No. 4.

**I.    THE PROPOSED ISSUES TO BE LITIGATED (WITHIN THE FRAMEWORK
OF THE GENERAL ISSUES DETERMINED BY THE COMMISSION'S NOTICE
OF INVESTIGATION), AND ANY STIPULATIONS AGREED TO BY ALL
PARTIES.**

### A.    Complainants

Complainants intend to litigate the issues set forth in the Complaint, as supplemented,

and the Notice of Investigation.  To the extent additional issues surface during discovery,

Complainants reserve the right to litigate those issues.  The issues to be litigated include, but are

not limited to, the following:

### 1. Unlawful and Unfair Acts of Respondents

Whether Respondents have committed unfair acts under Section 337 of the Tariff Act of 1930, as amended, including by misappropriating Medytox's information, processes, and botulinum neurotoxin ("BTX") strain that individually and collectively constitute trade secrets and by using the same in the development and manufacture of botulinum neurotoxin products manufactured by Daewoong Pharmaceuticals Co., Ltd., specifically: (1) DWP-450 (prabotulinumtoxinA), variously marketed under the brand names Nabota®, Jeuveau™ and other brand names; (2) products containing or derived from DWP-450; and (3) products containing or derived from the BTX strain assigned the high-risk pathogen control number 4-029-CBB-IS-001 by the Korean Centers for Disease Control and Prevention or the manufacturing process used to manufacture DWP-450 (the "Accused Products").

### 2. Domestic Industry

Unless stipulated by Respondents and the Staff, whether a domestic industry exists pursuant to 19 U.S.C. § 1337(a)(1)(A) with regards to Complainants' domestic industry products, including BTX  products BOTOX®, BOTOX® Cosmetic, and MT10109L.

### 3. Importation

Unless stipulated by Respondents and the Staff, whether the Accused Products have been imported, sold for importation, and/or sold after importation, into the United States by or on behalf of Respondents.

### 4. Harm to Domestic Industry

Whether under 19 U.S.C. § 1337(a)(1)(A)(i), the Accused Products have the threat or effect of destroying or substantially injuring an industry in the United States.

2

### 5. Remedy

The form and scope of any remedial orders that should issue if the Commission finds a violation of Section 337.

### 6. Bond

The appropriateness and amount of the bond that should be required during the Presidential Review period if the Commission finds a violation of Section 337.

### B.    Respondents

Respondents intend to litigate the issues raised in the Complaint, including the issues identified below.  Respondents reserve the right to identify additional issues as discovery progresses.  Respondents further reserve the right to object to the proper scope of discovery and this Investigation and do not waive such rights by identifying the issues below.

### 1.  Medytox's Manufacturing Process Is Not A Trade Secret

Whether Complainants can meet their burden to prove that Medytox's manufacturing process, including the allegedly misappropriated Batch Record and Characterization Report, are trade secrets in light of Medytox's own policies and practices in protecting those purported secrets, as well as public knowledge and disclosures concerning the process for manufacturing of BTX cultures and products.

### 2.  No Misappropriation of Trade Secrets

Whether Complainants can meet their burden to prove that any alleged Medytox trade secret was misappropriated.  Further, whether Complainants can meet their burden to prove that Respondents used any misappropriated Medytox trade secret, and did so knowingly.

### 3.    Medytox's Hall-A Hyper Strain Is Not A Trade Secret

The issues to be litigated are defined by the scope of the Complaint and the Notice of Investigation, here the misappropriation of trade secrets.  The exclusive grounds on which the

3

Complaint seeks an exclusion order is "based on misappropriated trade secrets of Medytox." Compl. ¶ 1; *see also id.* ¶ 2 ("Complainants . . . respectfully request . . . a limited exclusion order to remedy the unlawful and unauthorized importation in the United States of Respondents' botulinum neurotoxin products manufactured using Medytox's misappropriated trade secrets currently known as DWP-450 . . . ."). The Notice of Institution of Investigation likewise provides that the scope of the investigation is "to determine whether there is a violation of . . . section 337 . . . by reason of misappropriation of trade secrets, the threat or effect of which is to destroy or substantially injury a domestic industry in the United States."

As such, an issue to be litigated at the outset is whether Complainants can, as a matter of law, predicate a claim of trade-secret misappropriation on the alleged theft of a bacterium, which here is a naturally-occurring and widely-available organism that neither contains information nor embodies information. Further, if the ALJ were to rule that the naturally-occurring and widely-available bacterium could be a trade secret as a matter law, additional issues to be litigated would include whether Medytox's Hall-A Hyper Strain is, in fact, a protectable trade secret in light of the circumstances by which Medytox acquired its Strain, Medytox's own policies and practices in purportedly safeguarding its Strain, and the Strain's similarity to other BTX strains. Further issues to litigate would include whether Medytox can prove that it has legitimate ownership over its own BTX strain and whether any differences between its Strain and other Hall-A Hyper Strains are independently valuable over and above other BTX strains, and whether Medytox created that value as opposed to nature.

### 4. Existence and Scope of Domestic Industry

Whether Complainants can meet their burden to prove that, pursuant to 19 U.S.C. § 1337(a)(1)(A), a domestic industry exists in the U.S. with regard to the sale of Complainants' BTX products, including BOTOX®, BOTOX® Cosmetic, and MT10109L. Further, whether the

4

relevant domestic industry should include other potential competitors who have been effectively excluded from the market due to anticompetitive practices.

### 5. Lack of actual or threatened substantial injury to a domestic industry

Whether Complainants can meet their burden to prove that, under 19 U.S.C. § 1337(a)(1)(A)(i), the Accused Products have the threat or effect of destroying or substantially injuring an industry in the United States. Further, whether the benefits accruing to the industry from increased competition would offset any such injury.

### 6. Lack of Causation

Whether Complainants can meet their burden to prove that the alleged trade secret misappropriation is the legal and factual cause of any substantial injury to a domestic industry. Further, whether there is any superseding, intervening, or contributory cause of any such injury.

### 7. Lack of Importation

Whether Complainants can meet their burden to prove that the Accused Products have been imported, sold for importation, or sold after importation, in the United States, by or on behalf of Respondents.

### 8. Statute of limitations; laches; and waiver

Whether the claims asserted in the Complaint are barred by the statute of limitations or the doctrines of laches or waiver due to Complainants' delay in taking remedial action for nearly a decade after they knew or should have known of the alleged misappropriation of trade secrets.

### 9. Unclean hands; unjust enrichment

Whether the claims asserted in the Complaint are barred by the doctrine of unclean hands or unjust enrichment in light of Medytox's own misconduct in acquiring its Hall-A Hyper Strain and regulatory approvals, and/or Complainants' own conduct in engaging in anticompetitive conduct in the domestic market.

5

### 10. Extraterritoriality

Whether the ITC can predicate an Investigation on an alleged misappropriation of a foreign company's alleged trade secrets by another foreign company in a foreign country, when the alleged misappropriation is already subject to foreign legal proceedings, when neither foreign company currently sells any products in the United States, and when the domestic licensee (Allergan) acquired any rights or interest it might have after the alleged misappropriation.

### 11. Comity, Res Judicata and Estoppel

Whether rulings and/or a judgment by the South Korean court that is hearing an identical case between Medytox and Daewoong are binding authority here, whether any such rulings are entitled to deference, and whether principles of comity and judicial economy counsel in favor of deference to the ongoing overseas proceedings.

### 12. Remedy

The form and scope of any remedial orders that should issue if the Commission finds a violation of Section 337.

### 13. Bond

The appropriateness and amount of any bond that should be required during the Presidential Review period if the Commission finds a violation of Section 337.

### C.     The Staff

The Staff expects the following issues to be litigated:

### 1.     Unfair Methods of Competition and Unfair Acts

Whether there is a violation of subsection (a)(1)(A) of section 337, as alleged by Complainants, by Respondents' alleged misappropriation of Medytox's trade secrets, which may include certain information, processes, and strain(s) of *Clostridium botulinum*, and the use of such trade secrets to manufacture botulinum neurotoxin (BTX products) that are imported into

6

the United States, sold for importation, or sold within the United States after importation. The accused BTX products are manufactured by Respondent Daewoong Pharmaceuticals Co., Ltd. and include: (1) DWP-450 (prabotulinumtoxinA), variously marketed under the brand names Nabota®, Jeuveau™ and other brand names; (2) products containing or derived from DWP-450; and (3) products containing or derived from the BTX strain assigned the high-risk pathogen control number 4-029-CBB-IS-001 by the Korean Centers for Disease Control and Prevention or the manufacturing process used to manufacture DWP-450.

### 2.  Importation

Whether the Accused Products have been imported, sold for importation, and/or sold after importation, into the United States by or on behalf of Respondents.

### 3.  Domestic Industry

Whether a domestic industry exists pursuant to 19 U.S.C. § 1337(a)(1)(A) with regards to Complainants' domestic industry products, which may include BOTOX®, BOTOX® Cosmetic, and MT10109L.

### 4.  Harm to Domestic Industry

Whether under 19 U.S.C. § 1337(a)(1)(A)(i), the Accused Products have the threat or effect of destroying or substantially injuring an industry in the United States.

### 5.  Remedy

The form and scope of any remedial orders that should issue if the Commission finds a violation of Section 337.

### 6.  Bond

The appropriateness and amount of the bond that should be required during the Presidential Review period if the Commission finds a violation of Section 337.

### D.    Stipulations

As of the filing of this Joint Discovery Statement, the Private Parties have entered into the following stipulations:

- Discovery requests will be served in both PDF and Word versions.

- Depositions of witnesses who currently reside in Korea will be conducted in Korea, unless otherwise subsequently agreed by the Private Parties and the Staff.

- Copies of any discovery obtained pursuant to third party subpoenas will, upon receipt, be promptly served on all parties.

- All documents may be served on any other party by electronic means only directed to the address specified in that party's notice of appearance, and without transmittal by other means.

The Parties may enter into additional stipulations governing, for example, production format for documents and electronically exchanged materials.  The Parties agree that discovery will proceed normally and that they will consider proposals throughout the course of this Investigation that would make the pre-hearing process and the hearing more efficient.

## II.    A DESCRIPTION OF INFORMATION AND EVIDENCE THAT EACH PARTY INTENDS TO SUBMIT TO PROVE ITS OWN CASE.

### A.    Complainants

While it is not possible to set forth with specificity all evidence Complainants will offer to support their positions at this early stage of the Investigation, and Complainants reserve the right to rely on any relevant and admissible information uncovered prior to the hearing, Complainants currently expect to submit the following types of information and evidence at the hearing, unless they are able to reach stipulations or issues are resolved through summary determination.

Complainants intend to submit information and evidence that is probative of the issues set forth in the Complaint, as supplemented, and in the Notice of Institution of Investigation

and/or are relevant to Respondents' potential defenses, which may include, but are not limited to, the following topics:

- Information and evidence that Medytox owns the information, processes, and BTX strain that were misappropriated by former Medytox employee Byung Kook Lee (the "Stolen Materials").

- Information and evidence that the Stolen Materials have economic value.

- Information and evidence that the Stolen Materials, individually and in combination, are not generally well known.

- Information and evidence that Medytox has taken reasonable steps to protect the Stolen Materials from public disclosure or dissemination.

- Information and evidence that Byung Kook Lee provided the Stolen Materials to Daewoong or its agents.

- Information and evidence that Byung Kook Lee was compensated by Daewoong or its agents, directly and indirectly, for providing the Stolen Materials.

- Information and evidence that the Accused Products were developed using the Stolen Materials.

- Information and evidence that the Accused Products are manufactured using the Stolen Materials.

- Information and evidence that Respondents are importing the Accused Products into the United States.

- Information and evidence that a domestic industry for BTX products exists in the United States.

- Information and evidence that the Accused Products have caused, are causing, and/or threaten substantial injury to the domestic industry for BTX products in the United States.

- Information and evidence that the Accused Products threaten to prevent MT10109L from becoming part of the existing domestic industry.

- Information and evidence that the appropriate remedy is an exclusion order and cease and desist orders directed to the Accused Products.

- Information and evidence that a substantial bond should be required of Respondents for any importations or sales of the Accused Products during the Presidential Review Period.

9

## B.    Respondents

While it is not possible to set forth with specificity all evidence Respondents will offer to support their defenses at this early stage of the Investigation, and Respondents reserve the right to rely on any relevant and admissible information uncovered prior to the hearing, Respondents currently expect to submit information and evidence concerning the litigation topics identified in Section I.B above, unless the parties are able to reach stipulations or issues are resolved through summary determination.  Respondents reserve the right to object to the proper scope of discovery and this investigation and do not waive such rights by identifying the information and evidence below.

In particular, but not by way of limitation, Respondents expect to submit the following types of information and evidence listed below in support of their defenses and affirmative defenses.  Such information and evidence may include, but is not limited to, fact and expert testimony, as well as documents.

- Information and evidence concerning Medytox's manufacturing processes, including the allegedly misappropriated Batch record and Characterization Report.

- Information and evidence concerning Daewoong's manufacturing process.

- Information and evidence concerning public knowledge about Medytox's alleged trade secrets.

- Information and evidence concerning how Medytox's manufacturing process compares to other known manufacturing processes.

- Information and evidence concerning Medytox's policies, procedures, and practices for protecting its alleged trade secrets.

- Information and evidence concerning actions Medytox took or did not take to protect and preserve its alleged trade secrets.

- Information and evidence concerning Complainants' allegation that a Medytox trade secret was misappropriated.

10

- Information and evidence concerning whether Daewoong or Evolus received or used any alleged Metytox trade secret.

- Information and evidence concerning whether Daewoong or Evolus knowingly received or used any alleged Metytox trade secret.

- Information and evidence concerning whether the naturally-occurring and widely-available bacterium at issue is a trade secret.

- Information and evidence concerning the origins and transfer history of Medytox's Hall-A Hyper Strain.

- Information and evidence concerning similarities and differences between Medytox's Strain and other BTX strains, and the economic value of any such differences.

- Information and evidence concerning whether the parties' respective bacteria strains produce spores.

- Information and evidence concerning the data and other information or things Medytox has submitted to regulators to obtain regulatory approvals.

- Information and evidence concerning compensation paid by Daewoong to Byung Kook Lee.

- Information and evidence concerning the economic value of the alleged Medytox trade secrets.

- Information and evidence concerning the relevant and proper scope of the domestic industry.

- Information and evidence concerning anticompetitive conduct by the Complainant(s) affecting the relevant domestic industry.

- Information and evidence concerning Allergan's efforts to commercialize MT10109L, and whether the Accused Products threaten to prevent MT10109L from becoming part of the relevant domestic industry.

- Information and evidence concerning whether the Accused Products have benefitted, are benefitting, and/or may benefit the relevant domestic industry.

- Information and evidence concerning whether the Accused Products have caused, are causing, and/or threaten substantial injury to the relevant domestic industry.

- Information and evidence concerning whether there are other causes, including superseding causes, intervening causes, or contributory causes, of any potential injury to the relevant domestic industry.

11

- Information and evidence concerning whether Complainants' own actions have contributed to or caused injury to the relevant domestic industry.

- Information and evidence concerning whether the Accused Products have been imported, sold for importation, or sold after importation, in the United States, by or on behalf of Respondents.

- Information and evidence concerning when Complainants' first knew or should have known of the alleged misappropriation of trade secrets.

- Information and evidence concerning efforts Complainants' took or did not take to remediate the alleged misappropriation of trade secrets.

- Information and evidence concerning why Complainants waited  nearly ten (10) years after the alleged misappropriation of trade secrets to take remedial action.

- Information and evidence concerning proceedings between Medytox and Daewoong in South Korea.

- Information and evidence concerning the form and scope of any remedial orders that might be issued.

- The appropriateness and amount of any bond that should be required during the Presidential Review period if any violation is found.

- All other information and evidence concerning the defenses asserted by Respondents in this Investigation and such other defenses as it becomes aware of as a result of investigation and discovery in this matter.

## C.    The Staff

Evidence obtained through discovery among the parties and from non-parties may be

offered at the hearing by the Staff.  This evidence may include the issues outlined in the Notice

of Investigation and Section 1, *supra*.

## III.   A DESCRIPTION OF SPECIFIC INFORMATION AND EVIDENCE THAT EACH PARTY WILL BE SEEKING FROM OTHER PARTIES AND THIRD PERSONS.

The specific information and evidence that the Private Parties will be seeking from each

other and third persons includes the information and evidence outlined above.  It is not fully

known at this time what information the Private Parties or the Staff will need to obtain from third

12

parties or which third parties will be contacted for information. At this time, the Private Parties and the Staff identify the following potential discovery:

### A.    Complainants

#### 1. Information and Evidence that Complainants Will Seek From Respondents

Complainants will seek information and evidence from Respondents related to at least the subjects listed in Sections I and II of this Joint Discovery Statement, as well as information on and identification of persons knowledgeable about the subjects referenced in Sections I and II. Complainants have served first sets of interrogatories, requests for production, and requests for inspection on Respondents, which seek information commensurate with the categories of information and evidence set forth above in Section II. Complainants anticipate that they will seek additional discovery from Respondents as allowed by the Commission Rules and the Judge's Ground Rules, including fact and/or expert depositions, requests for admissions, and additional interrogatories, requests for production, and requests for inspection.

#### 2. Information and Evidence that Complainants Will Seek From Third Parties

Complainants have applied for, and Judge Shaw has issued, third party subpoenas for documents and deposition testimony to Byung Kook Lee, Dr. Eric Johnson, and Dr. J. Christopher Marmo. Upon information and belief, Byung Kook Lee has information and evidence regarding the misappropriation of the Stolen Materials. Upon information and belief, Dr. Johnson served as a consultant to Evolus regarding DWP-450, and has information and evidence regarding the development and characterization of DWP-450, its manufacturing process, and information provided by Respondents to the U.S. Food and Drug Administration ("FDA"). Upon information and belief, Dr. Marmo was the former Chief Executive Officer of Evolus, and has information and evidence regarding the development and characterization of DWP-450, its manufacturing process, Evolus's agreement with Daewoong, information provided

13

by Respondents to the FDA, and the anticipated market impact of DWP-450's introduction to the U.S. market.

Complainants may also seek additional discovery of third parties, including through subpoenas or by seeking Letters of Request pursuant to The Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters relating to at least the subjects listed in Sections I and II of this Joint Discovery Statement.

## B.    Respondents

### 1.    Information and Evidence that Respondents Will Seek From Complainants

Respondents will seek information and evidence from Complainants related to at least the subjects listed in Sections I and II of this Joint Discovery Statement, as well as information on and identification of persons knowledgeable about the subjects referenced in Sections I and II. Respondents have served first sets of interrogatories and requests for production on Respondents, which seek information commensurate with the categories of information and evidence set forth above in Section II.  Respondents anticipate that they will seek additional discovery from Complainants as allowed by the Commission Rules and the Judge's Ground Rules, including fact and/or expert depositions, requests for admissions, and additional interrogatories, requests for production, and requests for inspection.

### 2.    Information and Evidence that Respondents Will Seek From Third Parties

Respondents have applied for, and Judge Shaw has issued, third party subpoenas for documents and deposition testimony to Byung Kook Lee, Dr. J. Christopher Marmo, Dr. Eric A. Johnson, and the University of Wisconsin 30(b)(6).  Respondents served a subpoena *ad testificandum* on Byung Kook Lee to preserve the ability to depose Byung Kook Lee on the same topics as Complainants.  Respondents served a subpoena *decus tecum* and *ad testificandum* upon Dr, J. Christopher Marmo, who was a former executive of both Allergan and Evolus.  On

14

information and belief, Dr. Marmo has information and evidence regarding the alleged domestic market and Complainants' conduct. Respondents served a subpoena *decus tecum* and *ad testificandum* upon Dr. Eric A. Johnson, who is a Professor in the Department of Bacteriology at the University of Wisconsin and has previously been employed by Complainant Allergan and Respondent Evolus. On information and belief, Dr. Johnson has information and evidence regarding the bacterium at issue, the alleged domestic market, and Complainants' conduct. Respondents seek to serve a *decus tecum* and *ad testificandum* upon the University of Wisconsin System, which, upon information and belief, has information and evidence regarding the origins and similarities of Complainants' BTX strain as well as the wide distribution of Hall-A Hyper Strains.

Respondents' may also seek additional discovery of third parties, including through subpoenas or by seeking Letters of Request pursuant to The Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters relating to at least the subjects listed in Sections I and II of this Joint Discovery Statement.

### C.    The Staff

The Staff has served written discovery requests on the private parties to elicit relevant information.  The Staff will serve additional discovery requests to the private parties, as well as any third parties, as necessary.  In particular, the Staff may request additional discovery from the private parties or third parties after the private parties identify documents, information, and other evidence on which they intend to rely in support of their respective positions.  Further, the Staff may notice for deposition and depose persons identified by the private parties as having information relevant to this proceeding, including experts that the parties intend to call for testimony at the hearing.

15

The Staff will participate as appropriate in the depositions noticed by the private parties. In appropriate circumstances, the Staff may seek and serve subpoenas in order to obtain documents or testimony from third persons.

## IV.    A PROPOSED SCHEDULE FOR THE PROMPT EXCHANGE AMONG THE PARTIES OF INFORMATION AND EVIDENCE WITHOUT THE USE OF FORMAL DISCOVERY METHODS.

### A.    Private Parties

The Private Parties believe that the information and evidence described in Sections I, II, and III above can only be obtained through formal discovery methods.  To date, the Private Parties have not created a proposed schedule for the prompt exchange of information and evidence without the use of formal discovery methods.  The Private Parties expect that the requirements of the joint proposed procedural schedule will, at a minimum, facilitate the exchange of information without cumulative or unnecessary discovery or motions practice. However, the Private Parties are amenable to using informal methods to exchange information and evidence.  At the suggestion of the Staff, the Parties have scheduled and intend to continue to hold biweekly telephone conference calls to meet and confer regarding discovery matters, in addition to ad hoc discussions as the need arises, with a view to resolving discovery disputes on an informal basis to the extent possible.

### B.    The Staff

The joint proposed schedule includes dates for the exchange of information required by, *inter alia*, Ground Rule 6, and dates relating to disclosure of priority dates, claim terms, and domestic industry products.

16

## V.    A DESCRIPTION OF INFORMATION AND EVIDENCE EACH PARTY BELIEVES CAN BE OBTAINED ONLY BY DEPOSITION, INTERROGATORY, SUBPOENA, OR REQUEST FOR ADMISSION.

### A.    Private Parties

The Private Parties believe that much of the information and evidence that they seek, as described in Sections I, II, and III, can only be obtained by deposition, interrogatory, subpoena, or request for admission.  The Private Parties have already begun engaging in such discovery methods.  Furthermore, the Private Parties believe that they may have to use subpoenas and depositions to obtain information and evidence from third parties.

### B.    The Staff

The Staff will endeavor to use, as much as possible, informal methods of obtaining information and evidence.  Nonetheless, the formal discovery process may be the best method for efficient exchange of information among the parties.  At this point, it is not known what information and evidence may be obtained only by deposition, interrogatory, subpoena, or request for admission.

## VI.    A PROPOSED PROCEDURAL SCHEDULE THAT INCLUDES DATES FOR SUBMISSION OF CLAIM CONSTRUCTION BRIEF, DISCOVERY CUTOFF, SUBMISSION OF PREHEARING STATEMENTS AND BRIEFS, DIRECT EXHIBITS, AND THE PREHEARING CONFERENCE AND HEARING.

A stipulated proposed procedural schedule is attached as Exhibit A to this submission. The parties respectfully request that the ALJ adopt the proposed dates.  As the Parties have requested a change in the proposed dates for the Hearing in light of pre-existing trial commitments of counsel, the Parties would not object to a reasonable extension of the Target Date.

17

Dated:  March 22, 2019

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP        CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:    /s/ Brian M. Buroker            By: /s/ Nowell D. Bamberger
    Jeffrey T. Thomas                    Nowell D. Bamberger
    Joshua A. Jessen                     Elsbeth Bennett
    **Gibson, Dunn & Crutcher LLP**      **Cleary Gottlieb Steen & Hamilton LLP**
    3161 Michelson Drive                 2112 Pennsylvania Avenue, N.W.
    Irvine, CA 92612-4412                Washington, D.C. 20037
    Telephone: (949) 551-3967            Telephone: (202) 974-1500
    Fax: (949) 451-4220                  Facsimile:  (202) 974-1999
    AllerganITC3359@gibsondunn.com       Team-ITC-Medytox-1145@cgsh.com

    Brian M. Buroker                     David H. Herrington
    Haley S. Morrisson                   Arminda B. Bepko
    **Gibson, Dunn & Crutcher LLP**      Charity E. Lee
    1050 Connecticut Avenue, N.W.        **Cleary Gottlieb Steen & Hamilton LLP**
    Washington, D.C. 20036-5306          One Liberty Plaza
    Telephone: (202) 955-8541            New York, NY 10006
    Fax: (202) 467-0539                  Telephone: (212) 225-2000
    AllerganITC3359@gibsondunn.com       Team-ITC-Medytox-1145@cgsh.com

                                         T. Spence Chubb
    Michael Sitzman                      **Law Office of T. Spence Chubb**
    **Gibson, Dunn & Crutcher LLP**      1025 Connecticut Avenue, N.W., Suite
    555 Mission Street, Suite 3000       1000
    San Francisco, CA 94105-0921         Washington, D.C. 20036
    Telephone: (415) 393-8221            Telephone: (703) 623-7739
    Fax: (415) 393-8306                  Facsimile: (703) 563-6055
    AllerganITC3359@gibsondunn.com       Team-ITC-Medytox-1145@cgsh.com

    *Attorneys for Allergan plc and Allergan,*    *Attorneys for Medytox Inc.*
    *Inc.*

18

FOSTER, MURPHY, ALTMAN & NICKEL, PC

By: _/s/ David F. Nickel_____
David F. Nickel
F. David Foster
Matthew N. Duescher
**Foster, Murphy, Altman & Nickel, PC**
1150 18th Street, N.W., Suite 775
Washington, D.C. 20036
Telephone: (202) 822-4100
Fax: (202) 822-4199
FM-Daewoong-1145@fostermurphy.com

*Attorneys for Daewoong Pharmaceuticals Co., Ltd.*

KOBRE & KIM LLP

By: _/s/ Daniel Zaheer_____
Michael Kim
Benjamin Sauter
Benjamin Sirota
**Kobre & Kim LLP**
800 3rd Avenue
New York, NY 10022
Telephone: (212) 488-1200
Fax: (212) 488-1220
KK-Daewoong-1145@kobrekim.com

Daniel Zaheer
Michael Ng
**Kobre & Kim LLP**
150 California St.
San Francisco, CA 94111
Telephone: (415) 582-4800
Fax: (415) 582-4811
KK-Daewoong-1145@kobrekim.com

Won Joon Lee
**Kobre & Kim LLP**
9F, Tower B, The-K Twin Towers
50, Jong-ro 1-gil, Jongno-gu
Seoul, 03142 South Korea
Telephone: +82 2-369-1212
Fax: +82 2-369-1220
KK-Daewoong-1145@kobrekim.com

Matthew Boucher
**Kobre & Kim LLP**
1919 M. Street, NW
Washington, D.C. 20036
Telephone: (202) 664-1950
Fax: (202) 664-1920
KK-Daewoong-1145@kobrekim.com

*Attorneys for Daewoong Pharmaceuticals Co., Ltd.*

19

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

OFFICE OF UNFAIR IMPORT INVESTIGATIONS


By: */s/ Nicholas Groombridge*
    Nicholas Groombridge
    Josephine Young
    Dexin Deng
    **Paul, Weiss, Rifkind, Wharton & Garrison LLP**
    1285 Avenue of the Americas
    New York, NY 10019
    Telephone: (212) 373-3000
    Fax: (212) 757-3990
    grp-evolus-itc@paulweiss.com

    *Attorneys for Evolus, Inc.*

By*:   /s/ Brian Koo*
    Brian Koo
    Investigative Attorney
    **U.S. International Trade Commission**
    500 E Street, SW
    Washington, DC 20436
    Telephone: (202) 205-2580
    Email: Brian.Koo@usitc.gov

20

# EXHIBIT

# A

## Investigation No. 337-TA-1145

## <u>Proposed Procedural Schedule</u>

| Event | Proposed Date |
|---|---|
| Complainant files list of all products it will rely upon to satisfy domestic industry requirement, per GR 6f | Friday, April 5, 2019 |
| File joint statement regarding identification of accused products, per GR 6f | Friday, April 5, 2019 |
| Complainant files list of proposed representative products at issue based on Complainant's infringement contentions, per GR 6f | Friday, April 12, 2019 |
| Respondents and Staff file responses to Complainant's proposed representative accused products assuming Complainant's infringement contentions, per GR 6f | Tuesday, April 16, 2019 |
| File final joint stipulation regarding representative accused products, per GR 6f | Friday, April 19, 2019 |
| File tentative list of witnesses a party will call to testify at the hearing, with an identification of each witness' relationship to the party | Friday, May 3, 2019 |
| File identification of expert witnesses, including their expertise and curriculum vitae, per GR 4a | Friday, May 10, 2019 |
| Memorial Day | Monday, May 27, 2018 |
| First settlement conference deadline | Tuesday, May 28, 2019 |
| Exchange contention interrogatory responses regarding issues as to which the party bears the burden of proof | Friday, May 31, 2019 |
| File first settlement conference report | Monday, June 3, 2019 |
| Exchange contention interrogatory responses on issues for which the party does not bear the burden of proof | Friday, June 14, 2019 |
| Fact discovery cutoff and completion | Wednesday, July 3, 2019 |
| Independence Day | Thursday, July 4, 2019 |
| Deadline for motions to compel fact discovery | Thursday, July 11, 2019 |
| Deadline for joint technology stipulation, per GR 6g | Friday, July 19, 2019 |

1

| Event | Proposed Date |
|---|---|
| File initial expert reports | Tuesday, July 23, 2019 |
| Second settlement conference deadline | Wednesday, August 7, 2019 |
| File rebuttal expert reports | Friday, August 9, 2019 |
| File second settlement conference report | Monday, August 12, 2019 |
| Parties to submit (to ALJ) PDF versions of initial and rebuttal expert reports on CD, DVD, or flash drive, per GR 4b | Tuesday, August 13, 2019 |
| Expert discovery cutoff and completion | Friday, August 23, 3019 |
| Exchange of exhibit lists among the parties | Wednesday, August 28, 2019 |
| Labor Day | Monday, September 2, 2019 |
| Deadline for filing summary determination motions | Thursday, September 5, 2019 |
| Submit and serve direct exhibits (including witness statements), with physical and demonstrative exhibits available – private parties | Monday, September 9, 2019 |
| Responses to summary determination motions | Monday, September 16, 2018 |
| Submit and serve direct exhibits (including witness statements), with physical and demonstrative exhibits available – Staff | Tuesday, September 17, 2019 |
| Submit and serve rebuttal exhibits (including witness statements), with rebuttal physical and demonstrative exhibits available – all parties | Monday, September 23, 2019 |
| File requests for receipt of evidence without a witness | Thursday, September 26, 2019 |
| Submit proposed exhibit lists and exhibits on a single drive, including witness statements in binders and on a single drive, per GR 8a, 9e | Monday, September 30, 2019 |
| File pre-trial statements and briefs – private parties | Monday, October 7, 2019 |
| Deadline for filing motions *in limine* | Thursday, October 10, 2019 |
| File high priority objections statement, per GR 9f | Thursday, October 10, 2019 |
| Columbus Day | Monday, October 14, 2019 |
| File pre-trial statement and brief – Staff | Monday, October 21, 2019 |
| File response to high priority objection statements and motions *in limine* – private parties | Tuesday, October 22, 2019 |

2

| Event | Proposed Date |
|---|---|
| File response to high priority objection statements and motions *in limine* – Staff | Friday, October 25, 2019 |
| Pre-hearing conference | Monday, November 4, 2019 |
| Hearing | Monday, November 4–6, 2019 |
| Veterans' Day (observed) | Monday, November 11, 2019 |
| File initial post-hearing briefs, final exhibit lists (GR 9h), set of final exhibits (GR 9g), and joint outline of the issues to be decided in the final Initial Determination (GR 11a) | Wednesday, November 20, 2019 |
| File reply post-hearing briefs | Wednesday, November 27, 2019 |
| Thanksgiving | Thursday, November 28, 2019 |
| Deadline to submit binder set of final exhibit lists and exhibits to the Office of General Counsel, per GR 9i | Friday, December 6, 2019 |
| Christmas | Wednesday, December 25, 2019 |
| New Year's Day | Wednesday, January 1, 2020 |
| Martin Luther King, Jr.'s Birthday (observed) | Monday, January 20, 2020 |
| Final Initial Determination | Wednesday, January 29, 2020 |
| Washington's Birthday (observed) | Monday, February 17, 2020 |
| Memorial Day | Monday, May 25, 2020 |
| Target date | Friday, May 29, 2020 |

3

IN THE MATTER OF
CERTAIN BOTULINUM TOXIN PRODUCTS, PROCESSES FOR
MANUFACTURING OR RELATING TO SAME AND CERTAIN PRODUCTS        INV. NO. 337-TA-1145
CONTAINING SAME

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 22, 2019, the **JOINT DISCOVERY STATEMENT** was served upon the parties in the manner indicated below:

### For Complainant Medytox Inc.

Nowell D. Bamberger, Esq.                          Via Electronic Mail
CLEARY GOTTLIEB STEEN & HAMILTON LLP                Team-ITC-Medytox-1145@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037

T. Spence Chubb, Esq.                              tschubb@tspencechubb.com
LAW OFFICE OF T. SPENCE CHUBB
1025 Connecticut Avenue, SW, Suite 1000
Washington, DC 20036

### For Complainants Allergan plc and Allergan, Inc.

Brian Buroker, Esq.                                Via Electronic Mail
GIBSON, DUNN & CRUTCHER LLP                         AllerganITC3359@gibsondunn.com
1050 Connecticut Avenue, NW
Washington, DC 20036

### Respondent Daewoong Pharmaceuticals Co., Ltd.

David F. Nickel, Esq.                              Via Electronic Mail
FOSTER, MURPHY, ALTMAN & NICKEL, PC                 FM-Daewoong-1145@fostermurphy.com
1150 Eighteenth Street, NW, Suite 775
Washington, DC 20036

Michael Kim                                        KK-Daewoong-1145@kobrekim.com
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022

### Respondent Evolus, Inc.

Nicholas Groombridge                               Via Electronic Mail
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP        grp-evolus-itc@paulweiss.com
1285 Avenue of the Americas
New York, NY 10019


                                    /s/ Brian Koo
                                    Brian Koo, Investigative Attorney
                                    OFFICE OF UNFAIR IMPORT INVESTIGATIONS
                                    U.S. International Trade Commission
                                    500 E Street, SW, Suite 401
                                    Washington, DC 20436
                                    (202) 205-2580


337-TA-1145 Certificate of Service