# EXHIBIT V

# UNITED STATES
# INTERNATIONAL TRADE COMMISSION

| | |
|---|---|
| In the Matter of: | ) Investigation No: |
| CERTAIN BOTULINUM TOXIN PRODUCTS, PROCESSES | ) 337-TA-1145 |
| FOR MANUFACTURING OR RELATING TO SAME AND | ) |
| CERTAIN PRODUCTS CONTAINING SAME | ) |

## OPEN SESSIONS

Pages: 1 – 256 (with excerpts)
Place: Washington, D.C.
Date: Tuesday, February 4, 2020



ACE·FEDERAL

**Ace-Federal Reporters, Inc.**
*Stenotype Reporters*
555 12th Street, NW
Suite 630-A
Washington, DC 20004
202-347-3700
Nationwide Coverage
www.acefederal.com

1

UNITED STATES OF AMERICA

BEFORE THE

INTERNATIONAL TRADE COMMISSION

- - - - - - - - - - - - - - - - - X

IN THE MATTER OF:                    :    Investigation Number

CERTAIN BOTULINUM TOXIN PRODUCTS, :    337-TA-1145

PROCESSES FOR MANUFACTURING OR       :

RELATING TO SAME AND CERTAIN         :

PRODUCTS CONTAINING SAME             :

- - - - - - - - - - - - - - - - - X


HEARING


Tuesday, February 4, 2020

Courtroom C

U.S. International Trade

 Commission

500 E Street, SW

Washington, DC


The Hearing commenced, pursuant to notice of the Judge, at 10:41 a.m., before the Honorable David Shaw, Administrative Law Judge for the United States International Trade Commission.

APPEARANCES:

NOWELL D. BAMBERGER, ESQ.

Cleary, Gottlieb, Steen & Hamilton LLP

2112 Pennsylvania Avenue, NW

Washington, DC 20037

202.974.1500

Counsel for Complainant Medytox Inc.

DAVID H. HERRINGTON, ESQ.

JOON H. KIM, ESQ.

Cleary, Gottlieb, Steen & Hamilton LLP

One Liberty Plaza

New York, New York 10006

212.225.2000

Counsel for Complainant Medytox Inc.

T. SPENCE CHUBB, ESQ.

Law Office of T. Spence Chubb

1025 Connecticut Avenue, NW, Suite 1000

Washington, DC 20036

703.623.7739

Counsel for Complainant Medytox Inc.

- continued -

APPEARANCES (CONTINUED):

JEFFREY T. THOMAS, ESQ.

JOSHUA A. JESSEN, ESQ.

Gibson, Dunn & Crutcher LLP

3161 Michelson Drive

Irvine, California 92612-4412

949.551.3967

Counsel for Complainant Allergan plc and Allergan, Inc.

JENNIFER RHO, ESQ.

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue

Los Angeles, California 90071-3197

213.229.7103

Counsel for Complainant Allergan plc and Allergan, Inc.

MICHAEL A. SITZMAN, ESQ.

DLA Piper LLP

555 Mission Street, Suite 2400

San Francisco, California 94105-0921

415.615.6175

Counsel for Complainant Allergan plc and Allergan, Inc.

- continued -

4

APPEARANCES (CONTINUED):

MATTHEW I. MENCHEL, ESQ.

Kobre & Kim LLP

201 South Biscayne Boulevard, Suite 1900

Miami, Florida 33131

305.967.6108

Counsel for Respondent Daewoong Pharmaceuticals Co., Ltd.

DANIEL A. ZAHEER, ESQ.

Kobre & Kim LLP

150 California Street, 19th Floor

San Francisco, California 94111

415.582.4751

Counsel for Respondent Daewoong Pharmaceuticals Co., Ltd.

- continued -

APPEARANCES (CONTINUED):

BENJAMIN SIROTA, ESQ.

BENJAMIN SAUTER, ESQ.

GEORGE STAMATOPOULOS, ESQ.

Kobre & Kim LLP

800 Third Avenue

New York, New York 10022

212.488.1200

Counsel for Respondent Daewoong Pharmaceuticals Co., Ltd.

DAVID F. NICKEL, ESQ.

MATTHEW N. DUESCHER, ESQ.

Foster, Murphy, Altman & Nickel, PC

1150 18th Street, NW, Suite 775

Washington, DC 20036

202.822.4100

Counsel for Respondent Daewoong Pharmaceuticals Co., Ltd.

- continued -

6

APPEARANCES (CONTINUED):


NICHOLAS GROOMBRIDGE, ESQ.

JOSEPHINE YOUNG, ESQ.

ARIANE ROCKOFF-KIRK, ESQ.

Paul, Weiss, Rifkind, Wharton & Garrison LLP

1285 Avenue of the Americas

New York, New York 10019-6064

212.373.3000

Counsel for Respondent Evolus, Inc.


BRIAN KOO, ESQ.

JEFFREY HSU, ESQ.

Office of Unfair Import Investigations

U.S. International Trade Commission

500 E Street, SW, Suite 401

Washington, DC 20436

202.205.2580

Counsel for ITC Staff

P R O C E E D I N G S

JUDGE SHAW:  This is a hearing in the matter of Certain Botulinum Toxin Products, Processes for Manufacturing or Relating to Same and Certain Products Containing Same, Investigation 337-TA-1145.

Let's begin with appearances for the parties, starting with Complainants.

MR. HERRINGTON:  Good morning, your Honor. David Herrington of Cleary Gottlieb for Complainants Medytox.  And again with me here are my partners Nowell Bamberger, Joon Kim and a wonderful supporting team, as well as representatives from our client, Dr. Jung, the CEO and founder of Medytox, he will be a witness before your Honor.

JUDGE SHAW:  Thank you.

MR. THOMAS:  Good morning, your Honor.  Jeff Thomas on behalf of Allergan from Gibson, Dunn & Crutcher. With me from Gibson, Dunn are Josh Justin and Jenny Rho. Also with me is Mr. Mike Sitzman from the DLA Piper firm. And from Allergan we have Brian Anderson and Shenade Walker.  And then of course the rest of my team.

Thank you.

JUDGE SHAW:  Thank you.

From Respondents?

MR. ZAHEER:  Good morning, your Honor.  Daniel

Zaheer from Kobre & Kim for Respondent Daewoong Pharmaceuticals.  With me from Kobre & Kim again are Matt Mitchell, Ben Sauter, Ben Sirota, also a number of additional lawyers.  With us from Foster Murphy is David Nickel.  And here from Daewoong is Mr. Yoon Seok Lee.

JUDGE SHAW:  Thank you.

MR. GROOMBRIDGE:  Good morning, your Honor. Nicholas Groombridge from Paul Weiss for Respondent Evolus, joined by my colleagues Josephine Young and Ariane Rockoff-Kirk.  And also with us is Mr. Jeff Plumer, the general counsel of Evolus.

JUDGE SHAW:  Thank you.

And for the Staff?

MR. KOO:  Good morning, your Honor.  Brian Koo with the Office of Unfair Import Investigations.  And with me today is Jeffrey Hsu.

JUDGE SHAW:  Thank you.

Good morning.  Welcome to you all.

I think the parties had decided they wanted to make some opening presentations; is that correct?  Do they still want to do that?

MR. HERRINGTON:  Yes, your Honor.

MR. ZAHEER:  Yes, your Honor.

JUDGE SHAW:  Does the Staff also have an opening statement?

9

MR. KOO:  Yes, your Honor.

JUDGE SHAW:  Okay.  Well, then let's just do that right away.  We'll begin with opening statements of the parties.

We are on the public record.  If and when we need to go on the confidential record, let us know and we'll clear the courtroom and deal with the sign and so forth.

MR. HERRINGTON:  Your Honor, I think the entire opening will go through CBI, really of all parties, so I do think we'll need to ask the parties themselves to exit the courtroom and leaving only those counsel who are able to hear CBI of all parties.

JUDGE SHAW:  And would there be some corporate people of yours or you're afraid that during, for example, either your opening or the other parties' opening, you'll be discussing -- it won't be restricted to your own clients' CBI, so it's probably better to have corporate people from both sides leave for the arguments?

MR. HERRINGTON:  I think that's right, your Honor.

JUDGE SHAW:  All right.  So we will go on the confidential record.  I will have to rely on counsel to help me look over the courtroom and make sure that the right people are here at the right time.

(Confidential session follows.)

OPEN SESSION CONTINUED

JUDGE SHAW:  Welcome back from lunch, everyone.

We're on the public record, and I like to be on the public record at least when witnesses are called, even if we very quickly go onto the confidential record.

When we left, the next order of business was, I believe, for Complainants to call their first witness.  But before we do that, any matters that came up recently that I need to address before we begin with the witnesses?  I'm not aware of anything, I just -- all right, that's fine.

Then we can just begin with Complainants' case.

MR. HERRINGTON:  Your Honor, Complainants call as their first witness Dr. Paul Keim.

JUDGE SHAW:  Dr. Keim, let me take this opportunity to swear you in.

Whereupon,

PAUL KEIM

was called as a witness and, having first been duly sworn, was examined and testified as follows:

JUDGE SHAW:  Thank you.

MR. HERRINGTON:  Your Honor, just a moment as we pass out the exhibit binders.

JUDGE SHAW:  Very well.  Just as a general matter, as the hearing goes on, there may be many binders or large binders.  You can always approach from the side of

the bench for ease.  Thank you.  It's also because I'm short so it helps.

(Laughter.)

DIRECT EXAMINATION

BY MR. HERRINGTON:

Q    Good afternoon, Dr. Keim.

A    Good afternoon.

Q    Would you please introduce yourself to Judge Shaw and briefly summarize your background.

A    Your Honor, I'm a college professor and I'm the director of the Institute of Genomics and Microbiology.  My institute's genome sequences over 10,000 genomes a year. We've been under contract with the U.S. government, the FBI, Homeland Security, Department of Energy and the intelligence community for about 20 years, developing methods to track down dangerous pathogens, where they came from and who has them and how to identify them.

Q    Dr. Keim, would you please pick up the binder in front of you with your witness statement and turn to the last page where your signature is.

Dr. Keim's witness statement is Exhibit CX-0015C.

A    Yes.

Q    Is that your signature?

A    It is.

Q      Does this witness statement include a description of your background and expertise?

A      It does.

Q      Does it contain questions from counsel followed by your answers to those questions?

A      That's correct.

Q      Can you turn now to CX-2479C in your binder and tell me if you recognize what that is.

A      This is my CV, my curriculum vitae.

Q      And do the remaining 73 pages of your CV cover your professional experience and accomplishments?

A      It does.

MR. HERRINGTON:  Your Honor, questions 1 through 20 of Dr. Keim's witness statement contain descriptions of his qualifications.  His CV has been marked as Exhibit CX-2479.  And on the basis of his answers to those questions and the information in his CV, we are proposing Dr. Keim as an expert in the field of phylogenetic analysis and forensically tracing the origin of bacterial strains.

JUDGE SHAW:  Any objection?

MR. MENCHEL:  No objection.

JUDGE SHAW:  Very well.  The witness is so received.

MR. HERRINGTON:  Thank you, your Honor.

MR. MENCHEL:  May I?

JUDGE SHAW:  Absolutely.

CROSS-EXAMINATION

BY MR. MENCHEL:

Q    Good afternoon, Dr. Keim.

A    Good afternoon.

Q    We've never met.  My name is Matt Menchel, and I represent Daewoong in this case.

A    Good to meet you.

Q    Good to meet you as well.

Am I right that you were hired in this case by both Medytox and Allergan?

A    I was hired by Cleary Gottlieb law firm and who they represent is really a question for somebody else.  But I'm working for Cleary.

Q    You don't recall, sir, putting in your expert report that you were, in fact, hired by both Medytox and Allergan?

A    I guess I don't.

Q    Okay.  Will you take my representation for it so --

A    I will.

Q    And one other rule real quick, let's just not talk over each other.  But you will take my representation that that's in your report?

A    I will.

120

Q    Okay.  When was it that you were first hired, sir, by them?

A    It was in the spring of 2019.  Without referring to my business records, I couldn't give you the exact date. Maybe as early as January of 2019.

Q    Sir, do you recall that you submitted a declaration in support of Medytox's supplement to their FDA citizens petition in January 2018?

A    I do.  Sorry, I was not working for Cleary at that time.

Q    Okay.  So another law firm had hired you on behalf of Medytox?

A    That's correct, Foley Hoag.

Q    And you were hired to do an analysis in this case and render a scientific opinion about the relationship between Medytox's strain and Daewoong's strain.  Is that fair?

A    By Cleary, yes.

Q    Okay.  And --

A    Just to differentiate the two cases.

Q    I'm talking about here.

A    Yeah, okay.

Q    Yeah.  And do you consider your analysis to be thorough?

A    Yes, I do.

Q    Complete?

A    Given the questions that I was asked to address, it was very comprehensive.

Q    What were the questions you were asked to address?

A    I was asked to address whether this -- whether Daewoong's strain could have come from soil, and I was asked whether or not the Daewoong strain could have been -- was, in fact, derived from the Hall A-hyper strain.

And I was asked to -- whether or not that strain was -- the Daewoong strain was derived from the Medytox cell banks.

Q    And you came to a conclusion after a thorough and complete analysis, as far as you're concerned?

A    Yes.

Q    And I believe that you, in fact, repeatedly stated in your witness statement that you have concluded based on your analysis that the Daewoong strain came from or was derived from the Medytox strain; correct?

A    That's correct.

(Confidential session follows.)

254

OPEN SESSION CONTINUED

JUDGE SHAW:  Counsel can give their usual instructions to the witnesses who are held overnight about having dinner with anyone, but not talking about the case and so forth.

So I think with that, we'll just break for the evening and we'll see everyone tomorrow morning.

Thank you very much.

(Whereupon, at 6:09 p.m., the hearing was adjourned, to be reconvened at 10:00 a.m., on Wednesday, February 5, 2020.)

255

C O N T E N T S

|  | | | | VOIR |
|---|---|---|---|---|
| WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS | DIRE |

PAUL KEIM

 by Mr. Herrington    117

 by Mr. Menchel                    119

 by Mr. Koo                    201

CONFIDENTIAL SESSIONS: Pages 11-115, 122-253

E X H I B I T S

| EXHIBITS: | IDENTIFIED | RECEIVED |
|---|---|---|

(NONE)

**Ace-Federal Reporters, Inc.**
**202-347-3700**

CERTIFICATE OF REPORTER

TITLE: In The Matter Of: Certain Botulinum Toxin Products,
                         Processes for Manufacturing or
                         Relating to Same and Certain
                         Products Containing Same

NO:   337-TA-1145
HEARING DATE:  02-04-20
LOCATION:  Washington, DC
NATURE OF HEARING:  Hearing

    I hereby certify that the foregoing/attached
    transcript is a true, correct and complete record
    of the above-referenced proceeding(s) of the U.S.
    International Trade Commission.

DATE:     02-04-20

SIGNED:   _____
          Signature of the Contractor or the
          Authorized Contractor's Representative

    I hereby certify that I am not the Court Reporter
    and that I have proofread the above-referenced
    transcript of the proceedings of the U.S.
    International Trade Commission, against the
    aforementioned Court Reporter's notes and
    recordings, for accuracy in transcription in the
    spelling, hyphenation, punctuation and speaker
    identification and did not make any changes
    of a substantive nature.  The
    foregoing/attached transcript is a true,
    correct and complete transcription of the
    proceedings.

SIGNED:   _____
          Signature of Proofreader

    I hereby certify that I reported the
    above-referenced proceedings of the U.S.
    International Trade Commission and caused
    to be prepared from my tapes and notes of
    the proceedings a true, correct and
    complete verbatim recording of the
    proceedings.

SIGNED:   _____
          Signature of Court Reporter

Ace-Federal Reporters, Inc.
202-347-3700