# EXHIBIT "H"

S-1 1 evoluss-1.htm S-1

**As filed with the Securities and Exchange Commission on January 9, 2018.**

**Registration No. 333-**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

---

## FORM S-1
### REGISTRATION STATEMENT
### UNDER
### THE SECURITIES ACT OF 1933

---

# Evolus, Inc.
**(Exact name of registrant as specified in its charter)**

---

| **Delaware** | **2834** | **46-1385614** |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Primary Standard Industrial Classification Code Number) | (I.R.S. Employer Identification Number) |

---

**17901 Von Karman Avenue, Suite 150**
**Irvine, California 92614**
**(949) 284-4555**
(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices)

---

**Murthy Simhambhatla, Ph.D.**
**Chief Executive Officer**
**Evolus, Inc.**
**17901 Von Karman Avenue, Suite 150**
**Irvine, California 92614**
**(949) 284-4555**
(Name, address, including zip code, and telephone number, including area code, of agent for service)

---

*Copies to:*

| Michael A. Hedge | Jeffrey J. Plumer | Michael J. Zeidel |
|---|---|---|
| Alexa M. Ekman | Vice President, Legal | Skadden, Arps, Slate, Meagher & Flom LLP |
| K&L Gates LLP | Evolus, Inc. | 4 Times Square |
| 1 Park Plaza, Twelfth Floor | 17901 Von Karman Avenue, Suite 150 | New York, New York 10036 |
| Irvine, California 92614 | Irvine, California 92614 | (212) 735-3000 |
| (949) 253-0900 | (949) 284-4555 | |

---

**Approximate date of commencement of proposed sale to the public:**
As soon as practicable after the effective date of this Registration Statement.

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, check the following box. ☐

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(d) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company" and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| Large accelerated filer | ☐ | | Accelerated filer | ☐ |
|---|---|---|---|---|
| Non-accelerated filer | ☒ (Do not check if a smaller reporting company) | | Smaller reporting company | ☐ |
| | | | Emerging Growth Company | ☒ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided to Section 7(a)(2)(B) of the Securities Act. ☒

### CALCULATION OF REGISTRATION FEE

| Title of Each Class of Securities to be Registered | Proposed Maximum Aggregate Offering Price(1) | Amount of Registration Fee(2) |
|---|---|---|
| Common Stock, $0.00001 par value per share | $75,000,000 | $9,337.50 |

(1) Estimated solely for the purpose of calculating the amount of the registration fee in accordance with Rule 457(o) under the Securities Act of 1933, as amended. Includes the offering price of shares that the underwriters have the option to purchase to cover over-allotments, if any.

(2) Calculated pursuant to Rule 457(o) based on an estimate of the proposed maximum aggregate offering price.

**The Registrant hereby amends this Registration Statement on such date or dates as may be necessary to delay its effective date until the Registrant shall file a further amendment that specifically states that this registration statement shall thereafter become effective in accordance with Section 8(a) of the Securities Act of 1933, as amended, or until the Registration Statement shall become effective on such date as the Securities and Exchange Commission, acting pursuant to said Section 8(a), may determine.**

**Evolus, Inc.**

**Notes to Financial Statements**
**(Information as of September 30, 2017 and thereafter and for the nine months ended September 30, 2016 and 2017 is unaudited)**

In addition, as long as ALPHAEON continues to consolidate Evolus' financial statements, Evolus will comply with ALPHAEON's policies and procedures and internal controls. As long as Evolus is consolidated into ALPHAEON's financial statements under GAAP, Evolus will continue to obtain these services from ALPHAEON.

As of December 31, 2015 and 2016 and September 30, 2017, Evolus owed ALPHAEON $46.2 million, $59.8 million and $72.0 million, respectively.

The following table summarizes the amounts included in Evolus' general and administrative expenses that were generated by transactions with ALPHAEON for the following periods (in thousands):

| | Year Ended December 31, | | Nine Months Ended September 30, | |
| | 2015 | 2016 | 2016 | 2017 |
|---|---|---|---|---|
| Compensation & Benefits | $ 2,009 | $ 2,052 | $ 1,696 | $ 806 |
| Third party service fees | 5,492 | 3,703 | 3,665 | 538 |
| Stock-based compensation | 1,219 | 740 | 443 | 447 |
| Office related expenses | 852 | 510 | 300 | 958 |
| Other | 727 | 354 | 231 | 307 |
| | $ 10,299 | $ 7,359 | $ 6,335 | $ 3,056 |

### *Teoxane Agreement*

In April 2014, ALPHAEON and Evolus entered into an agreement with Teoxane, SA ("Teoxane"), for the rights of its license, distribution and development of DWP-450 in the European Union. During the year ended December 31, 2015, $3.5 million of Evolus research and development expenses was reimbursed by Teoxane. There have been no further reimbursements of research and development expenses through September 30, 2017. Teoxane's Chief Executive Officer was a member of ALPHAEON's board of directors from January 2014 through July 2016.

### *Evolus Contributors*

Certain of the Evolus contributors, from whom SCH purchased its equity interests include individuals employed by the Company in operational roles, including J. Christopher Marmo, Ph.D., the Company's Chief Operating Officer.

### *Note Obligation*

In 2016, ALPHAEON entered into two separate debt transactions: (i) a convertible note with one of its shareholders, also a related party (the "Bridge Note") with a principal amount of $2.5 million and (ii) a Secured Convertible Note Purchase Agreement (the "Purchase Agreement") pursuant to which ALPHAEON could issue up to an aggregate of $55.0 million ("Note Facility" and together with the Bridge Note, the "Notes"). As of December 31, 2016, the principal drawn on the Notes was $24.0 million. The Notes have substantially similar terms and accrue simple interest at a rate of ten percent (10%) per annum, subject to adjustment pursuant to terms of the Notes. The Notes may be paid at a redemption price equal to 2.5 times the face amount of the Note less any prepayment of principal and any principal amount of the Notes that may convert into shares of ALPHAEON on (i) maturity in December 2018, (ii) a required prepayment event, or (iii) prepayment at any time at ALPHAEON's election. Upon the occurrence of certain corporate events at ALPHAEON, at the election of the holder, the Notes will convert into a variable number of shares of ALPHAEON with an aggregate fair value equaling the principal value of the Notes or such Notes will continue to maturity as unsecured promissory notes with a reduced interest rate.

ALPHAEON's obligations under the Notes are secured by a first priority lien and security interest in substantially all of ALPHAEON's assets, including all of the shares of the Company's capital stock held by ALPHAEON, which

F-16

**Evolus, Inc.**

**Notes to Financial Statements**
**(Information as of September 30, 2017 and thereafter and for the nine months ended September 30, 2016 and 2017 is unaudited)**

as of December 31, 2016 represented all of our outstanding capital stock, as collateral for the holders of the Notes.

In April 2017, ALPHAEON amended and restated the Purchase Agreement (the "Amended and Restated Secured Note Purchase Agreement") with the Note holders to amend and restate the terms of the Purchase Agreement and the outstanding Notes and form of Notes to be issued. In addition, the Purchase Agreement was amended and restated to, among other things, set forth the terms for the issuance of up to an additional $30.0 million in principal amount of Notes. Concurrent with the Amended and Restated Secured Note Purchase Agreement, the Company also executed two substantially similar guaranty and security agreements (the "Guaranty Agreements"), with the holders of the Notes. Pursuant to the Guaranty Agreements, the Company absolutely, unconditionally and irrevocably guaranteed, as primary obligor and not merely as surety, the full and punctual payment when due, whether at stated maturity or earlier, by reason of acceleration all the obligations of the Notes. In addition, pursuant to the Guaranty Agreements, the Company agreed to a first priority lien and security interest in and to all its right, title and interest in the assets of the Company. As a result of executing the Guaranty Agreements, there is no requirement that the holders of the Notes first seek payment from ALPHAEON. Instead, they may demand payment from the Company, from ALPHAEON or from both simultaneously.

The Amended and Restated Secured Note Purchase Agreement and Guaranty Agreements stipulate that any payment by the Company under their terms shall result in a dollar-for-dollar offset and reduction in the amount of intercompany loans owed by the Company to ALPHAEON. The Guaranty Agreements will terminate upon the earlier of (i) the date on which all secured obligations under the Guaranty Agreements have been paid and performed in full and (ii) the date on which the entire outstanding principal amount of the Notes has been either converted into equity or unsecured notes pursuant to the terms of the Notes.

Concurrent with the execution of the Guaranty Agreements with the holders of the Notes in April 2017, the Company jointly and severally agreed to pay the redemption amount of 2.5 times the principal amount of the Notes upon maturity if not paid by ALPHAEON. As a co-obligor to these Notes, the Company applied the accounting guidance provided in ASC 405-40, *Obligations Resulting from Joint and Several Liability Arrangements*. This guidance requires companies to measure obligations resulting from joint and several liability arrangements as the sum of the amount that the entity has (a) agreed to pay on the basis of its arrangement with its co-obligors and (b) any additional amount that the entity expects to pay on behalf of its co-obligors.

The Company initially recorded a liability and corresponding deemed distribution to its parent as a reduction to additional paid-in-capital in equity as of April 2017 to reflect the joint and several liability. These amounts were subsequently adjusted to reflect changes in the Note obligation. As the Company and ALPHAEON had not agreed to what portion of this joint and several liability each would pay, the Company developed a range of amounts that it expects to pay under the Guaranty Agreement and selected the amount from within that range that it determined to be the best estimate, which equaled $134.9 million as of September 30, 2017 (2.5 times the outstanding principal amount of the Notes as of that date), representing the total principal amount due to the Note holders upon redemption of the Notes at maturity. As provided for within the Amended and Restated Secured Note Purchase Agreement and Guaranty Agreements, in conjunction with its recognition of the joint and several liability, the Company also recorded a receivable from ALPHAEON, which equals the current balance of the amounts it owes to ALPHAEON under its intercompany borrowing arrangements. No amounts have been paid under this joint and several liability by the Company in the nine months ended September 30, 2017. As of September 30, 2017, the liability recorded by the Company to the Note holders pursuant to the above joint and several liability was $134.9 million (2.5 times the outstanding principal amount of the Notes as of that date) and the related party receivable was $72.0 million, representing the amount by which related party borrowings could be reduced pursuant to the terms of the Amended and Restated Secured Convertible Note Purchase Agreement and Guaranty Agreements. The difference between the amount of the joint and several liability and the related party receivable of $62.9 million was recorded as a deemed distribution to ALPHAEON, in stockholder's deficit as a charge to additional paid-in capital in the period the transaction with the related party was made. Amounts in excess of additional paid-in capital were recorded into accumulated deficit.

F-17

Table of Contents

## SIGNATURES

Pursuant to the requirements of the Securities Act, the registrant has duly caused this registration statement to be signed on its behalf by the undersigned, thereunto duly authorized, in the City of Irvine, State of California, on the 9th day of January, 2018.

**EVOLUS, INC.**

By:  /s/ Murthy Simhambhatla, Ph.D.
_____
Murthy Simhambhatla, Ph.D.
Chief Executive Officer

## POWER OF ATTORNEY

KNOW ALL BY THESE PRESENTS, that each person whose signature appears below constitutes and appoints Murthy Simhambhatla, Ph.D. as his or her true and lawful attorney-in-fact and agent, with the full power of substitution, for him or her and in his or her name, place or stead, in any and all capacities, to sign any and all amendments to this registration statement (including post-effective amendments), and to sign any registration statement for the same offering covered by this registration statement that is to be effective upon filing pursuant to Rule 462(b) promulgated under the Securities Act, and all post-effective amendments thereto, and to file the same, with exhibits thereto and other documents in connection therewith, with the Securities and Exchange Commission, granting unto said attorney-in-fact and agent, full power and authority to do and perform each and every act and thing requisite and necessary to be done in and about the premises, as fully to all intents and purposes as he might or could do in person, hereby ratifying and confirming all that said attorney-in-fact and agent, or his substitute or substitutes, may lawfully do or cause to be done by virtue hereof.

Pursuant to the requirements of the Securities Act, this registration statement has been signed by the following persons in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /s/ Murthy Simhambhatla, Ph.D.<br>_____<br>Murthy Simhambhatla, Ph.D. | Chief Executive Officer and Member of the Board of Directors (Principal Executive Officer and Principal Financial Officer) | January 9, 2018 |
| /s/ Vikram Malik<br>_____<br>Vikram Malik | Director | January 9, 2018 |
| /s/ Simone Blank<br>_____<br>Simone Blank | Director | January 9, 2018 |
| /s/ Bosun Hau<br>_____<br>Bosun Hau | Director | January 9, 2018 |
| /s/ Kristine Romine, M.D.<br>_____<br>Kristine Romine, M.D. | Director | January 9, 2018 |
| /s/ Robert Hayman<br>_____<br>Robert Hayman | Director | January 9, 2018 |