# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: EVOLUS INC. SECURITIES LITIGATION** | Case No.: 1:20-cv-08647-PGG |

## REPLY IN SUPPORT OF AEON BIOPHARMA, INC.'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT

DATED: June 16, 2022

Respectfully Submitted,

THEODORA ORINGHER PC

By:*/s/ Todd C. Theodora*

Todd C. Theodora (admitted *pro hac vice*)
CA State Bar No. 120426
Edward E. Johnson (admitted *pro hac vice*)
CA State Bar No. 241065
Michelle L. Monroe (admitted *pro hac vice*)
CA State Bar No. 311776
THEODORA ORINGHER PC
535 Anton Boulevard, Ninth Floor
Costa Mesa, CA  92626-7109
Telephone: (714) 549-6200
Email: ttheodora@tocounsel.com
ejohnson@tocounsel.com
mmonroe@tocounsel.com

Attorneys for Defendant AEON Biopharma, Inc.

## TABLE OF CONTENTS

**Page**

I.    Introduction...................................................................................................................1

II.   The AC Does Not Plead That AEON "Made" Any False Statement. ..................................2

III.  Plaintiffs Fail To Adequately Allege Scienter. ....................................................................5

IV.   The AC Does Not Adequately Plead Control Person Liability. ..........................................8

V.    The Insider Trading Claim Must Be Dismissed. ..................................................................9

VI.   Conclusion. .......................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arkansas Teacher Ret. Sys. v. Bankrate, Inc.*,
 18 F. Supp. 3d 482 (S.D.N.Y. 2014) ........................................................................................ 8

*City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*,
 814 F. Supp. 2d 395 (S.D.N.Y. 2011) ..................................................................................... 4

*Firebird Republics Fund, Ltd. v. Moore Capital Mgmt. LLC*,
 2009 WL 955050 (S.D.N.Y. 2009) .......................................................................................... 7

*In re Alstom SA Sec. Litig.*,
 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ................................................................................... 8, 9

*In re Cannavest Corp. Sec. Litig.*,
 307 F. Supp. 3d 222 (S.D.N.Y. 2018) ..................................................................................... 9

*In re Global Crossing Ltd. Sec. Litig.*,
 2005 WL 1875445 (S.D.N.Y. Aug. 5, 2005)............................................................................ 8

*In re Global Crossing, Ltd. Sec. Litig.*,
 322 F. Supp. 2d 319 (S.D.N.Y. 2004) ..................................................................................... 4

*In re Global Crossing, Ltd. Securities Litigation*,
 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005)........................................................................ 2, 3

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
 1998 WL 283286 (S.D.N.Y. June 1, 1998) ......................................................................... 7, 10

\*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
 423 F. Supp. 2d 364 (S.D.N.Y. 2006) ..................................................................................... 7

*In re NQ Mobile, Inc. Sec. Litig.*,
 2015 WL 1501461 (S.D.N.Y. Mar. 27, 2015)......................................................................... 9

*In re Optimal U.S. Litig.*,
 2011 WL 4908745 (S.D.N.Y. Oct. 14, 2011)........................................................................... 4

*In re ShengdaTech, Inc. Sec. Litig.*,
 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014).......................................................................... 9

*In re Take-Two Interactive Securities Litigation*,
 551 F. Supp. 2d 247 (S.D.N.Y. 2008) ................................................................................... 10

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ........................................................................................ 1, 3

*Janus*, *In re Lernout & Hauspie Sec. Litig.*,
  230 F. Supp. 2d 152 (D. Mass. 2002)..................................................................... 4

*Kinsey v. Cendant*,
  2005 WL 1907678 (S.D.N.Y. Aug. 10, 2005).......................................................... 7

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC Partners, Inc.*,
  2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016) .......................................................... 5

*San Leandro Emergency Medical Group v. Philip Morris*,
  75 F.3d 801 (2d Cir.1996) ................................................................................... 6

*Steinberg v. Ericsson LM Telephone Co.*,
  2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) ........................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................................... 7

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F. Supp. 3d 1029 (N.D. Cal. 2016).................................................................. 10

## Rules

F.R.C.P. 9(b) ...................................................................................................... 10

iii

Defendant AEON Biopharma, Inc. respectfully submits this Reply in support of its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("AC") with prejudice.

## I.    Introduction

Plaintiffs have failed to plead a claim against AEON.  They have not pled any actionable misstatement for all the reasons set forth in Evolus' Motion to Dismiss and Reply, which AEON incorporates by reference.  Even if they had, they have no direct claim against AEON under Section 10(b) because none of the alleged statements were "made" by AEON under *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).  Plaintiffs do not dispute that the alleged misstatements were attributed to Evolus, not AEON, and their argument that AEON nevertheless exerted ultimate authority over the statements is based entirely on AEON owning a majority of Evolus' shares and three overlapping board members—a minority of Evolus' board.  If that were enough for liability under Section 10(b), then almost any parent company would be potentially liable for statements of its subsidiaries, despite the clear holding of *Janus* to the contrary.

Plaintiffs' Opposition also underscores the deficiencies of their scienter allegations. Plaintiffs do not contest that AEON has presented a compelling explanation for its sale of Evolus stock unrelated to the ITC proceeding, and their assertion that the Court should simply ignore that explanation is directly contrary to Supreme Court authority.  AEON's explanation is far more plausible than any inference of fraud, particularly given that the sale of stock took place at the very beginning of the class period, long before the information that supposedly should have informed AEON that Evolus would lose the ITC proceeding was produced in discovery.  It also took place shortly after an alleged corrective disclosure, not before, which even Plaintiffs agree is the opposite one would expect for a suspicious sale of stock.  Given that Plaintiffs point to nothing beyond AEON's sale of Evolus stock to establish scienter, these deficiencies are fatal.

Finally, Plaintiffs fail to point to any particularized allegation that AEON was involved in

1

any alleged misstatement or was aware of any non-public information, and for those reasons, and the others discussed below, their control person and insider trading claims also must be dismissed.

**II.      The AC Does Not Plead That AEON "Made" Any False Statement.**

A defendant can be liable under Section 10(b) only if it "makes" an allegedly false statement.  AEON did not "make" any of the statements alleged in the AC to be false.

Plaintiffs argue that AEON is liable for alleged misstatements in Evolus' 2018 10K and March 22, 2019 Shelf Registration Statement because Malik, Blank, Hau, Romine and Hayman signed those filings and "represent" AEON.[1]  But those individuals did not sign Evolus' filings as representatives of AEON—they signed as members of the Board of Directors of Evolus, along with Evolus' other Board members.  There is no authority suggesting that a company becomes vicariously liable for alleged misstatements in a *different company's* securities filings because its director signs the other company's filings *in his or her capacity as a director of the other company*. Such a holding would be absurd—it would mean that every time an outside Board member signs a securities filing, every other company with which the director is affiliated potentially incurs securities fraud liability.  That is not the law—directors are presumed to act on behalf of the companies on whose boards they serve, not on behalf of an outside employer that appointed them.

In *In re Global Crossing, Ltd. Securities Litigation*, 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005), the court rejected the same theory Plaintiffs advance here.  In that case, the plaintiffs argued that Microsoft and Softbank were directly liable for AGC's alleged federal securities-law violations because they had appointed three executives to AGC's board.  *See id*. at *2–3, *8. The court held that the appointed directors "cannot be presumed to have been acting at the direction of

---

[1] Ms. Romine and Mr. Hayman were not employees, officers or directors of AEON at the time they signed these filings, and there is no allegation they had any involvement with AEON at this time other than as stockholders.  There is no conceivable legal or factual basis upon which to impute their actions to AEON.

their outside employers in their capacities as AGC directors," and that their actions as AGC directors were attributable only to AGC. *Id*. at *4, 10. The same is true of the Evolus directors who were also affiliated with AEON.

Under *Janus Capital Group, Inc.*, 564 U.S. at 142, the touchstone in analyzing whether a defendant "made" a particular statement is attribution. *See id*. at 142 ("attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed"); *id*. ("One 'makes' a statement by stating it.") Plaintiffs do not, and cannot, argue that the alleged statements in Evolus' SEC filings were attributed to AEON. The fact that directors of AEON signed the filings does not change that.

Plaintiffs' claim that Evolus' alleged statements were "made" by AEON because AEON had ultimate authority over the statements fails as well. In *Janus*, the Court held that the statements of a mutual fund were not "made" by the fund's investment manager and administrator ("JCM") even though *all* of the officers of the Fund were also officers of JCM, and one director of the Fund was associated with JCM. *Janus Capital Group, Inc.*, 564 U.S. at 138. In rejecting the argument that JCM had ultimate authority over the Fund's statements, the Court emphasized that the two entities were separate and had observed corporate formalities, and that authority for the allegedly false statements lay with the Fund's Board. *See id.* at 146. Likewise here, it is undisputed that Evolus and AEON were at all relevant times separate entities with separate boards of directors, that they observed all corporate formalities, and that ultimate authority for any alleged misstatements in Evolus' SEC filings did not reside with AEON.

In fact, the *only* factual allegations Plaintiffs point to as supposedly showing that AEON had ultimate authority over Evolus' statements are that AEON owned 56% of Evolus' shares at the beginning of the class period (which quickly dropped below majority ownership) and that three

3

directors of Evolus—a minority of the Board—were also directors of AEON. The court in *In re Optimal U.S. Litig.,* 2011 WL 4908745, at \*5 (S.D.N.Y. Oct. 14, 2011), rejected a similar attempt to "conflat[e] shareholder control with 'ultimate authority.'" There, the plaintiffs claimed that a parent company ("OIS") "made" statements actually made by its subsidiary ("Multiadvisors") on the grounds that OIS owned 100% of the shares of Multiadvisors, had the authority to select Multiadvisors' board, and OIS's CEO was a director of Multiadvisors. *See id.* at \*4-5. Those facts are, if anything, more suggestive of control than Plaintiffs' allegations here, since AEON owned far less than 100% of Evolus and there is no allegation it could select the entire Board of Evolus. The Court nevertheless rejected the argument that OIS had "ultimate authority" of statements attributed to Multiadvisors. *See id.* The same result is required here.

The sole post-*Janus* case relied upon by Plaintiffs,[2] *City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 416–18 (S.D.N.Y. 2011), is inapposite. In *Roseville* the parent company not only owned 100% of the stock of the subsidiary to which the allegedly false statements were attributed, but had *direct* control over all corporate transactions and "control over the content of the message, the underlying subject matter of the message, and the ultimate decision of whether to communicate the message." *Id.* at 418. No such "overwhelming" indicia of control are alleged here. *In re Optimal U.S. Litig.,* 2011 WL 4908745 at 6 n.50. A holding that AEON made the statements at issue, despite them not being attributed to AEON and given the complete absence of any allegation that AEON actually participated in, authorized, or even reviewed the allegedly false statements, would risk imposing Section 10(b) liability on every

---

[2] Plaintiffs also rely on two cases which pre-date *Janus*, *In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 168 (D. Mass. 2002) and *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 333 (S.D.N.Y. 2004). These cases (in addition to bearing no factual similarity to this one) are bad law—they are based upon the principle that a defendant may "make" a statement by being involved in preparing the statement. That was rejected in *Janus*.

4

parent company for its subsidiary's statements.

### III.    <u>Plaintiffs Fail To Adequately Allege Scienter.</u>

Plaintiffs' Opposition appears to concede that Plaintiffs have not pled scienter as to AEON based upon strong circumstantial evidence of conscious misbehavior or recklessness.  (Opp. at 10.) Plaintiffs' argument that their allegations create a strong inference of scienter based on motive and opportunity is meritless.[3]

*First*, Plaintiffs argue that the scienter of the individuals who were directors of both AEON and Evolus, Malik, Blank and Hau, should be imputed to AEON because they are "management-level employees."  (Opp. at 10.)  But in order to impute scienter, Plaintiffs would first have to adequately plead scienter against one or more of those individuals, which they have not done. Plaintiffs are not asserting claims against Malik, Blank and Hau and there is not a single allegation in the AC supporting an inference of scienter on the part of any of the three.

*Second*, the timing of AEON's sale of Evolus shares was not suspicious.  Plaintiffs point out that stock sales shortly before a corrective disclosure may be suspicious (Opp. at 11), but admit that Evolus filed the shelf registration for AEON's sales shortly *after* an alleged corrective disclosure, *i.e.*, the announcement that the ITC would commence an investigation.  (*Id.*)  The first alleged corrective disclosure following AEON's sale of Evolus shares did not occur until March 2020—almost a year after the shelf registration and roughly ten months after the stock sales.  (AC ¶¶ 239-240.)  This timeline is not suspicious and does not support a strong inference of scienter. *See, e.g., N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC Partners, Inc.*, 2016 WL 5794774, at \*19 (S.D.N.Y. Sept. 30, 2016) ("stock sales occurring even a few months

---

[3] Plaintiffs have failed to plead scienter even as to any Evolus managers.  (*See* Evolus MTD at 19-28 & Reply at 2-8.)   Given that, they cannot possibly have any basis for pleading scienter as to non-management board members.

before the alleged revelation of the fraud do not raise a strong inference of scienter.")

*Third*, Plaintiffs largely ignore the critical timing point raised by AEON in its Motion: Plaintiffs' principal theory is that Defendants should have known Evolus' statements were false based on the discovery in the ITC proceeding and (especially) the DNA sequencing put forward by Medytox's experts, but AEON's stock sales were planned just weeks after the ITC investigation began, and occurred while fact discovery was ongoing, *before* expert discovery. (AC ¶ 276.) Thus those sales cannot have been prompted by AEON somehow learning something from the ITC proceeding, and do not support scienter.

Plaintiffs try to sidestep this fundamental issue by pointing to the allegation that Evolus refused to investigate Medytox's claims, based on allegations from a confidential witness. (Opp. at 11.) Plaintiffs' CW allegations are insufficient to support scienter as to Evolus (*see* Evolus MTD at 24 & Reply at 6), however, and are not relevant to AEON at all. Plaintiffs do not allege any statements from the CW related to AEON, much less that AEON had knowledge of what investigation Evolus conducted, based on the CW or anything else. (*See* Opp. at 11, speculating that AEON was "doubtlessly" aware of the alleged failure to investigate, without a citation to the AC.) Speculation and assumptions about what AEON might have known do not meet the PSLRA pleading standard. *See, e.g.*, *Steinberg v. Ericsson LM Telephone Co.*, 2008 WL 5170640, at *12 (S.D.N.Y. Dec. 10, 2008) ("Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information."); *San Leandro Emergency Medical Group v. Philip Morris*, 75 F.3d 801, 812 (2d Cir.1996)) ("Plaintiffs' unsupported general claim of the existence of confidential company sales reports that revealed the larger decline in sales is insufficient to survive a motion to dismiss.")

Nor can Plaintiffs rely on the bare allegation that directors of Evolus were also directors or

6

shareholders of AEON.  The PSLRA requires particularized allegations—plaintiffs cannot plead scienter by simply imputing knowledge from one company to another through overlapping board members or even officers.  *See, e.g., In re Health Mgmt. Sys., Inc. Sec. Litig.*, 1998 WL 283286, at \*6 (S.D.N.Y. June 1, 1998); *Firebird Republics Fund, Ltd. v. Moore Capital Mgmt. LLC*, 2009 WL 955050 (S.D.N.Y. 2009); *Kinsey v. Cendant*, 2005 WL 1907678, at \*5 (S.D.N.Y. Aug. 10, 2005); *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 406 (S.D.N.Y. 2006).

*Fourth*, Plaintiffs do not dispute that AEON has presented an explanation for its sale of Evolus stock that has nothing to do with the ITC investigation—it sold shares to pay off debt obligations that were due in June 2019 and had been disclosed long before the ITC investigation was initiated.  (AEON's MTD at 11.)  Plaintiffs' claim that courts "refuse to consider alternative explanations for stock sales at the motion to dismiss stage" is simply wrong.  (Opp. at 12.)  "To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court *must consider plausible, nonculpable explanations for the defendant's conduct*, as well as inferences favoring the plaintiff." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007) (emphasis added).  Plaintiffs' cases do not hold otherwise—rather, they simply find that the allegations in those cases were adequate to create a strong inference of scienter despite the alternative explanation.  For all the reasons discussed above, that is not the case here.

*Fifth*, Plaintiffs argue the gross proceeds AEON realized from the stock sale are suspicious, but AEON retained approximately 57% of its Evolus stock throughout the class period, such that it still owned almost 30% of the company by the end of the class period, which undermines any inference to be drawn from the sales.  (Opp. at 16.)  Moreover, Plaintiffs' argument that their allegation that AEON paid nothing for the stock supports scienter is simply illogical—any stockholder has the same incentive to sell for a higher price regardless of the seller's cost basis.

In short, the allegations of the AC do not come close to meeting Plaintiffs' burden to plead facts creating a strong inference of scienter as to AEON.

**IV.    The AC Does Not Adequately Plead Control Person Liability.**

Plaintiffs' Section 20(a) claim should be dismissed.

*First*, Plaintiffs have not pled a primary violation as set forth in AEON's and Evolus' moving and reply papers. Plaintiffs do not dispute that if the Section 10(b) claim is dismissed then the Section 20(a) claim must be dismissed as well.

*Second*, Plaintiffs' Opposition ignores the authority cited in AEON's Motion requiring that it plead facts showing AEON's control over Evolus' alleged misrepresentations. *See Arkansas Teacher Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482 (S.D.N.Y. 2014); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005); *In re Global Crossing Ltd. Sec. Litig.*, 2005 WL 1875445, at *3 (S.D.N.Y. Aug. 5, 2005). The AC fails to plead any facts suggesting that AEON directed or participated in any way in the alleged misstatements, or even reviewed or had knowledge of them before they were made. Plaintiffs argue that AEON exerted actual control over Evolus in causing it to file the Shelf Registration Statement, but AEON had a contractual right under a stockholders agreement to request that Evolus register its stock. (See Ex. 3 to Declaration of Sara Fuks i/s/o Plaintiffs' Opposition, at p. 9.) It had no right to, and there is no allegation it did, participate in preparing the SEC registration filing or any allegedly false statement.

*Third*, as set forth in AEON's moving papers, to the extent the Court finds AEON was a control person as to Evolus, such control ended when AEON ceased to be a majority shareholder, at which time there were only three overlapping directors, a minority of the Board.[4] Plaintiffs cite

---

[4] Plaintiffs have only pled eight alleged misrepresentations that pre-date AEON's May 20, 2019 sale of Evolus stock, most of which are obviously non-actionable generic references to Jeuveau as "proprietary." (Mot. at 17.)

out-of-circuit authority that a majority shareholder that becomes a minority shareholder during the class period may still be a control person, but this District has held that majority ownership during the class period that pre-dates the actionable misstatements is insufficient to create control person liability. *See In re Alstom SA*, 406 F. Supp. 2d 433, 493 (S.D.N.Y. 2005) ("Alcatel was a minority stockholder in [the parent company] by the time the alleged fraud began, and thus could not have been a controlling person under Section 20(a)").

*Fourth*, Plaintiffs' argument that the directors who signed the SEC filings with alleged misstatements are deemed control persons misses the point. (Opp. at 14.) The Section 20(a) claim is asserted against AEON, which did not sign Evolus' SEC filings, not against individual directors of Evolus who did.

*Finally*, Plaintiffs have not pled culpable participation, which they concede is necessary to plead a Section 20(a) claim. The AC contains no allegations of participation by AEON in the alleged misstatements—there is no allegation AEON drafted, provided input to, reviewed, or authorized the statements. Nor have Plaintiffs alleged facts sufficient to establish any culpability on the part of AEON. To plead culpable participation, "a plaintiff must plead particularized facts of the controlling person's conscious misbehavior or recklessness." *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 255 (S.D.N.Y. 2018) (internal quotation marks omitted); *see also, e.g., In re NQ Mobile, Inc. Sec. Litig.*, 2015 WL 1501461, at *3-4 (S.D.N.Y. Mar. 27, 2015); *In re ShengdaTech, Inc. Sec. Litig.*, 2014 WL 3928606, at *10 (S.D.N.Y. Aug. 12, 2014) (requiring "culpable participation at least approximating recklessness in the section 10(b) context in order to survive a motion to dismiss.") Plaintiffs failed to plead facts giving rise to a strong inference of scienter as to AEON, s*ee* Part III, *supra*, so their Section 20(a) claim must be dismissed.

## V.    The Insider Trading Claim Must Be Dismissed.

Plaintiffs do not dispute that their insider trading claim is subject to the heightened pleading

9

requirements of F.R.C.P. 9(b) and the PSLRA.  Yet their Opposition fails to point to any particularized allegation in the AC detailing what non-public information AEON supposedly had, or who at AEON received such information, or how the information was received by AEON and from whom.  These omissions are all the more glaring given that no one from AEON participated in the ITC proceeding, and in light of Plaintiffs' own allegations that discovery from the ITC was subject to a protective order and therefore not accessible to AEON (or Evolus for that matter).  The Opposition states that AEON "through its Evolus Board of Director members had access to Evolus's material non-public information" (Opp. at 20), but does not cite the AC, because no allegation in the AC supports that statement.

Plaintiffs appear to contend that any information allegedly in the possession of Evolus is automatically deemed to be in the possession of AEON simply because the companies had overlapping Board members.  That is not correct as a matter of law.  *See, e.g., In re Take-Two Interactive Securities Litigation*, 551 F. Supp. 2d 247 (S.D.N.Y. 2008); *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998).  Plaintiffs' reliance on *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1051–51 (N.D. Cal. 2016), is misplaced.  (Opp. at 20.)  There, the Court imputed knowledge from officers of Magnachip, as to whom it found the plaintiff had pleaded scienter, to another defendant of which those same individuals were employees.  That is a far cry from imputing knowledge to outside directors of Evolus—without any particularized allegation of what the directors knew or when—and then imputing the knowledge a second time to AEON.

## VI.    Conclusion.

For the foregoing reasons, and those set forth in AEON's moving papers, the Amended Complaint should be dismissed with prejudice as to AEON.

10

DATED: June 16, 2022                    Respectfully Submitted,

                                        THEODORA ORINGHER PC


                                        By:/s/ *Todd C. Theodora*
                                            Todd C. Theodora (admitted *pro hac vice*)
                                            CA State Bar No. 120426
                                            Edward E. Johnson (admitted *pro hac vice*)
                                            CA State Bar No. 241065
                                            Michelle L. Monroe (admitted *pro hac vice*)
                                            CA State Bar No. 311776
                                            THEODORA ORINGHER PC
                                            535 Anton Boulevard, Ninth Floor
                                            Costa Mesa, CA  92626-7109
                                            Telephone: (714) 549-6200

                                            Attorneys for Defendant AEON Biopharma,
                                            Inc.

11

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2022, a copy of the foregoing **REPLY IN SUPPORT OF AEON BIOPHARMA, INC.'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** was served via ECF on the following:

THE ROSEN LAW FIRM, P.A.
Sara Fuks
Laurence Rosen
Phillip Kim
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: sfuks@rosenlegal.com
lrosen@rosenlegal.com
pkim@rosenlegal.com

*Lead Counsel for Plaintiffs*


Jonathan Rosenberg
B. Andrew Bednark
O'MELVENY & MYERS LLP
Seven Times Square
New York, New York 10036
Email: jrosenberg@omm.com
abednark@omm.com

*Attorneys for Defendants Evolus, Inc.,*
*David Moatazedi, Rui Avelar, and Lauren Silvernail*


                                                    /s/ Sara Tena
                                                    Sara Tena