UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re EVOLUS, INC. SECURITIES LITIGATION | Civil Action No. 20-cv-8647-PGG |

REPLY BRIEF IN SUPPORT OF THE EVOLUS DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT

Dated:  June 16, 2022
        New York, New York

**O'MELVENY & MYERS LLP**

Jonathan Rosenberg
B. Andrew Bednark
7 Times Square
New York, NY 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061
jrosenberg@omm.com
abednark@omm.com

*Attorneys for Defendants Evolus, Inc.,
David Moatazedi, Rui Avelar, and Lauren
Silvernail*

## **Table of Contents**

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.    THE AC FAILS TO PLEAD PARTICULARIZED FACTS
SUPPORTING A STRONG SCIENTER INFERENCE ...................................... 2

    A.    The AC Does Not Adequately Plead Motive and Opportunity ................. 3

    B.    The AC Fails to Allege Conscious Misbehavior or Recklessness .............. 5

II.    THE AC FAILS TO PLEAD A MATERIALLY FALSE OR
MISLEADING STATEMENT ............................................................................ 8

    A.    All the AC's Alleged Misstatements Are Nonactionable Puffery .............. 9

    B.    Evolus's Litigation Optimism Is Protected by the PSLRA's Safe
Harbor for Forward-Looking Statements and the Bespeaks Caution
Doctrine .................................................................................................. 13

III.    THE AC DOES NOT ADEQUATELY ALLEGE THAT THE EVOLUS
DEFENDANTS' OPINION STATEMENTS WERE FALSE OR
MISLEADING ................................................................................................. 15

CONCLUSION ................................................................................................................. 15

# Table of Authorities

**Page(s)**

**Cases**

*Barilli v. Sky Solar Holdings, Ltd.*,
  2020 WL 2848179 (S.D.N.Y. 2020)...................................................................... 15

*Barilli v. Sky Solar Holdings, Ltd.*,
  389 F. Supp. 3d 232 (S.D.N.Y. 2019) .................................................................. 10

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
  506 F. App'x 32 (2d Cir. 2012) ............................................................................. 9

*Bos. Ret. Sys. v. Alexion Pharmaceuticals, Inc.*,
  556 F. Supp. 3d 100 (D. Conn. 2021)................................................................... 11

*Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*,
  496 F. Supp. 3d 952 (E.D. Va. 2020) ............................................................. 13, 15

*Citfy of Pontiac*, 752 F.3d at 183 ............................................................................. 11

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
  2014 WL 4832321 (S.D.N.Y. Sept. 28, 2014)........................................................ 7

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014) ......................................................................... passim

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*,
  477 F. Supp. 3d 123 (S.D.N.Y. 2020) ................................................................ 5, 6

*Das v. Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018) ................................................................... 8

*Desai v. Gen. Growth Props., Inc.*,
  654 F. Supp. 2d 836 (N.D. Ill. 2009)................................................................... 14

*ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ................................................................................. 9

*Footbridge Ltd. v. Countrywide Home Loans, Inc.*,
  2010 WL 3790810 (S.D.N.Y. 2010)....................................................................... 6

*Freidus v. ING Groep N.V.*,
  736 F. Supp. 2d 816 (S.D.N.Y. 2010) ................................................................. 13

*Freudenberg v. E*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010) ............................................................ 13, 14

*Gradillas Court Reporters, Inc. v. Cherry Bekaert, LLP*,
  2018 WL 2197544 (N.D. Cal. May 14, 2018)......................................................... 7

*Gray v. Wesco Aircraft Holdings, Inc.*,
  454 F. Supp. 3d 366 (S.D.N.Y. 2020) ................................................................. 14

*Gregory v. ProNAi Therapeutics Inc.*,
  297 F. Supp. 3d 372 (S.D.N.Y. 2018) ................................................................. 13

# Table of Authorities

*(continued)*

**Page(s)**

*Halman Albudi Provident & Pension Funds Ltd. v. Teva Pharmaceuticals Indus. Ltd.*,
2022 WL 889158 (E.D. Pa. 2022) ........................................................................ 11

*In re Bayer AG Sec. Litig.*,
2004 WL 2190357 (S.D.N.Y. 2004)................................................................ 10, 15

*In re BHP Billiton Ltd. Sec. Litig.*,
276 F. Supp. 3d 65 (S.D.N.Y. 2017) .................................................................... 12

*In re Cognizant Tech. Solutions Corp. Sec. Litig.*,
2018 WL 3772675 (D.N.J. 2018) ......................................................................... 10

*In re Electrobras Sec. Litig.*,
245 F. Supp. 3d 450 (S.D.N.Y. 2017) .................................................................. 12

*In re eSpeed, Inc. Sec. Litig.*,
457 F. Supp. 2d 266 (S.D.N.Y. 2006) .................................................................... 8

*In re Flowers Foods, Inc. Sec. Litig.*,
2018 WL 1558558 (M.D. Ga. 2018) .................................................................. 6, 10

*In re Gen. Elec. Co. Sec. Litig.*,
857 F. Supp. 2d 367 (S.D.N.Y. 2012) .................................................................... 8

*In re Henry Schein, Inc. Sec. Litig.*,
2019 WL 8638851 (E.D.N.Y. 2019) ....................................................................... 8

*In re HEXO Corp. Sec. Litig.*,
524 F. Supp. 3d 283 (S.D.N.Y. 2021) .................................................................. 14

*In re Iconix Brand Group, Inc.*,
2017 WL 4898228 (S.D.N.Y.2017)......................................................................... 6

*In re Moody's Corp. Sec. Litig.*,
599 F. Supp. 2d 493 (S.D.N.Y. 2009) .................................................................. 12

*In re Mylan N.V. Sec. Litig.*,
2018 WL 1595985 (S.D.N.Y. 2018)...................................................................... 11

*In re Nevsun Resources Ltd.*,
2013 WL 6017402 (S.D.N.Y. 2013)........................................................................ 4

*In re New York Community Bancorp, Inc. Sec. Litig.*,
448 F. Supp. 2d 466 (E.D.N.Y. 2006) .................................................................. 13

*In re Petrobras Sec. Litig.*,
116 F. Supp. 3d 368 (S.D.N.Y. 2015) .................................................................. 10

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015) .................................................................... 14

*In re Signet Jewelers Ltd. Sec. Litig.*,
2018 U.S. Dist. LEXIS 199809 (S.D.N.Y. 2018)................................................. 10

*In re Van der Moolen Holding N.V. Sec. Litig.*,
405 F. Supp. 2d 388 (S.D.N.Y. 2005) .................................................................... 6

## Table of Authorities
### *(continued)*

**Page(s)**

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
   195 F. Supp. 3d 528 (S.D.N.Y 2016) ................................................................. 12

*InTouch Tech., Inc. v. VGO Commc'ns, Inc.*,
   2012 WL 7783405 (C.D. Cal. Apr. 23, 2012) ....................................................... 7

*Lopez v. CTPartners Exec. Search Inc.*,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016) ..................................................................... 9

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
   164 F. Supp. 3d 568 (S.D.N.Y. 2016) ................................................................. 12

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
   2021 WL 1199035 (S.D.N.Y. 2021) ....................................................................... 9

*New Orleans Emp. Ret. Sys. v. Celestica, Inc.*,
   455 Fed. Appx. 10 (2d Cir. 2011) .......................................................................... 8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) ............................................................................................. 15

*Rosenbaum Cap. LLC v. Bos. Commc'ns Grp., Inc.*,
   445 F. Supp. 2d 170 (D. Mass. 2006) .................................................................. 10

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ..................................................................................... 4

*Schiro v. Cemex, S.A.B. de C.V.*,
   396 F. Supp. 3d 283 (S.D.N.Y. 2019) ................................................................... 6

*Shemian v. Research in Motion Ltd.*,
   570 Fed. Appx. 32 (2d Cir. 2014) ........................................................................ 15

*Skiadis v. Acer Therapeutics Inc.*,
   2020 WL 3268495 (S.D.N.Y. 2020) ....................................................................... 3

*Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*,
   775 F. Supp. 2d 227 (D. Mass. 2011) .................................................................. 10

*Teamsters Local 456 Pension Fund v. Universal Health Serv.*,
   396 F. Supp. 3d 413 (E.D. Pa. 2019) ..................................................................... 6

*Van Dongen v. CNinsure Inc.*,
   951 F. Supp. 2d 457 (S.D.N.Y. 2013) ................................................................... 4

*Villare v. Abiomed, Inc.*,
   2021 WL 4311749 (S.D.N.Y. 2021) ..................................................................... 10

**Other Authorities**

Sagar Teotia, *Statement on the Continued Importance of High-Quality Financial Reporting for Investors in Light of COVID-19 (June 23, 2020)*, https://www.sec.gov/news/public-statement/teotia-financial-reporting-covid-19-2020-06-23 ........................................ 3

# PRELIMINARY STATEMENT[1]

Plaintiffs repeatedly assert throughout their opposition that the Evolus Defendants knew or recklessly failed to investigate that Jeuveau, a BTX product for which Evolus had obtained a U.S. sale license from Korean manufacturer Daewoong, was misappropriated from Daewoong's competitor, Medytox. But plaintiffs have not rebutted the Evolus Defendants' showing that the fraud-by-hindsight allegations behind that conclusion do not satisfy the PSLRA and Rule 9(b):

- Plaintiffs ignore that Evolus (i) prevailed on its defense that Jeuveau's underlying BTX strain was not a Medytox trade secret, and (ii) was not found to have misappropriated anything (the ITC's only such finding involved Daewoong). And plaintiffs do not dispute that the ITC protective order precluded the Evolus Defendants from reviewing the discovery record. Plaintiffs' knowing-falsity argument thus rests on rank speculation that Evolus's ITC counsel "doubtlessly" breached the order—contrary not only to plaintiffs' particularized-pleading obligations, but also to courts' unwillingness to assume protective-order breaches.

- Plaintiffs admit that Evolus did not employ their CW at the time Medytox filed its claims, and do not dispute that the AC alleges no CW communications about anything relating to Medytox's claims.

Plaintiffs' opposition also confirms that the AC alleges nothing suspicious about Evolus's November 2019 stock offering or some Individual Defendants' stock sales. Indeed, plaintiffs make the dispositive admission that Evolus's CEO did not sell a single share during the putative class period. Thus, the AC lacks particularized facts that would support, individually or collectively, a strong scienter inference, which alone requires dismissal. The far more compelling inference is that Evolus believed in its rights to Jeuveau and its defense to Medytox's claims, while cautioning the investing public that the ITC's ALJ could disagree.

But plaintiffs' repeated reliance on their deficient scienter allegations also warrants

---

[1] Defined terms have the same meaning as in the Evolus Defendants' opening brief ("Br."). Evolus refers to Plaintiffs' opposition as "Opp.," and exhibits to the accompanying Reply Declaration of Jonathan Rosenberg, Esq. ("Reply Dec.") as "Reply Dec. Ex." Unless otherwise noted, all emphasis is added and all internal citations and quotation marks are omitted.

dismissal on other grounds:

- *Immaterial puffery.* Plaintiffs' argument that the Litigation Optimism and Jeuveau Descriptions are not puffery because the Evolus Defendants knew they would lose the ITC litigation falls with plaintiffs' deficient scienter allegations. And plaintiffs cannot plead a material misstatement in any event, because they do not argue that the Evolus Defendants' general statements—e.g., they "remain confident" and "believe in the merits of our case," listing "proprietary" Jeuveau's "competitive strengths"— guaranteed a concrete fact or outcome, as Second Circuit law requires. It does not matter that the statements' topic was important or that the market reacted to the ALJ and full Commission decisions, as plaintiffs argue. Where, as here, the words themselves are too general for a reasonable investor to rely on, they are immaterial.

- *The PSLRA safe harbor and the bespeaks-caution doctrine.* These protections apply because of Evolus's repeated, specific descriptions of Medytox's allegations, and warnings that Evolus could be barred from selling Jeuveau. Plaintiffs simply brand those meaningful cautionary statements as "boilerplate," without explaining what they lacked. Equally unavailing are plaintiffs' attempts to trumpet their insufficient knowing-falsity allegations, which would not preclude the safe harbor's application in any event, given the meaningful cautionary statements.

- *Inactionable opinions.* Plaintiffs identify no particularized factual allegations about the Evolus Defendants' "inquiry into or knowledge concerning" their Litigation Optimism that Evolus should have disclosed. And the full Commission decision— which agreed that Jeuveau's BTX strain was not a trade secret and did not find that Evolus misappropriated anything—demonstrates that the Litigation Optimism had a reasonable basis.

Plaintiffs likewise do not support their conclusory request for leave to replead with a single example of a fact they can plead with particularity in yet another pleading. The Amended Complaint should therefore be dismissed with prejudice.

## ARGUMENT

## I.    THE AC FAILS TO PLEAD PARTICULARIZED FACTS SUPPORTING A STRONG SCIENTER INFERENCE.

The AC fails to plead scienter because plaintiffs have not identified any particularized factual allegations showing: (i) anything unusual about Evolus's November 2019 stock offering or three defendants' stock sales that would plead motive and opportunity to commit fraud; or (ii) that the Individual Defendants consciously or recklessly misbehaved because they knew that, or

failed to investigate whether, Jeuveau resulted from trade-secret misappropriation.

###### A.    The AC Does Not Adequately Plead Motive and Opportunity.

Plaintiffs do not dispute that a company's stock offerings generally do not support an inference of fraudulent motive. (Opp. 28; Br. 19.) So plaintiffs argue that Evolus's November 6, 2019 secondary offering was different because Evolus's "ability to continue as a going concern was in doubt," citing a case where the defendant "acknowledged . . . substantial doubt about the Company's ability to continue as a going concern within one year."[2] (Opp. 28.) Here, however, Evolus disclosed the opposite: that it expected its "existing cash . . . *will be sufficient* to fund our current operating plan for the next twelve months." (Fuks Dec. Ex. 2 at 22.) Its corresponding disclosure that it could need additional funds depending on the success of its product[3] is nothing like a "going concern" warning.[4] And plaintiffs ignore that the offering prospectus incorporated risk disclosures about the very litigation that Evolus was allegedly trying to conceal.[5]

Equally meritless is plaintiffs' argument about the Individual Defendants' stock sales. Most importantly, plaintiffs concede that CEO Moatazedi, who they do not dispute made most of the alleged misstatements, did not sell *a single share* during the putative class period. (Opp. 28.) While plaintiffs argue that they can plead scienter based on the stock sales of only some defendants (*id.*), they have no answer for the cases in which courts refused to infer scienter as to *all* defendants when the CEO and maker of the most alleged misstatements sold no shares (Br.

---

[2] *Skiadis v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *11 (S.D.N.Y. 2020) (inferring motive because defendant's "SEC filings represented that it would run out of money").

[3] Fuks Dec. Ex. 2 at 22 ("However, we may require additional funds earlier than we currently expect in the event that market acceptance of Jeuveau is slower than expected.").

[4] Sagar Teotia, *Statement on the Continued Importance of High-Quality Financial Reporting for Investors in Light of COVID-19 (June 23, 2020)*, https://www.sec.gov/news/public-statement/teotia-financial-reporting-covid-19-2020-06-23 (going-concern disclosure signifies "substantial doubt about . . . ability to meet its obligations as they become due within one year").

[5] Fuks Dec. Ex. 3 at 4, 11; Reply Dec. Ex. A at 2, 5, 18–19; *see also* Br. 27 & *infra* n.10.

20). The lone case on which plaintiffs rely involved what they lack here: sales by the company's

CEO (who made the alleged misrepresentations) and its President.[6]

Plaintiffs also do not dispute that Silvernail, Avelar, and Alphaeon retained 91%, 78%,

and 57% of their stock, respectively (Br. 21–22), which further undercuts a scienter inference

more than the aggregate sale dollar amount supports it. *Compare* Opp. 28 (aggregating all three

defendants' sale dollar amounts) *with Rothman v. Gregor*, 220 F.3d 81, 95 (2d Cir. 2000)

(scienter inference "weakened" where "corporate insider sells only a small fraction of his or her

shares in the corporation"). Plaintiffs overstate this Court's holding in *In re Nevsun Resources*

*Ltd.* (Opp. 28–29), where the Court corrected defendants' representation that the CEO had

"purchased" shares, when he had merely acquired them through his compensation plan. But

regardless of his acquisitions, the "timing and magnitude of Defendants' stock sales"—including

the CFO's sale of "his entire Nevsun stock holdings"—supported a scienter inference.[7] Plaintiffs

do not allege anything remotely similar here, nor do they address the Evolus Defendants'

showing that there was nothing unusual about the "timing and magnitude" of Silvernail's and

Avelar's sales (Br. 20–22).

As a last resort, plaintiffs contend that defendants' innocuous explanations for their

sales—following 10b5-1 plans, covering tax-withholding obligations, paying down debt—raise

factual issues. (Opp. 29.) But plaintiffs do not address the many cases where courts considered

such explanations (often provided in the same SEC filings disclosing the sales) in evaluating

allegedly suspicious circumstances. (Br. 21–22.) The lone case plaintiffs cite again involves what

they lack here: sales that were "unusual in light of [the defendant's] past trading practices" and

---

[6] *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 476 (S.D.N.Y. 2013) (CEO and President sales, when CEO "benefited from" misstatements, "outweigh[ed]" CFO's lack of sales).
[7] 2013 WL 6017402, at *13 & n.7 (S.D.N.Y. Sept. 27, 2013).

"suspiciously timed."[8] Their assertion that Alphaeon's sale occurred shortly before the close of ITC discovery (Opp. 29) is meaningless because they allege no particularized facts showing that Alphaeon—a nonparty to the ITC litigation—had knowledge of the ITC discovery record from Evolus or any other source, let alone knew whether or when any of it would become public.

### B.    The AC Fails to Allege Conscious Misbehavior or Recklessness.

Plaintiffs do not dispute that their alleged circumstantial evidence must yield a stronger inference of conscious misbehavior or recklessness in the absence of adequate motive-and-opportunity allegations. (Br. 23.) Their attempt to meet that heavy burden rests on conclusions and speculation—not the required particularized facts—that the Evolus Defendants knew (or were reckless in not knowing) that Jeuveau was derived from trade-secret misappropriation.

#### 1.    Prior positions at Allergan do not support a scienter inference.

Plaintiffs emphasize the Individual Defendants' previous employment by Allergan (Opp. 29–30), but point to no factual allegation explaining how that prior *Allergan* employment would have revealed that *Medytox's* BTX product had been misappropriated by *Daewoong*, the only party found to have misappropriated anything (Br. 23). And both the ALJ and full Commission decisions undercut any actual-knowledge inference by finding that (i) Daewoong did *not* misappropriate Medytox's BTX strain (it was not a Medytox trade secret in the first place), and (ii) Medytox's manufacturing process consisted of publicly disclosed steps. (Br. 8–9.)

#### 2.    The AC's scienter allegations based on Medytox's lawsuits and a confidential witness are inadequate.

Plaintiffs cite no authority to support their argument that mere knowledge of Medytox's allegations supports a strong scienter inference. (Opp. 26.) The law is just the opposite. *See, e.g.*,

---

[8] *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent., Inc.*, 477 F. Supp. 3d 123, 137 (S.D.N.Y. 2020) (defendant's "alternative explanation merely raises a factual dispute . . . and is therefore not enough to defeat" scienter inference).

*Teamsters Local 456 Pension Fund v. Universal Health Serv.*, 396 F. Supp. 3d 413, 468 (E.D. Pa. 2019) (allegations in underlying *qui tam* lawsuit do not plead scienter in related Rule 10b-5 action because they are not "evidence that [defendants] knew about the alleged billing scheme"). And plaintiffs ignore that Evolus's repeated disclosures about Medytox's allegations support "a more cogent and compelling inference of non-fraud,"[9] not vice versa (Br. 27). In contrast, the court in the Georgia case on which plaintiffs rely (Opp. 24) inferred scienter from "numerous reports, statements, legal opinions, and government actions," not present here.[10]

Plaintiffs are thus left to argue, based on statements from their CW, that Evolus was reckless in failing to investigate Medytox's allegations. (Opp. 26–27.) But in response to the Evolus Defendants' showing that the CW had no basis to know whether Evolus investigated Medytox's claims (Br. 23–24)—unlike in plaintiffs' authority[11]—plaintiffs cite allegations only that their CW worked on Jeuveau and interacted with the Individual Defendants, neither of which identifies any work or interactions related to Medytox's claims. Plaintiffs therefore have not alleged "with sufficient particularity . . . the probability" that the CW would know whether Evolus investigated Medytox's allegations. (Br. 24.) In fact, plaintiffs admit that Evolus could have investigated those allegations *before* their CW joined the company. (Opp. 27.) Their only retort is the hindsight and circular conclusion that any investigation would have revealed the misappropriation. *See Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 306 (S.D.N.Y. 2019) (rejecting "rank speculation" that investigation would have uncovered "bribery scheme").

---

[9] *See In re Iconix Brand Group, Inc.*, 2017 WL 4898228, at *19 (S.D.N.Y.2017) (Gardephe, J.); *Footbridge Ltd. v. Countrywide Home Loans, Inc.*, 2010 WL 3790810, at *22 (S.D.N.Y. 2010) ("[D]isclosure is inconsistent with the state of mind required to state . . . securities fraud.").
[10] *See In re Flowers Foods, Inc. Sec. Litig.*, 2018 WL 1558558, at *18 (M.D. Ga. Mar. 23, 2018).
[11] *See City of Warren*, 477 F. Supp. 3d at 132 (CW "worked specifically on analysis related to the contemplated" agreement at issue); *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 406 (S.D.N.Y. 2005) (CW negotiated, analyzed, and discussed deal at issue).

> ### 3. *Knowledge of falsity cannot be shown through the ITC litigation discovery record, the core-operations doctrine, or repetition.*

Plaintiffs repeat the AC's allegation that the Individual Defendants knew from the allegedly one-sided ITC discovery record that the ITC would find misappropriation. (Opp. 22–24.) But they do not address the many cases holding that litigation often turns on more than just the discovery record. (Br. 25–26.) That is especially true here because dispositive Daewoong and Evolus defenses depended not on evidence plaintiffs cite (Opp. 22–23), but evidence they ignore, *i.e.*, that Medytox's BTX strain had originated elsewhere and its manufacturing process was public (Br. 8–9, 25–26). Plaintiffs argue that the full Commission's decision cannot be considered because it occurred after the challenged statements. (Opp. 24–25.) That is sophistry: The decision unquestionably shows defenses worthy of the Litigation Optimism.

In any event, the ITC protective order barred the Individual Defendants' access to the discovery record (Br. 6–7, 26), which plaintiffs admit was "strictly confidential" (Opp. 6). Plaintiffs simply speculate that ITC counsel "doubtlessly" breached the protective order by "shar[ing] the import of the evidence." (Opp. 23.) But courts routinely reject conclusory allegations that a party will violate a court order,[12] and the AC pleads no particularized facts showing any improper access.[13] Plaintiffs' argument that the Individual Defendants knew about *Evolus's* discovery is meaningless, because (i) the AC pleads nothing about that discovery's content, and (ii) Evolus's defenses were not based on Evolus documents. (Opp. 23.)

---

[12] *See Gradillas Court Reporters, Inc. v. Cherry Bekaert, LLP*, 2018 WL 2197544, at *7 (N.D. Cal. May 14, 2018) (declining "to assume that the attorneys will violate a court order"); *see also InTouch Tech., Inc. v. VGO Commc'ns, Inc.*, 2012 WL 7783405, at *1 (C.D. Cal. Apr. 23, 2012) ("Courts do not lightly assume that counsel will violate a protective order").

[13] *See City of Brockton Ret. Sys. v. Avon Prods., Inc.*, 2014 WL 4832321, at *32 (S.D.N.Y. Sept. 28, 2014) (Gardephe, J.) (allegations that defendant "supervised someone who was aware of" compliance inadequacies—"without offering facts demonstrating that [defendant] herself was aware of these inadequacies—is not sufficient to plead scienter with particularity").

Nor can knowing falsity be inferred under the core-operations doctrine (Opp. 27–28), because knowledge about Evolus's core operations would not imply knowledge of the only misappropriation the full Commission found: that *Daewoong* had misappropriated Medytox's manufacturing process. *See In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 294 (S.D.N.Y. 2006) (core-operations scienter still requires allegations "that defendants lacked a reasonable basis for" optimistic statements).[14] Likewise deserving no weight is the mere repetition of the Litigation Optimism and Jeuveau Descriptions (Opp. 25–26), because it is not a particularized fact that shows knowledge of falsity.[15] In neither case on which plaintiffs rely did the court infer scienter from the alleged misstatement's repetition.[16]

## II.    THE AC FAILS TO PLEAD A MATERIALLY FALSE OR MISLEADING STATEMENT.

Plaintiffs do not address the governing materiality standard: an "alleged misstatement must be *sufficiently specific* for an investor to reasonably rely on that statement as a *guarantee* of some concrete fact or outcome." (Br. 11 (quoting *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014).) Thus, plaintiffs have not shown that the nonspecific Litigation Optimism and Jeuveau Descriptions were materially false or misleading. Nor do plaintiffs address any cautionary language that accompanied the forward-looking

---

[14] *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 816 (S.D.N.Y. 2018) (core-operations doctrine is at most a "supplementary but not independently sufficient means to plead scienter").

[15] *See In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *21 (E.D.N.Y. 2019) (rejecting scienter theory that repetition "suggests that [defendants] would have educated themselves . . . and thus would have uncovered the purported fraud," because it amounts to assertion that defendants "'must have' known that their statements were false").

[16] *See In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 395–96 (S.D.N.Y. 2012) (inferring that CFO "must have educated himself regarding GE Capital's financial health" because he spoke "so knowledgeably regarding the state of GE Capital's finances"); *New Orleans Emp. Ret. Sys. v. Celestica, Inc.*, 455 Fed. Appx. 10, 13 (2d Cir. 2011) (inferring defendants' knowledge from allegations that confidential witnesses provided contrary information or "participated in meetings" with defendants relating to alleged misstatements).

Litigation Optimism, protecting it under the PSLRA safe harbor and bespeaks-caution doctrine.

### A.    All the AC's Alleged Misstatements Are Nonactionable Puffery.

#### 1.    *The Litigation Optimism was vague and aspirational, not a guarantee.*

Plaintiffs do not dispute that the Litigation Optimism—namely, that we "remain confident," "believe in the merits of our case," "are in a very solid position," "are not really worried about the outcome," and "like our odds"—was vague and aspirational. (Br. 12.) Their argument that it was not puffery because the ITC litigation was material (Opp. 13) is flat wrong. *See ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) ("While a bank's reputation is undeniably important, that does not render a particular statement by a bank regarding its integrity per se material."); *see also Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37 (2d Cir. 2012) ("The 'puffery' designation . . . stems from the generic, indefinite nature of the statements at issue, not their scope."). Public companies' optimism almost always concerns important matters, like the company's competitive strengths. (Br. 16 (collecting cases holding that "competitive strengths" is puffery).) The "key issue is not . . . the topic," but the "nature of the specific statement and whether it concretely assured investors of anything." *Lopez v. CTPartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 23 (S.D.N.Y. 2016). Here, plaintiffs do not argue that investors could have reasonably interpreted the Litigation Optimism as guaranteeing an outcome. *City of Pontiac*, 752 F.3d at 185. Thus, that optimism was not material, even though the subject matter clearly was.

Plaintiffs' related argument that Evolus's share price declined following the ALJ's initial decision (Opp. 13–14) shows only that *the decision*, not the prior Litigation Optimism, was material. *See Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, 2021 WL 1199035, at *23 (S.D.N.Y. 2021) (holding that "market reaction . . . is by itself too blunt an instrument to" determine "whether a fact is material"). Similarly unavailing is that the Litigation Optimism was

9

repeated (Opp. 13)—"repetition of puffery does not, by itself, render it actionable," *Villare v. Abiomed, Inc.*, 2021 WL 4311749, at *15 (S.D.N.Y. 2021)—especially when the meaningful cautionary statements were likewise repeated (Br. 5–8). *See Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 254 (S.D.N.Y. 2019) (risk disclosures undercut inference that puffery was material). The allegations here are worlds away from those in *Signet* and *Petrobras* (which subsequent courts have refused to apply[17]), where the defendants had reassured investors about their high ethical standards while *simultaneously* violating those standards.[18]

Plaintiffs' remaining cases do not apply because they involved litigation opinions that (i) lacked cautionary warnings of a potential adverse outcome,[19] in contrast to Evolus's repeated warnings (Br. 5–8); (ii) were contradicted by the defendants' actual knowledge (which plaintiffs have not sufficiently alleged (*see supra* at 5–8))[20]; or (iii) were not addressed by the court at all.[21] Meanwhile, plaintiffs' attempt to distinguish the Evolus Defendants' authorities rests on the same deficient assertion that the Evolus Defendants knew from the ITC discovery record that

---

[17] *See In re Cognizant Tech. Solutions Corp. Sec. Litig.*, 2018 WL 3772675, at *18 (D.N.J. 2018) (observing that courts have "consistently limited the reasoning of . . . *Petrobras* to [its] facts").
[18] *See In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) (repeated statements about "general integrity and ethical soundness" amid "corruption scheme" were not immaterial because "reasonable investor could rely on them as reflective of the true state of affairs"); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 U.S. Dist. LEXIS 199809, at *52–53 (S.D.N.Y. 2018) (holding company's disclosed codes of conduct and ethics can be material when "directly at odds with the conduct alleged in [the] complaint").
[19] *Rosenbaum Cap. LLC v. Bos. Commc'ns Grp., Inc.*, 445 F. Supp. 2d 170, 176 (D. Mass. 2006) (litigation optimism "not tempered by warnings" other than "generic" warning about litigation as "normal incidence" of business).
[20] *Flowers Foods, Inc.*, 2018 WL 1558558, at *8 ("Defendants . . . misleadingly stated that [lawsuits] had no merit" because, among other reasons, they "were informed by legal counsel that" they "were not compliant with franchise laws"); *In re Bayer AG Sec. Litig.*, 2004 WL 2190357, at *13–14 (S.D.N.Y. 2004) (plaintiffs "allege[d] with particularity" that defendants' "belief undermined" opinions that "litigation was groundless").
[21] *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F. Supp. 2d 227, 235, 241 n.130 (D. Mass. 2011) (acknowledging claims based on litigation opinions but addressing only two alleged "statements of fact," not statements that "express opinion or belief").

they were sure to lose. (Opp. 14–15.)

> 2.  *The Jeuveau Descriptions are not specific statements of concrete facts.*

Plaintiffs do not contest that aspects of Jeuveau *were* proprietary, such as the toxin-purification technology for which Daewoong held a patent. (Opp. 20; Br. 15–16; Rosenberg Dec. Ex. J at 14.) On that basis alone, plaintiffs have failed to plead that describing Jeuveau as a "proprietary 900 kDa purified botulinum toxin type A formulation" was misleading. (Opp. 18.)

Plaintiffs' response that "proprietary" did not refer to any "specific aspects" of Jeuveau (Opp. 20) places it squarely within the definition of puffery—a statement that is not "sufficiently specific" to constitute "a guarantee of some concrete fact." *City of Pontiac*, 752 F.3d at 185. Plaintiffs cite no case holding otherwise, in contrast to the many cases they acknowledge holding the "proprietary" label too general to support a Section 10(b) claim. (Opp. 21 n.10; Br. 15–16.) Such nonspecific words do not trigger a duty to disclose even allegedly contrary facts, because they are too general for a reasonable investor to rely on. *See City of Pontiac*, 752 F.3d at 183 (allegation that puffery was "knowingly and verifiably false when made does not cure [its] generality, which is what prevents [it] from rising to the level of materiality"). In contrast to the Jeuveau Descriptions, plaintiffs' cases involved *factual* statements describing *specific* reasons behind the defendant's *historical* results—the opposite of puffery—which triggered a duty to disclose illegal conduct behind those results.[22] This distinction is illustrated by *In re Virtus Inv.*

---

[22] *See In re Mylan N.V. Sec. Litig.*, 2018 WL 1595985, at *6–7 (S.D.N.Y. 2018) (explanations of "sources and causes of Mylan's financial success" and "primary means of competition" triggered duty to disclose alleged "anticompetitive conduct"); *Bos. Ret. Sys. v. Alexion Pharmaceuticals, Inc.*, 556 F. Supp. 3d 100, 122 (D. Conn. 2021) (holding that "statements in which the Defendants specifically put at issue the source of Alexion's revenue growth triggered a duty to disclose" alleged "illegal and unethical sales practices"); *Halman Albudi Provident & Pension Funds Ltd. v. Teva Pharmaceuticals Indus. Ltd.*, 2022 WL 889158, at *10 (E.D. Pa. 2022) (defendant had duty to disclose alleged illegal donations because it "repeatedly attributed . . . success to legitimate business factors").

*Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 536–38 (S.D.N.Y 2016) (Opp. 19), where the court held that (i) "statements that the AlphaSector strategy is . . . 'proprietary'" are "mere puffery and too general to cause a reasonable investor to rely upon them," but (ii) discussions of "key driver[s] of our high levels of sales" triggered a duty to disclose that the "performance history" was based on misleading data.

Plaintiffs argue that general words such as "proprietary" are not puffery when intended to reassure the market about an important subject—here, Evolus's IP. (Opp. 20–21.) But plaintiffs' authorities all involved specific assurances—not puffery—that concealed directly contrary behavior.[23] As shown above (*supra* at 5–8), the ITC did not find that Evolus engaged in misappropriation, and plaintiffs plead no facts that Evolus knowingly concealed any.

Even if additional disclosure were required, Evolus satisfied that obligation by disclosing Medytox's claims and the risk that Evolus could be enjoined from selling Jeuveau. *See City of Pontiac*, 752 F.3d at 183 (holding that defendant "complied with its disclosure obligations" by "disclosing its involvement in multiple legal proceedings" and potential consequences).[24] Plaintiffs' argument that disclosing the litigation was not enough rests on a single Virginia case that is contrary to Second Circuit law and involved defendants who "implemented and oversaw"

---

[23] *See In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 79 (S.D.N.Y. 2017) ("[T]he statements…are not mere generalities, but contain quite specific representations or guarantees of some concrete fact or outcome."); *In re Electrobras Sec. Litig.*, 245 F. Supp. 3d 450, 463 (S.D.N.Y. 2017) (concluding that defendant "repeatedly emphasized and reasserted . . . its commitment to transparency and ethical conduct . . . specifically in response to" reported bribery and bid-rigging); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 508–09 (S.D.N.Y. 2009) ( "Moody's statements regarding its own independence" were not puffery because "[t]hey were neither vague nor non-specific pronouncements . . . incapable of objective verification," but rather "specific steps that Moody's was taking to ensure its independence and ratings integrity").
[24] *See Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 582 (S.D.N.Y. 2016) (disclosure of "projections about the impact of pending regulatory proceedings" required, "at most, that Och-Ziff disclose material information about the investigation" because corporations do not have "preemptive duty to 'confess'").

12

the very "scheme" they "vigorously den[ied]."[25] Nor do the Evolus Defendants point to the disclosures for the truth-on-the-market defense (Opp. 20), but rather to show that the Evolus Defendants did not mislead anyone. *See In re New York Community Bancorp, Inc. Sec. Litig.*, 448 F. Supp. 2d 466, 480 (E.D.N.Y. 2006) ("[O]ral representations are immaterial, where, as here, they are contradicted by plain and prominently displayed language in the prospectuses.").

### B. Evolus's Litigation Optimism Is Protected by the PSLRA's Safe Harbor for Forward-Looking Statements and the Bespeaks Caution Doctrine.

Plaintiffs deride as "boilerplate" Evolus's cautions about the ITC litigation (Opp. 16–17), without identifying any "facts as to how [they] could or should have been more specific." *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 405 (S.D.N.Y. 2018) (rejecting conclusory "boilerplate" characterization). And plaintiffs' cases do not address either (i) the PSLRA safe harbor or bespeaks-caution doctrine,[26] or (ii) any specific cautionary language.[27]

Plaintiffs argue without authority that the statement "nothing changed through the case, we feel confident in the strength of our IP" (AC ¶ 213) is not protected because it mixed the present and future (Opp. 16). But they do not dispute that a nearly identical phrase was deemed forward-looking when it reiterated an optimistic projection. (Br. 18 n.15.) A speaker confirming her belief about a lawsuit's future outcome does not convert her forward-looking optimism into a statement about the present. *See Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366,

---

[25] *Compare Cambridge Ret. Sys. v. Jeld-Wen Holding, Inc.*, 496 F. Supp. 3d 952, 963, 967 (E.D. Va. 2020) ("[D]isclosing a lawsuit's existence and allegations while" denying its merit "does not satisfy" duty to disclose) *with City of Pontiac*, 752 F.3d at 184 (disclosing "involvement in multiple legal proceedings" and potential consequences suffices because "[d]isclosure is not a rite of confession" and there is no "duty to disclose uncharged, unadjudicated wrongdoing").

[26] *See Freidus v. ING Groep N.V.*, 736 F. Supp. 2d 816, 841 (S.D.N.Y. 2010) (evaluating whether "disclosures rendered the alleged omissions immaterial").

[27] *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 194, 194 n.4 (S.D.N.Y. 2010) (finding defendants only offered "general statements" warning of risks, not "critical data needed for E*TRADE's investors to draw their own conclusions").

13

387, 390 (S.D.N.Y. 2020) ("[S]tatements which merely endorse or state the speaker's belief in a certain future outlook satisfy the PSLRA forward-looking requirement").

Plaintiffs' assertion that the Evolus Defendants knew the Litigation Optimism was false (Opp. 16–17) (i) is not adequately pleaded (Br. 23–24, 26–27; *supra* at 5–8), and (ii) would not preclude the safe harbor's application. The statute is disjunctive, so if the alleged misstatement "is accompanied by meaningful cautionary language," then "the presence of one of the other elements (e.g., the statement was known to be false or misleading) will not subject [ ] the defendant to liability." *Gray*, 454 F. Supp. 3d at 385–87. Plaintiffs' argument, and the case they cite,[28] wrongly "conflate[] the actual knowledge and meaningful cautionary language prongs of the PSLRA." *Id.* at 394 ("allegation of actual knowledge of falsity" does not preclude safe-harbor protection because of "disjunctive nature of the safe harbor elements").

Equally off-base is plaintiffs' argument that the cautionary language was not meaningful because Evolus's share price fell when the ITC released its findings. (Opp. 17.) That market reaction shows only that the ITC litigation was material, not that the Litigation Optimism lacked meaningful cautionary language.[29] (*See supra* at 9.) The question is whether "a reasonable investor could have been misled into thinking that the risk that materialized . . . did not actually exist." *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 307 (S.D.N.Y. 2021). Even plaintiffs do not argue that a reasonable investor could have been so misled, given Evolus's regular warnings that the outcome "may not be favorable" and could bar Jeuveau's sale. (Br. 5–8.)

---

[28] *Freudenberg*, 712 F. Supp. 2d at 193–94 (safe harbor inapplicable because defendants "made knowingly false statements" and only "general statements" warning of risks).

[29] *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 543 (S.D.N.Y. 2015) (finding that "eventual" stock drop due to FDA drug rejection does not show materiality of omissions about FDA's preliminary opinion, because "corporate officials need not be clairvoyant"); *see also Desai v. Gen. Growth Props., Inc.*, 654 F. Supp. 2d 836, 846–47 (N.D. Ill. 2009) (finding cautionary statements sufficient that "identified the principal contingencies that thereafter led to the sharp decline in [defendant's] stock price").

## III.    THE AC DOES NOT ADEQUATELY ALLEGE THAT THE EVOLUS DEFENDANTS' OPINION STATEMENTS WERE FALSE OR MISLEADING.

Plaintiffs do not dispute that the Litigation Optimism is an opinion. (Opp. 10.) Their contentions that it omitted material facts about the Evolus Defendants' inquiry or knowledge (Opp. 11) merely duplicate plaintiffs' deficient scienter allegations (*supra* § I). *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 196 (2015) (requiring "particular" facts, not "conclusory allegation," that defendants "lacked reasonable grounds for the belief it stated"). Any knowledge of the DNA and manufacturing similarities between Jeuveau and Meditoxin (Opp. 11) would not have rendered the Litigation Optimism misleading, because Daewoong and Evolus argued that the Meditoxin strain and manufacturing process were not trade secrets in the first place. (*See supra* at 5–8.) Plaintiffs' cases, by contrast, involved factual allegations that undercut publicly stated opinions, such as contrary internal facts or statements, direct involvement in the illegal conduct, or contradictory litigation behavior.[30]

### CONCLUSION

The AC lacks particularized facts that the Evolus Defendants made a materially false or misleading statement with scienter. Plaintiffs' afterthought request in their brief's last sentence for leave to replead does not identify one subject that they can plead with greater particularity.[31] The AC should therefore be dismissed with prejudice.

---

[30] *See In re Bayer*, 2004 WL 2190357, at *4–5, 14 (litigation optimism actionable where defendants had allegedly concluded that product "dangers . . . were 'putting the brand at risk'" and "dismissed the reservations of the safety experts"); *Jeld-Wen*, 496 F. Supp. 3d at 967 (crediting specific allegations that defendants "implemented and oversaw the anticompetitive scheme"); *Barilli v. Sky Solar Holdings, Ltd.*, 2020 WL 2848179, at *3 (S.D.N.Y. 2020) (litigation optimism not credible when defendant did not defend himself at arbitration or offer contradictory evidence).

[31] *See Shemian v. Research in Motion Ltd.*, 570 Fed. Appx. 32, 37 (2d Cir. 2014) (denying amendment "absent some indication as to what appellants might add to their complaint").

Dated: June 16, 2022                          Respectfully submitted:


                                             /s/ Jonathan Rosenberg
                                             Jonathan Rosenberg (jrosenberg@omm.com)
                                             B. Andrew Bednark (abednark@omm.com)
                                             O'MELVENY & MYERS LLP
                                             Seven Times Square
                                             New York, New York  10036
                                             (212) 326-2000

                                             *Attorneys for Defendants Evolus, Inc., David
                                             Moatazedi, Rui Avelar, and Lauren Silvernail*