

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

File Number:

August 9, 2023

**Jonathan Rosenberg**
D: +1 212 408 2409
jrosenberg@omm.com

**VIA ECF**

The Honorable Paul G. Gardephe
United States District Judge
40 Foley Square, Room 2204
New York, New York 10007

Re:     *In re Evolus, Inc. Securities Litigation,* Civ. Action No. 20-cv-8647-PGG

Dear Judge Gardephe:

We represent Defendants Evolus, Inc., David Moatazedi, Rui Avelar, and Lauren Silvernail, and respectfully submit this response to Plaintiffs' August 7, 2023 letter regarding *City of Ft. Lauderdale Police and Firefighters Ret. Sys. v. Pegasystems Inc.*, No. 22-11220-WGY, 2023 WL 4706741 (D. Mass. Jul. 24, 2023) ("*Pegasystems*"). *See* ECF No. 114. Contrary to Plaintiffs' assertion, *Pegasystems* supports granting Defendants' motion to dismiss because it highlights the types of factual allegations that are lacking in the amended complaint here.

The decision in *Pegasystems* turned on extensive, particularized scienter allegations that followed a public $2 billion jury award against Pegasystems for its "conspiracy" of "corporate espionage" to "infiltrate" and steal a competitor's software secrets. *See Pegasystems* at 2–4. The court found a "compelling inference" that the defendant CEO—who had "categorically denied that [the competitor's] claims had any merit"—in fact "was aware of, participated in, and directed Pega's corporate espionage." *See id.* at *1, 4, 6–7. This inference was grounded in a record that showed senior management's involvement in, among other things:

- Hiring and paying—through a "middleman"—a U.S. government contractor employee, Zou, "to spy" on the competitor;

- Circulating to more than 200 executives and employees hours of video content on Zou's use of the competitor's platform and other misappropriated information;

- Altering documents and requiring employees to refer to Zou through the pseudonym "Matt," so "he isn't 'outed' as our spy";

- Infiltrating the competitor's platform by using front or fake companies to pose as the competitor's customers; and

- Rewarding the employees participating in the conspiracy with cash bonuses.

Austin • Century City • Dallas • Los Angeles • Newport Beach • New York • San Francisco • Silicon Valley • Washington, DC
Beijing • Brussels • Hong Kong • London • Seoul • Shanghai • Singapore • Tokyo

O'Melveny

*Id*. at *2-3.

Those allegations contrast starkly with Plaintiffs' failure to allege any particularized facts showing any of the Evolus Defendants' knowledge of trade-secret misappropriation. *See* ECF No. 101 at 23–27; ECF No. 111 at 3–8. Nor have Plaintiffs adequately alleged that the Evolus Defendants gained any such knowledge from the confidential ITC discovery record (as opposed to a public trial record, as in *Pegasystems*). *See* ECF No. 101 at 25–27; ECF No. 111 at 7–8. And in contrast to the one-sided outcome in *Pegasystems*, the ITC found only that Daewoong— not Evolus—had misappropriated Medytox trade secrets, and even that finding was later partially reversed, vindicating an Evolus defense. *Id.*

Also worlds apart are the Pegasystems and Evolus disclosures. Unlike Evolus, Pegasystems failed to disclose its underlying trade-secret litigation for almost two years. *See Pegasystems* at *4. When it did, the CEO issued a "categorical[]" denial that the court found misleading because of the particularized allegations, absent here, that the CEO "possess[ed] substantial information about the viability of those claims." *Id.* at *10. Here, by contrast, Evolus disclosed Medytox's claims when they were filed, and regularly tempered its litigation optimism with meaningful cautionary language about the risk of an adverse outcome. *See* ECF No. 101 at 5–8, 17–18, 27.

Respectfully,

Jonathan Rosenberg